**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

APR 1 6 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER ALLIANCE, and ACCESORIOS ILIMITADOS, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. B-02 079 |
| vs. | ) ) | |
| WILLIAM F. PROTZ, JR. and SANTA'S BEST, an Illinois general partnership, | ) ) ) ) ) | |
| Defendants. | | |

## STATEMENT OF UNDISPUTED FACTS

NOW COME Defendants, William F. Protz, Jr. and Santa's Best, by their attorneys, Levenfeld Pearlstein, and for their Statement of Undisputed Facts, state as follows:

### Parties

1.   Defendant Santa's Best ("SB") is an Illinois general partnership that sells holiday ornaments.

2.   Plaintiff Border Alliance ("BA") supplied goods to SB from BA's Brownsville, Texas location. (Ex. A., E. Hernandez Dep., at 15.)

3.   Plaintiff Accesorios Ilimitados ("AI") is a Mexican affiliate of BA that supplied goods to BA from AI's Matamoros, Mexico location. (*Id.*)

### Supplier Agreement

4.   BA originally quoted per-piece prices to SB for the goods BA sold to SB. (Ex. B, C. Carroll Dep., at 151-57 & ex. 6.)

5.  The per-piece price included all Mexican costs, including, without limitation, all of BA's and/or AI's Mexican labor costs. (*Id.*)

6.  The price did not include raw materials, United States customs or duties, and trucking between SB and BA's Brownsville, Texas location. (*Id.*)

7.  Later on, SB agreed to reimburse BA for some of AI's rent expenses in Mexico. (*See, e.g.* Ex. B, C. Carroll Dep., at ex. 10.)

### The Supplier Relationship Ends

8.  Towards the end of 2000, SB notified BA that it would be discontinuing its orders from BA by the end of 2001. (*Id.* at 224-25, 359-60.)

9.  SB stopped ordering goods from BA towards the end of 2001. (*Id.* at 224-225.)

10.  BA received at least one year's advance notice of SB's decision to stop ordering from BA. (*Id.* at 359-60.)

11.  When SB stopped ordering goods from BA, Plaintiffs claim AI did not have enough business to continue operations. (Ex. B, C. Carroll Dep., at 224-25.)

12.  Sometime in 2002, AI shut down its plant in Mexico. (*Id.*)

### The Alleged Shutdown Liabilities

13.  Plaintiffs claim they are "exposed" to certain liabilities and potential claims by AI's former employees, AI's landlord in Mexico, and various Mexican agencies as a result of AI's shutdown. (Ex. C., Pls.' Am. Compl., at ¶¶ VII-X.)

14.  Besides the alleged amounts supposedly owed to AI's landlord, AI's shutdown expenses are set forth in the report of Plaintiffs' damages expert, Mitzy

2

Motta.[1] (Ex. A, E. Hernandez Dep., at 33-34 & ex. 1.)

15. Under Mexican law, AI and its legal representative are liable for the Liquidation Expenses. (Ex. D, M. Motta Dep. at 67-68.)

16. Under Mexican law, Defendants are not liable for the Liquidation Expenses. (*Id.*)

17. In order for Defendants to be liable to Plaintiffs with respect to the Liquidation Expenses, there must be a separate agreement between Defendants and Plaintiffs establishing Plaintiffs' right to reimbursement or indemnification. (*Id.*)

### The Disputed Photocopies

18. Plaintiffs have attached three photocopies of alleged contracts regarding the Liquidation Expenses to the Amended Complaint. (Ex. C, Pl's Am. Compl., at ¶¶ II-IV & exs. A, C-D.)

19. These photocopies are marked as exhibits 16-18 respectively to Clarence Carroll's deposition. (Ex. B, C. Carroll Dep., at exs. 16-18.)

20. Plaintiffs base their claims exclusively on these three photocopies. (*Id.* at 330 & exs. 16-18.)[2]

21. Originals of the Disputed Photocopies cannot be located. (*Id.* at 362-63.)

---

[1] The shutdown expenses set forth in the report of Plaintiffs' damages expert are referred to hereinafter as the "Liquidation Expenses."

[2] The two Spanish language agreements, which are attached as exhibits 17 and 18 respectively to Clarence Carroll's deposition, are referred to hereinafter as the "Spanish Maquila Contracts." The one English language agreement, which is attached as exhibit 16 to Clarence Carroll's deposition, is referred to hereinafter as the "English Maquila Contract." All three contracts are collectively referred to as the "Disputed Photocopies."

22. Plaintiffs allege in their Amended Complaint that William Protz, Jr. ("Protz") signed the Disputed Photocopies on behalf of Defendants. (Ex. C, Pl's Am. Compl., ¶ II.)

23. Protz denies signing the Disputed Photocopies. (Ex. E, W. Protz Dep. at 54, 63-65, exs. 1, 4, 5.)

24. Protz's alleged signatures on the Disputed Photocopies are all perfect overlays of his actual signatures on other documents. (Ex. F, G. Pearl Aff.)

25. Protz's alleged signatures on the Disputed Photocopies were all traced, "cut and pasted," copied or otherwise transferred from his actual signatures on other documents. (*Id.*)

26. Protz's alleged signature on the Disputed Photocopy attached as Exhibit 16 to Clarence Carroll's deposition was transferred from his actual signature on the original or a photocopy of exhibit 15 to Clarence Carroll's deposition. (Ex. B, C. Carroll Dep., at exs. 15-16; Ex. F, G. Pearl Aff.)

27. Protz's alleged signature on the Disputed Photocopy attached as exhibit 17 to Clarence Carroll's deposition was transferred from his actual signature on the original or a photocopy of exhibit 10 to Clarence Carroll's deposition. (Ex. B, C. Carroll Dep., at exs. 10, 17; Ex. F, G. Pearl Aff.)

28. Protz's alleged signature on the Disputed Photocopy attached as Exhibit 18 to Clarence Carroll's deposition was transferred from exhibit 14 to Clarence Carroll's deposition. (Ex. B, C. Carroll Dep., at exs. 14, 18; Ex. F, George Pearl Aff.)

29. Some of the signatures on the Disputed Photocopies were also transferred from other documents. (Ex. F, G. Pearl Aff.)

30. The Disputed Photocopy attached as exhibit 18 to Clarence Carroll's deposition also contains a purported filing seal from the Economy Ministry of Mexico ("SECOFI") that is a phony. (Ex. G. A. Gonzalez Aff., at 2.)

31. The Disputed Photocopy attached as exhibit 18 to Clarence Carroll's deposition also purports to be notarized by a Mexican attorney and notary public named Abelardo Guerra Farias, but Attorney Farias swears someone photocopied his seal and signature and superimposed them on Clarence Carroll's exhibit 18. (Ex. G, A. Gonzalez Aff., at 3.)

### The Expiration of the Disputed Photocopies

32. In any event, the Spanish Maquilla Contracts both purport to have become effective in February of 1995. (Ex. H, Translated Maquila Contract, at ¶ 7; Ex. I, Translated Maquila Contract, at ¶ 7.)

33. They further state on their face that:

> This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months.

(Ex. H, Translated Maquila Contract, at ¶ 7; Ex. I, Translated Maquila Contract, at ¶ 7.)

34. The English Maquila Contract provides:

> A one year notice is required for termination of this agreement by either party.

(Ex. B, C. Carroll Dep., at ex. 16.)

35. Defendants gave one year's advance notice of SB's decision to stop ordering goods from BA. (*Id.* at 359-60.)

5

## Speculative Nature of Shutdown Expenses

36.  Plaintiffs have not been compelled to pay any part of the shutdown expenses to anyone.  (*Id.* at 366-68.)

37.  No judgment has been entered against Plaintiffs with respect to any of the shutdown expenses.  (*Id.*)

38.  Plaintiffs have not entered into any settlement agreements with anyone to pay any part of the shutdown expenses.  (*Id.*)

39.  Plaintiffs do not know how much they will actually pay with regard to the shutdown expenses.  (Ex. D, M. Motta Dep., 54-56.)

Date:  April 15, 2003

DEFENDANTS,  WILLIAM  PROTZ,  JR.
AND SANTA'S BEST

By:_____
                One of Their Attorneys

Beau T. Greiman
Davi Hirsch
Levenfeld Pearlstein
2 North LaSalle Street, Suite 1300
Chicago, IL 60602
Telephone:   312-346-8380
Fax:            312-346-8434

Joseph A. (Tony) Rodriguez
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren, P.O. Box 2155
Brownsville, TX 78520
Telephone:   956-542-7441
Fax:            956-541-2170

H:\Docs\37500\37519\Statement-Undisputed Facts.doc

STATE OF ILLINOIS    )
                            ) SS
COUNTY OF COOK     )

## CERTIFICATE OF SERVICE

The undersigned, a non-attorney under oath, states that she caused a copy of the attached **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS** to be sent to:

Phil A. Bellamy, Esq.          Joseph A. (Tony) Rodriguez, Esq.
Law Office of Phil A. Bellamy   Rodriguez, Colvin & Chaney, L.L.P.
815 Ridgewood               1201 East Van Buren
Brownsville, TX  78520       P.O. Box 2155
                             Brownsville, TX  78520

by first class mail, postage prepaid, by depositing the same in the U.S. Mail Chute located at 2 North LaSalle Street, Chicago, Illinois, on April 15, 2003, prior to 5:00 p.m.

SUBSCRIBED and SWORN
to before me this 15th day
of April, 2003.

NOTARY PUBLIC

OFFICIAL SEAL
APRIL BERNATH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/12/06

7

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

```
BORDER ALLIANCE, L.L.C. a      X
Texas Limited Liability        X
Company and ACCESORIOS         X
ILIMITADOS, a Mexican          X
Corporation                    X
                               X
VS.                            X CASE NO. B-02 079
                               X
WILLIAM F. PROTZ, JR. and      X
SANTA'S BEST, an Illinois      X
General Partnership            X
```

ORAL DEPOSITION OF EMILY HERNANDEZ
APRIL 8, 2003

REPORTED BY SHELLEY STINGLEY
CERTIFIED COURT REPORTER

APPEARANCES

COUNSEL FOR PLAINTIFFS:

PHIL A. BELLAMY
LAW OFFICE OF PHIL A. BELLAMY
815 Ridgewood
Brownsville, Texas  78520

COUNSEL FOR DEFENDANTS:

BEAU T. GREIMAN
LEVENFELD PEARLSTEIN
2 North LaSalle Street, Suite 1300
Chicago, Illinois  60602

ALSO PRESENT:  Adela Garcia-Moreno, Interpreter
Clarence Carroll

**Page 14**

1    A.  No.  Of Border Alliance?

2    Q.  Yes.

3    A.  No.

4    Q.  There was also, we have been told anyway, a

5    partnership or a sole proprietorship operating in

6    America known as Border Alliance.

7    A.  Yes, that is the one that we worked with.

8    Q.  Were you -- did you have any ownership stake in

9    that entity?

10   A.  No, nothing to do with that company, no.

11   Q.  Do you know if it was a partnership or if it

12   was a sole proprietorship?

13   A.  No, I do not know about that.

14   Q.  That was Clarence and Elaine's business?

15   A.  I know them, Clarence and Elaine.  I don't know

16   if there's any more partners.  I do not know.

17   Q.  Did you have any interaction with Border

18   Alliance?

19   A.  The American company was the one that took us

20   the checks from Santa's Best and the raw materials.  We

21   would do the imports.  That was the connection that we

22   had.

23   Q.  When you said "the American company," you mean

24   Border Alliance?

25   A.  Yes, Border Alliance.

**Page 15**

1    Q.  So, in other words, raw materials came to

2    Accesorios Ilimitados from Border Alliance?

3    A.  When the raw material got here to Brownsville,

4    yes.  When it came from Chicago, it came to Santa's

5    Best, to Border Alliance, and then to Accesorios

6    Ilimitados.

7    Q.  So the raw materials started with Santa's Best,

8    then went to Border Alliance in Brownsville, and then

9    went across the border to Accesorios Ilimitados?

10   A.  Exactly.

11   Q.  And then the finished goods went from

12   Accesorios Ilimitados in Mexico to Border Alliance in

13   Brownsville, Texas and then on to Santa's Best from

14   there?

15   A.  Almost all of it.  When one had to check or get

16   some samples or sometimes there were some urgent orders

17   that Santa's Best would say, "We need them," we would

18   load the trailer and it passed directly.  It did not

19   stay in Brownsville here for one or two days.

20   Q.  How often did that happen?

21   A.  I don't remember.  It varied.  In one year,

22   maybe there were five urgent trailers and maybe the

23   next year maybe two, in the next year nothing, and in

24   another year nine.  It depended, varied.

25   Q.  Out of a total of how many shipments per year

**Page 1**

1    on average, at the height?

2    A.  I have no idea.  It varied a lot.  There were

3    some times when there were three trailers a week, four

4    trailers a week, and then two and then one.  It varied

5    a lot.  It varied.

6    Q.  But, easily, as many as a hundred shipments a

7    year?

8    A.  In what year?  In what year because there was a

9    year when we had 300 employees?

10   Q.  At the height.

11   A.  It could have been 80, 90.  No, I have no idea.

12   No, I don't know exactly.

13   Q.  Please make sure when you give your answers to

14   give pauses every so often so that the interpreter can

15   keep up.

16   A.  Okay.

17   Q.  I don't need to know exactly.  I just wanted to

18   have a rough estimate of what the total shipments migh

19   have been.

20        MR. BELLAMY:  Objection; calls for

21   speculation.

22   Q.  You may answer.

23   A.  I could check at the Customs agency, but to

24   remember, I don't remember.

25   Q.  More than 50?

**Page 1**

1    A.  Maybe so.  It varied, but that information,

2    yes, I can obtain it.  It's easy.  That is easy to

3    obtain that -- those documents.

4    Q.  I'm not trying to pin you down to a specific

5    number.  I'm just trying to get a sense for whether if

6    four or five shipments went directly to Santa's Best

7    what percentage of the total that was.  And you said

8    that there were as many as three or four shipments in a

9    week sometimes.

10        So, from that, you know, I would assume

11   that there would be more than 50 shipments, because if

12   there were four shipments per week for the entire year

13   that would be over 200 shipments.

14        Now, I understand that there weren't four

15   shipments every week, but if they were varying between

16   one shipment and four shipments, there would easily be

17   more than 50 shipments.

18   A.  Yes, but you also have to take into account

19   that if you're taking a year of twelve months, that is

20   not correct.  Why?  Because we had several months that

21   it was one trailer per week and then three or four

22   months there would be three or four trailers a week.

23        They could have been more than 50 a year

24   if we average it out.  If we had -- with the first year

25   that we had a lot of employees with the last year that

## Page 30

1  box or anything.
2   Q. Who is "they"?
3   A. The ones from the union.
4   Q. And then for the rest of the expenses of
5  Accesorios Ilimitados, such as payroll or any other
6  expenses, was there a weekly budget sent to Border
7  Alliance for those expenses?
8   A. Yes, it was the one for the payroll or for the
9  cash, the small petty cash.
10   Q. And what was the name of that budget?
11   A. We only wrote "Budget." We had the form made
12  out in the computer. We would just fill in the amounts
13  and it said Budget on the top.
14   Q. Where was that Budget sent?
15   A. To Mr. Clarence. Sometimes we would give it to
16  him personally and sometimes it was sent through the
17  fax.
18   Q. Did Accesorios Ilimitados send that Budget to
19  Santa's Best?
20   A. No, the small one, no.
21   Q. Along with the payroll with petty cash for
22  expenses?
23   A. For the payroll and the petty -- small petty
24  cash, no.
25   Q. That was sent just to Border Alliance?

## Page 31

1   A. Yes, we would give it to him or send it to him.
2   Q. Were there any other expenses incurred by
3  Accesorios Ilimitados that were not covered on the
4  Taxes to Be Paid Form, the rents received for
5  Mr. Cortez, or the Budget?
6   A. The fines that they had for -- because Santa's
7  Best would send the trailers with different materials
8  to the document that I received, and at Customs,
9  sometimes they checked them. They would check -- they
10  would count.
11     Sometimes they had a smaller amount,
12  sometimes more, and they would have some fines. There
13  were around seven, some small, some very big.
14   Q. And how was that paid for?
15   A. We would send the copy of the fine,
16  Mr. Clarence would make out a letter explaining
17  everything because the fine was in Spanish, and the
18  amounts would be there and they would send the money
19  and it was paid at Customs.
20   Q. This was not a regular thing?
21   A. No. There were some years where we did not
22  have any. There was another year where we had three
23  fines. We would ask Santa's Best, "What's happening,"
24  and they said they had changed the person in charge of
25  the warehouse and that possibly that was the problem.

## Page 32

1   Q. Any other expenses of Accesorios Ilimitados not
2  covered on the Taxes to Be Paid Form, the monthly
3  receipt for the rent, or the Budget?
4   A. Daily, none. Only at the end when we had to
5  pay the workers -- when you leave them without a job,
6  you have to pay them, compensate them And right now,
7  supposedly you have to pay them the salary until they
8  receive the money because they were let go.
9   Q. There's been a report prepared by --
10     MR. GREIMAN: You need to help me here
11  because I don't know the right names. I think Mitzy
12  Perla -- is that what you call your expert? She's got
13  several names.
14     MR. BELLAMY: Let me see. Off the record
15  for a second.
16     (Off the record)
17   Q. Okay, I'm handing you what has been marked as
18  Hernandez deposition Exhibit No. 1. It's a report from
19  Mitzy Motta. Do you know Mitzy Motta?
20   A. Yes, she was the accountant that we had some
21  time ago.
22   Q. Accesorios Ilimitados had?
23   A. Accesorios Ilimitados.
24   Q. And when you were -- this document is in
25  Spanish and English.

## Page 33

1     MR. GREIMAN: I think we would be better
2  off with it being two documents so I'm changing my
3  mind. Exhibit No. 1 is the English version and Exhibit
4  No. 2 right next to it is the Spanish version of that
5  same report.
6     MR. BELLAMY: And Ms. Motta's, I guess,
7  diploma.
8     MR. GREIMAN: Correct. The first two
9  pages are her diploma. That's on the Spanish version,
10  but it's not on the English version, No. 1.
11   Q. I believe Clarence Carroll had said you are
12  bilingual?
13   A. I understand, but I can't speak it very well
14  sometimes.
15   Q. Can you read English?
16   A. Yes.
17   Q. Well enough to understand Exhibit No. 1?
18   A. Yes, because there are many numbers.
19   Q. I don't know the protocol -- what the best
20  way to do this is, but I guess I would ask you to
21  review Exhibit No. 1. And my question is are those all
22  of the extra expenses for liquidations of workers and
23  such things associated with the wind-up of Accesorios
24  Ilimitados that you were just referring to?
25   A. The compensation is missing here. It's over

**Page 34**

1 here. Vocation, salaries -- this is a copy, I imagine.
2   Q. Please just take your time. If you need to,
3 take five minutes, ten minutes to look at it. Just
4 satisfy yourself that that's all of the wind-up
5 expenses that there are.
6   A. This is up to November of 2002, right? Because
7 the amounts vary. Yes, this is everything on the
8 employees and the taxes.
9   Q. So -- and those were not regular expenses.
10 Those are just expenses associated with the wind-up of
11 Accesorios Ilimitados?
12   A. This is at the end when you are not going to
13 give them work anymore. There are work contracts that
14 you have -- that exists between the union, the worker,
15 and the company.
16   Q. So besides the expenses listed on deposition
17 Exhibit No. 1 to your deposition and the Taxes to Be
18 Paid Form, the monthly receipt from Mr. Cortez for
19 rent, and the Budgets, there are no other expenses of
20 Accesorios Ilimitados with the exception of those fines
21 that you referred to earlier?
22   A. There is one right now that I have no idea
23 because the machinery is temporarily for seven years.
24 If the machinery is not returned to the owner in seven
25 years, in Mexico it is thought of as if you are --

**Page 35**

1 if you are selling it. So the tax -- a 33 percent tax
2 has to be paid of the value of all of the machinery to
3 the Treasury.
4   Q. That's not due yet?
5   A. Almost, because some of the machineries are
6 going to expire. Others, no.
7   Q. When?
8   A. Some expire in August, some other ones in
9 October. They are different. The ones for the garland
10 -- because we did have several.
11   Q. And where is the equipment?
12   A. The union took it.
13   Q. Has Accesorios Ilimitados made any attempts to
14 get it back?
15   A. You're referring to Accesorios Ilimitados, but
16 Accesorios Ilimitados is me, only me over there in
17 Mexico, and over here it's Clarence. So, us two, we
18 can't recuperate the machinery because in the import
19 documents it says that they belong to Santa's Best,
20 Wisconsin -- the address of the owner appears there.
21 We are not the owners so we are not able to recuperate
22 it.
23   Q. Have you explained to the union that it belongs
24 to Santa's Best?
25   A. They knew. They do that always. They do not

**Page 36**

1 care who it belongs to. We told them that Santa's Best
2 was going to sue them. I told them. They said that
3 they didn't care so -- they took everything. I don't
4 know if they sold them, if they have them in their
5 warehouse.
6   Q. How many years of education have you had?
7   A. Up to -- I studied up through high school.
8   Q. And you graduated from high school?
9   A. Yes.
10   Q. Any education beyond high school?
11   A. No.
12   Q. Do you consider yourself personally liable for
13 the contracts of Accesorios Ilimitados if you signed
14 them?
15   A. I am responsible. If one signs a contract, one
16 is responsible for that signature.
17   Q. Personally or just the company?
18   A. In Mexico, it's personally.
19   Q. Please turn in this binder to Clarence
20 Carroll's deposition Exhibit No. 17. This is the
21 maquila contract, correct?
22   A. Yes.
23   Q. On the last page, is that your signature that
24 appears above your name?
25   A. Yes, that is my signature.

**Page 37**

1   Q. And does this make you personally liable for
2 this contract?
3   A. In Mexico, yes.
4   Q. Will you turn to the next exhibit, which is
5 Clarence Carroll Exhibit 18, turn to the second to the
6 last page. Is that your signature again?
7   A. Yes.
8   Q. And, again, you understand that you're
9 personally liable on this contract?
10   A. Yes, because we presented these contracts to be
11 able to get the permits so that the maquiladora
12 functions. The problem is that there are a lot of,
13 like, make-believe maquiladoras, people that launder
14 money or wash money. That's why the laws changed about
15 eight or ten years ago.
16     And now, first they want the contract for
17 the maquila, be it an American, a Chinese company,
18 whatever. Then you have to go to the SECOFI, which is
19 the Secretary to the Treasury. There's many steps,
20 Social Security, something that's called INEGI.
21 There's been nine government offices. They check all
22 of the documents -- it's like a circle -- before they
23 say, "Yes, you can hire personnel. You can start
24 working."
25   Q. What was Border Alliance's relationship to

# "ACCESORIOS  ILIMITADOS , S.A. DE C.V."

## FEDERAL EMPLOYER'S  TAXPAYER  I.D. NO.
## AIL- 941215- IF4

### FILE REFERRING TO
### PROOF OF NON-COMPLIANCE OF CONTRACT

### "ACCESORIOS  ILIMITADOS,  S.A. DE C.V."

### VS.

### "SANTA'S  BEST".  BILL PROTZ

### LAST UPDATE
### NOVEMBER  2002

c.c:

"Agencia   del   Ministerio  Público de  H.  Matamoros, Tamps." (Federal Prosecutor's Office, H. Matamoros, Tamaulipas)

"18 Y HERRERA NO. 84 ZONA CENTRO C.P. 87300 H. MATAMOROS, TAM." (NO. 84 18TH and HERRERA ST., CENTRAL ZONE, ZIP CODE 87300, H. MATAMOROS, TAMAULIPAS) TEL: (8) 816-51-30. FAX:  (8) 813-99-92. "R.F.C."(TAXPAYER I.D.#) AIL- 941215-IF4

Top middle quadrant: Letterhead: "ACCESORIOS   ILIMITADOS, S.A. DE  C.V.

Bottom right quadrant:  Signature: Illegible.



Hernandez

EXHIBIT NO. 1

Shelley Stingley

INDEX

PROOF NO.1 - FEDERAL TAXES AND SOCIAL SECURITY PAYMENTS

PROOF NO. 2- INDEMNIFICATION DUE AS OF JANUARY 2002

    a) UNION WORKERS
    b) SALARIED EMPLOYEES

PROOF NO. 3- INDEMNIFICATION DUE AS OF NOVEMBER 2002

    a) UNION WORKERS
    b) SALARIED EMPLOYEES

PROOF NO. 4- PAYMENT DUE FOR SERVICES RENDERED BY CONSULTANTS AND ACCOUNTING FIRM

PROOF NO. 5- TOTAL AMOUNT OF DEBT OWED

PROOF NO. 6- LEGAL BASIS

PROOF NO. 7- DOCUMENTS WHICH VERIFY THE PROFESSIONAL CAPACITY AND TITLES OF BOTH THE TAX CONSULTANT AND ACCOUNTANT (COPY OF TITLE OF CERTIFICATION) IN THE PREPARATION OF THE AFOREMENTIONED PROOF.

"18 Y HERRERA NO. 84 ZONA CENTRO C.P. 87300 H. MATAMOROS, TAM." (NO. 84 18TH and HERRERA ST., CENTRAL ZONE, ZIP CODE 87300, H. MATAMOROS, TAMAULIPAS) TEL: (8) 816- 51- 30. FAX: (8) 813-99-92. "R.F.C." (TAXPAYER I.D.#) AIL- 941215- IF4

Top middle quadrant: Letterhead: "ACCESORIOS ILIMITADOS, S.A.DE C.V.

Bottom right quadrant: Signature: Illegible.

**ACCESORIOS ILIMITADOS, S.A. DE C.V.**
**FEDERAL INCOME TAXES AND SOCIAL SECURITY ACCRUALS**

| ITEM | AMOUNT PREVIOUSLY OWED | UPDATE | PENALTIES | FINES (70%) | TOTAL | DUE DATE |
|---|---|---|---|---|---|---|
| FEDERAL INCOME TAXES FOR YEAR 2001 | 50,032.00 | 1,290.35 | 51,322.35 | 71,851.29 | 174,495.99 | MARCH 2002 |
| FIRST QUARTER - 2002 - JAN-MARCH | 24,847.00 | 973.14 | 25,820.14 | 36,148.20 | 87,788.48 | APRIL 2002 |
| SECOND QUARTER - 2002 - APR-JUNE | 17,432.14 | 790.45 | 18,222.59 | 25,611.63 | 81,956.81 | JULY 2002 |
| 2002 INCOME TAX FILING | ? | ? | ? | ? | ? | 31 MARCH 2003 |
| SOCIAL SECURITY, PENSIONS, AND FEDERAL HOUSING ACCRUALS JANUARY 2002 TO NOV. 15, 2002 | 241,987.83 | 6,586.98 | 248,574.89 | 348,004.85 | 845,154.63 | |
| TOTALS | $334,299.07 | $9,640.90 | $343,939.97 | $481,515.96 | $1,169,395.90 | |

## INDEMNIFICATION AS OF JANUARY 2002

| UNION WORKERS | INDEMNIFICATION | CHRISTMAS BONUS | VACATION BONUS | SALARIES DUE |
|---|---|---|---|---|
| RODRIGUEZ CASTILLO MARCIAL | 23,122.50 | 115.61 | 115.61 | 2,574.33 |
| BORJAS MORENO MOISES | 24,830.00 | 124.15 | 124.15 | 2,764.42 |
| ZUNIGA BAUTISTA PABLO | 23,122.50 | 115.61 | 115.61 | 2,574.33 |
| SANCHEZ CONTRERAS JESUS | 22,967.50 | 114.84 | 114.84 | 2,557.00 |
| OLMOS MORENO LUIS ALBERTO | 24,665.00 | 123.33 | 123.33 | 2,746.04 |
| ROMERO GONZALEZ BENITO | 22,967.50 | 114.84 | 114.84 | 2,557.08 |
| ESCOBAR SIFUENTES ABEL | 22,967.50 | 114.84 | 114.84 | 2,557.08 |
| ZAMORANO BUSTOS TERESA | 22,655.00 | 113.29 | 113.28 | 2,522.26 |
| GALINDO REYES RAUL | 22,655.00 | 113.29 | 113.29 | 2,522.26 |
| VEGA VELAZQUEZ GLORIA LINA | 24,330.00 | 121.65 | 121.65 | 2,708.74 |
| ENRIQUE TORRES MARIA ISABEL | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| MOTA RIVERA ZENAIDA | 22,655.00 | 113.28 | 113.28 | 2,522.26 |
| CRUZ BLANCO FERNANDO, | 24,330.00 | 121.65 | 121.65 | 2,708.74 |
| VEGA VELAZQUEZ JOSE ADAN | 24,330.00 | 121.65 | 121.65 | 2,708.74 |
| DE LEON GONZALEZ MARGARITA | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| MARTINEZ SANCHEZ ERNESTO | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| TORRES MARTINEZ ARNULFO | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
|  | 394,837.50 | 1,964.12 | 1,974.20 | 43,958.66 |
|  |  |  |  | 442,734.49 |

INDEMNIFICATION AS OF JANUARY 2002

| EMPLOYEES | | | |
|---|---|---|---|
| HERNANDEZ DOLORES EMILY MA. | 177,532.20 | 4,671.90 | 1,168.00 | 9,740.20 |
| GALICIA LEDEZMA ANA LUZ | 90,276.60 | 2,375.70 | 594.00 | 4,952.97 |
| VALLEJO CHAVEZ JOSE SAMUEL | 90,231.00 | 2,374.50 | 596.00 | 4,950.47 |
| CRUZ SALAZAR FREDY | 89,051.10 | 2,343.45 | 495.00 | 4,885.74 |
| PARDO MARQUEZ ARTEMIO | 61,924.80 | 1,629.60 | 436.00 | 3,397.47 |
| CAMPOS RODRIGUEZ EDUARDO | 89,569.80 | 2,357.10 | 587.00 | 18,018.72 |
| ALMENDARIZ MEDINA MA. DEL ROSARIO | 77,884.80 | 2,049.60 | 468.00 | 47,004.16 |
| | 676,470.30 | 17,801.85 | 4,344.00 | 92,949.74 | 791,565.89 |

## INDEMNIFICATION AS OF NOVEMBER 2002

| UNION WORKERS | INDEMNIFICATION | CHRISTMAS BONUS | VACATION BONUS | SALARIES DUE |
|---|---|---|---|---|
| RODRIGUEZ CASTILLO MARCIAL | 23,122.50 | 1,387.35 | 1,387.35 | 30,892.00 |
| BORJAS MORENO MOISES | 24,830.00 | 1,498.80 | 1,489.80 | 33,173.00 |
| ZUNIGA BAUTISTA PABLO | 23,122.50 | 1,387.35 | 1,387.35 | 30,892.00 |
| SANCHEZ CONTRERAS JESUS | 22,967.50 | 1,378.05 | 1,378.05 | 30,684.00 |
| OLMOS MORENO LUIS ALBERTO | 24,665.00 | 1,479.90 | 1,479.90 | 32,952.44 |
| ROMERO GONZALEZ BENITO | 22,967.50 | 1,378.05 | 1,378.05 | 30,685.00 |
| ESCOBAR SIFUENTES ABEL | 22,967.50 | 1,378.05 | 1,378.05 | 30,685.00 |
| ZAMORANO BUSTOS TERESA | 22,655.00 | 1,359.30 | 1,359.30 | 30,267.08 |
| GALINDO REYES RAUL | 22,655.00 | 1,359.30 | 1,359.30 | 30,267.08 |
| VEGA VELAZQUEZ GLORIA LINA | 24,330.00 | 1,459.80 | 1,459.80 | 32,504.88 |
| ENRIQUEZ TORRES MARIA ISABE | 22,310.00 | 1,338.60 | 1,338.60 | 30,267.08 |
| MOTA RIVERA ZENAIDA | 22,655.00 | 1,359.30 | 1,359.30 | 29,806.16 |
| CRUZ BLANCO FERNANDO | 24,330.00 | 1,459.80 | 1,459.80 | 30,267.08 |
| VEGA VELAZQUEZ JOSE ADAN | 24,330.00 | 1,459.80 | 1,459.80 | 32,504.88 |
| DE LEON GONZALEZ MARGARITA | 22,310.00 | 1,338.60 | 1,338.60 | 32,504.88 |
| MARTINEZ SANCHEZ ERNESTO | 22,310.00 | 1,338.60 | 1,338.60 | 29,806.16 |
| TORRES MARTINEZ ARNULFO | 22,310.00 | 1,338.60 | 1,338.60 | 29,808.16 |
| | 394,837.50 | 23,569.05 | 23,690.25 | 527,503.96 |
| | | | | 969,600.76 |

INDEMNIFICATION AS OF NOVEMBER 2002

EMPLOYEES

| | | | | |
|---|---|---|---|---|
| HERNANDEZ DOLORES EMILY MA. | 177,832.20 | 4,671.90 | 3,737.52 | 107,142.24 |
| GALICIA LEDEZMA ANA LUZ | 90,276.60 | 2,375.70 | 1,900.56 | 54,482.72 |
| VALLEJO CHAVEZ JOSE SAMUEL | 90,231.00 | 2,374.50 | 1,899.60 | 54,455.20 |
| CRUZ SALAZAR FREDY | 89,051.10 | 2,343.45 | 1,874.76 | 53,743.12 |
| PARDO MARQUEZ ARTEMIO | 61,924.80 | 1,629.60 | 1,303.68 | 37,372.16 |
| CAMPOS RODRIIGUEZ EDUARDO | 89,569.80 | 2,357.10 | 1,885.68 | 54,056.16 |
| ALMENDARIZ MEDINA MA. DEL ROSARIO | 77,884.80 | 2,049.60 | 1,639.68 | 47,004.16 |
| | 676,470.30 | 17,801.85 | 14,241.48 | 408,255.76 | 1,116,769.39 |

PAYMENTS DUE FOR:

PREPARATION OF REPORTS

CONSULTATIONS AND NEGOTIATIONS WITH FEDERAL AND STATE AGENCIES

PAYMENTS TO GOVERNMENT AGENCIES

UPDATING AND PROJECTION OF TAXES DUE

ACCOUNTING FEES FOR INTERNAL ACCOUNTANT

SERVING AS REPRESENTATIVE IN MEETINGS WITH:

SOCIAL SECURITY OFFICE
STATE COMPTROLLER'S OFFICE
INTERNAL REVENUE SERVICE

$45,000.00

Bottom right quadrant: Signature: Illegible.

| | TOTAL 1 CUTTING A AS OF JAN. 2002 | TOTAL 2 CUTTING A AS OF NOV. 2002 |
|---|---|---|
| FEDERAL TAXES AND SOCIAL SECCURITY | 870,650.90 | 1,169,395.90 |
| ERSONNEL INDEMNIFICATION | 1,234,300.38 | 2,086,370.15 |
| CONSULTING AND ACCOUNTING FEES | 22,000.00 | 45,000.00 |
| | 2,128,951.28 | 3,300,766.05 |
| PESOS PER DOLLAR | 9.27 | 10.00 |
| AMOUNT IN DOLLARS | 229,444.58 | 330,076.61 |

THE UPDATED AMOUNTS ARE DETERMINED BASED ON THE NATIONAL CONSUMER PRICE INDEX PUBLISHED IN THE FEDERAL GOVERNMENT'S OFFICIAL DAILY GAZETTE ("INF").

THE PENALTIES ARE CALCULATED BY USING PERCENTAGES PUBLISHED  BY THE BANK OF MEXICO (FEDERAL RESERVE BOARD) AND ARE APPLIED TO PAST DUE LOANS.

THE FINES ARE CALCULATED BY APPLYING A PERCENTAGE TO THE ORIGINAL PRINCIPAL AMOUNT DUE. ARTICLE 304-B OF THE FEDERAL SOCIAL SECURITY LAW STATES THAT THE APPLICABLE FINES RANGE  FROM 70% TO 100% OF THE DUE AMOUNT. WE ESTIMATED 70% AND NOT 100%.

THESE AMOUNTS HAVE BEEN UPDATED AS OF NOVEMBER 15, 2002, AND EVERY MONTH THE DUE AMOUNT WILL BE UPDATED AS PER THE PENALTIES AND FINES PUBLISHED IN THE FEDERAL GOVERNMENT'S OFFICIAL DAILY GAZETTE.

WE WOULD LIKE TO CLARIFY THAT THESE  ARE ONLY ESTIMATES AND THE EXACT AMOUNT DUE WILL NOT BE KNOWN UNTIL THE MOMENT OF PAYMENT  BECAUSE  DIFFERENT CRITERIA  IS UTILIZED BY GOVERNMENT AGENCIES ( SOCIAL SECURITY, INTERNAL REVENUE SERVICE, FEDERAL  TREASURY,

HOUSING AGENCY, PENSIONS DEPARTMENT, COLLECTION DEPARTMENTS OF LOCAL AND STATE TAX ENTITIES ).

IN REFERENCE TO THE PAYMENT OF PERSONNEL INDEMNIFICATION THE LEGAL BASIS FOR SAID PAYMENT IS PROVIDED FOR IN ARTICLE 50, PARAGRAPHS I, II, AND III OF THE FEDERAL LABOR LAW. (LAWS AND REGULATIONS AND COMPLEMENTARY INSTRUCTIONS STATE THAT THESE AMOUNTS CANNOT BE REDUCED.)

TERMINATION PAY, BONUSES, CHRISTMAS BONUSES, VACATIONS, VACATION BONUSES AND SALARIES DUE ARE BASED ON PARAGRAPH III OF THE AFOREMENTIONED ARTICLE WHICH STATES "...IN ADDITION TO THE INDEMNIFICATION REFERRED TO IN THE FOREGOING PARAGRAPHS IN THE PAYMENT OF 3 MONTHS OF SALARY AND IN THE SALARIES DUE FROM THE DATE OF DISMISSAL UNTIL THE INDEMNIFICATION IS PAID."

Bottom right quadrant:  Signature:  Illegible.



# La Universidad Valle Del Bravo

## otorga a

### Mitzy Perla Motta Ariza

### el título de

### Licenciado en Contaduría Pública



DIR. GRAL DE
ESCOLAR Y ARCHIVO

Firma del interesado

No. de control

609-0315

en atención a que demostró tener hechos los estudios requeridos por la ley y haber sido aprobado en el Exámen Profesional que sustentó el día **20** del mes de **enero** de 1995. En la facultad de

**Comercio y Administración** de la Unidad **Matamoros** de esta Universidad, según constancias archivadas en la Secretaría General de la misma.

Trabajo, Ciencia y Libertad

Dado en la Ciudad de Reynosa, Tamaulipas, de los Estados Unidos Mexicanos, el día **24** del mes de **abril** de 19**95**



El Secretario

C.P. Ma. de Lourdes Arteaga Reyna
SECRETARIA
GENERAL



El Rector de la U.

Dr. Héctor García Herrera
RECTORIA

Hernandez
Exhibit No. 2

El suscrito, Srio. Gral. de la Universidad Valle del Bravo

Certifica que MITZY PELLA MOTTA ARIZA

Presentó Exámen Profesional correspondiente a la carrera de

LIC. EN CONTADURIA PUBLICA    El día 20

de ENERO    de 19 95   y fue aprobado Por

UNANIMIDAD    , Según consta en los Archivos de

Esta Srio. Gral. en el Libro de Actas de Exámenes Profe-

sionales No 6-09   Acta No 100/95 a

Reynosa, Tam. México

Atentamente.

C. p. Ma. del Socorro Arriaga Rives
Secretario General

SECRETARIA
GENERAL

---

EL C. PROFESOR JOSE LUIS GARCIA GARCIA, SECRETARIO DE EDUCACION, CULTURA
Y DEPORTE DEL GOBIERNO DEL ESTADO DE TAMAULIPAS, HACE CONSTAR QUE
La Universidad Valle del Bravo

en Ciudad Reynosa, Tam.    FUNCIONA POR ACUERDO GUBERNA-

MENTAL DE FECHA    15 de Junio de 1977    ASIMISMO, QUE LA VI-
GENCIA DE PLANES Y PROGRAMAS DE ESTUDIO ESTAN SUPERVISADOS POR ESTA
OFICIAL.

LIBRO NUM.    44    REG. NUM.  39365  FOJAS  022

CD. VICTORIA TAM.    2 de MAYO  DE 1995

P. A. DEL C. SECRETARIO DE EDUCACION, CULTURA Y DEPORTE

EL DIRECTOR DE SERVICIOS REGIONALES
PROF. FILEMON SALAZAR JARAMILLO

SECRETARIA DE EDUCACION, CULTURA
Y DEPORTE EN TAMAULIPAS

Vo. Bo.
JEFE DEL DEPARTAMENTO DE
REGISTRO Y CERTIFICACION

---

LEGALIZACION No.    05724
POR ACUERDO DEL C. LIC. JAIME RODRIGUEZ INURRIGARRO, SECRETA-
RIO GENERAL DE GOBIERNO, SE LEGALIZA (N) LA (S) FIRMA (S) QUE AN-
TECEDE(N) POR SER LA(S) DEL (LOS) C. Dr. Hector García
Herrera a. c. P. Ma. del Socorro Arriaga Rives
son el Rector y Secretario General de la Universidad
Valle del Bravo en Ciudad Reynosa, Tam
EN LOS TERMINOS DE LOS ARTICULOS 5, DE LA CONSTITUCION POLITICA
DEL ESTADO, Y 15o. Y 22o, DE LA VIGENTE LEY ORGANICA DE LA AD-
MINISTRACION PUBLICA DEL ESTADO DE TAMAULIPAS.

D. VICTORIA, TAM.    Mayo 22    DE 1995
EL SUBSECRETARIO DE GOBIERNO,

LIC. JOSE JOEL GARZON TIJERINA

GOBIERNO DE TAMAULIPAS
PODER EJECUTIVO

---

SECRETARIA DE EDUCACION PUBLICA
DIRECCION GENERAL DE PROFESIONES

Registrado a fojas    105
del libro    A-215
de Registro de Títulos Profesionales y
Grados Académicos
bajo el número    31
cédula No.    2155230
México, D. F. a 28 de Agosto de 19

EL REGISTRADOR

S. E. P.
DIRECCION GENERAL DE PROFESIONES



# ACCESORIOS ILIMITADOS, S.A. DE C.V.

## REGISTRO FEDERAL DE CONTRIBUYENTES: AIL-941215-IF4

## EXPEDIENTE DE:

## PRUEBAS POR ICUMPLIMIENTO DE CONTRATO ACCESORIOS ILIMITADOS, S.A. DE C.V.
### VS
## SANTA´S BEST. BILL PROTZ.

## ULTIMA ACTUALIZACION NOVIEMBRE 2002.

con copia para:
agencia del ministerio publico de h. Matamoros, Tamps.



18 Y HERRERA No. 84  ZONA CENTRO  C.P. 87300  H. MATAMOROS, TAM.  TEL.(8) 816-51-30 FAX (8) 813-99-92
R.F.C. AIL-941215-IF4



**INDICE**

**PRUEBA 1.-** IMPUESTOS FEDERALES Y CUOTAS AL SEGURO SOCIAL.

**PRUEBA 2.-** INDEMNIZACIONES CON CORTE A ENERO DEL 2002.
      a) PERSONAL SINDICALIZADO.
      b) PERSONAL DE CONFIANZA.

**PRUEBA 3.-** INDEMNIZACIONES CON CORTE A NOVIEMBRE DEL 2002.
      a) PERSONAL SINDICALIZADO.
      b) PERSONAL DE CONFIANZA.

**PRUEBA 4.-** PAGO PENDIENTE POR ASESORIA Y TRAMITES AL DESPACHO CONTABLE.

**PRUEBA 5.-** SUMA DEL IMPORTE TOTAL DE LA DEUDA.

**PRUEBA 6.-** BASES Y FUNDAMENTOS DE LA LEY.

**PRUEBA 7.-** DOCUMENTOS QUE ACREDITAN LA CAPACIDAD PARA LA ELABORACION DE LAS PRUEBAS ARRIBA LISTADAS, DEL ASESOR FISCAL Y CONTADOR PUBLICO. ( COPIA DEL TITULO PROFESIONAL)



18 Y HERRERA No. 84  ZONA CENTRO  C.P. 87300  H. MATAMOROS, TAM.  TEL.(8) 816-51-30 FAX (8) 813-99-92
R.F.C. AIL-941215-IF4



# ACCESORIOS ILIMITADOS, S.A. DE C.V.

## IMPUESTOS FEDERALES Y CUOTAS AL SEGURO SOCIAL

| CONCEPTO | IMPORTE HISTORICO | ACTUALIZACION | RECARGOS | MULTA 70% | TOTAL | VENCIO |
|---|---|---|---|---|---|---|
| ISR ANUAL DEL EJERCICIO 2001 | 50,032.00 | 1,290.35 | 51,322.35 | 71,851.29 | 174,495.99 | MZO-02 |
| 1er TRIMESTRE DEL 2002  ENE-MZO | 24,847.00 | 973.14 | 25,820.14 | 36,148.20 | 87,788.48 | ABR -02 |
| 2do TRIMESTRE DEL 2002  ABR-JUN | 17,452.14 | 790.45 | 18,222.59 | 25,511.63 | 61,956.81 | JUL -02 |
| DECLARACION ANUAL 2002 | ? | ? | ? | ? | ? | vence el 31-mzo-03 |
| IMSS, AFORE E INFONAVIT ENERO 2002 AL 15 DE NOV 2002 | 241,987.93 | 6,586.96 | 248,574.89 | 348,004.85 | 845,154.63 | |
| SUMA: | 334,299.07 | 9,640.90 | 343,939.97 | 481,515.96 | 1,169,395.90 | |



**PAGO PENDIENTE POR CONCEPTOS DE:**

ELABORACION DE REPORTES
TRAMITES ANTE LAS DEPENDENCIAS FEDERALES, ESTATALES
PAGOS ANTE LAS DEPENDENCIAS DE GOBIERNO
ACTUALIZACION, PROYECCION DE IMPUESTOS A PAGAR
HONORARIOS VENCIDOS AL CONTADOR INTERNO
REPRESENTACION ANTE:
* IMSS
* TESORERIA DEL ESTADO
* TESORERIA DE LA FEDERACION

45,000.00



| | SUMA 1 CORTE A ENERO 2002 | SUMA 2 CORTE A NOV-2002 |
|---|---|---|
| IMPUESTOS FEDERALES Y CUOTAS AL IMSS | 870,650.90 | 1,169,395.90 |
| LIQUIDACION PERSONAL | 1,234,300.38 | 2,086,370.15 |
| ASESORIA Y TRAMITES (CONTADOR) | 22,000.00 | 45,000.00 |
| | 2,126,951.28 | 3,300,766.05 |
| TIPO DE CAMBIO: | 9.27 | 10.00 |
| | 229,444.58 DLLS | 330,076.61 DLLS |



LA ACTUALIZACION SE DETERMINA DE ACUERDO AL INDICE NACIONAL DE PRECIOS AL CONSUMIDOR QUE SE PUBLICA EN EL DIARIO OFICIAL DE LA FEDERACION.    (INF

LOS RECARGOS ES LA SUMA DE LOS PORCENTAJES QUE EL BANCO DE MEXICO DA A CONOCER PARA APLICAR A LOS PAGOS ATRAZADOS

LA MULTA, ES EL PORCENTAJE QUE SE APLICA AL IMPORTE DE LA DEUDA ORIGINAL.
EL ARTICULO DE LA LEY 304-B DEL IMSS DICE QUE SE APLICARA DEL 70 AL 100% DE MULTA, SOBRE EL IMPUESTO OMITIDO, PORCENTAJE QUE NOSOTROS ESTIMAMOS ES EL MENOR (70 %) Y NO EL 100%

ESTOS IMPORTES ESTAN ACTUALIZADOS AL 15 DE NOVIEMBRE DEL 2002 Y CADA MES, EL IMPORTE A PAGAR SERA AUMENTADO EN PROPORCION A LA ACTUALIZACION, RECARGOS Y MULTAS QUE SE PUBLICAN CADA MES EN EL DIARIO OFICIAL DE LA FEDERACION.

ACLARANDO QUE ESTA INFORMACION SOLO ES UNA PROYECCION DEL IMPORTE DE LA DEUDA. Y SE TENDRA EL IMPORTE EXACTO EN EL MOMENTO DE PAGO, QUE POR EL MECANISMO DE LAS DEPENDENCIAS DE GOBIERNO PROVOCARIA UNA VARIACION DEL IMPORTE; SIENDO ESTAS: IMSS, SECRETARIA DE HACIENDA Y CREDITO PUBLICO, TESORERIA DE LA FEDERACION. INFONAVIT AFORE, ADMINISTRACION LOCAL DE RECAUDACION Y ADMINISTRACION LOCAL DE AUDITORIA FISCAL DEL ESTADO.

REFERENTE AL PAGO DE LAS INDEMNIZACIONES DE TODO EL PERSONAL LA BASE ES EL ARTICULO 50 FRACCION I, II Y III DE LA LEY FEDERAL DEL TRABAJO (LEYES Y REGLAMENTOS E INSTRUCTIVOS COMPLEMENTARIOS. POR LO QUE ESTOS IMPORTES NO PUEDEN SER REDUCIDOS YA QUE ASI LO MARCA LA LEY ANTERIORMENTE MENCIONADA.

(LIQUIDACION, PRIMA DE ANTIGÜEDAD AGUINALDOS, VACACIONES, PRIMA VACACIONAL Y LOS SALARIOS VENCIDOS). FUNDAMENTO EN LA FRACCION III DEL ARTICULO ANTES MENCIONADO Y QUE AL CALCE DICE: "ADEMAS DE LAS INDEMNIZACIONES A QUE SE REFIEREN LAS FRACCIONES ANTERIORES EN EL IMPORTE DE 3 MESES DE SALARIO Y EN DE LOS SALARIOS VENCIDOS DESDE LA FECHA DEL DESPIDO HASTA QUE SE PAGUEN LAS INDEMIZACIONES"



## INDEMNIZACIONES CON CORTE AL MES DE ENERO DEL 2002

| EMPLEADOS DEL SINDICATO | LIQUIDACION | AGUINALDO | VACACIONES Y PRIMA | SALARIOS CAIDOS |
|---|---|---|---|---|
| RODRIGUEZ CASTILLO MARCIAL | 23,122.50 | 115.61 | 115.61 | 2,574.33 |
| BORJAS MORENO MOISES | 24,830.00 | 124.15 | 124.15 | 2,764.42 |
| ZUÑIGA BAUTISTA PABLO | 23,122.50 | 115.61 | 115.61 | 2,574.33 |
| SANCHEZ  CONTRERAS JESUS | 22,967.50 | 114.84 | 114.84 | 2,557.00 |
| OLMOS MORENO LUIS ALBERTO | 24,665.00 | 123.33 | 123.33 | 2,746.04 |
| ROMERO GONZALEZ BENITO | 22,967.50 | 114.84 | 114.84 | 2,557.08 |
| ESCOBAR SIFUENTES ABEL | 22,967.50 | 114.84 | 114.84 | 2,557.08 |
| ZAMORANO BUSTOS TERESA | 22,655.00 | 113.29 | 113.28 | 2,522.26 |
| GALINDO REYES RAUL | 22,655.00 | 113.29 | 113.29 | 2,522.26 |
| VEGA VELAZQUEZ GLORIA LINA | 24,330.00 | 121.65 | 121.65 | 2,708.74 |
| ENRIQUEZ TORRES MARIA ISABEL | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| MOTA RIVERA ZENAIDA | 22,655.00 | 113.28 | 113.28 | 2,522.26 |
| CRUZ BLANCO FERNANDO | 24,330.00 | 121.65 | 121.65 | 2,708.74 |
| VEGA VELAZQUEZ JOSE ADAN | 24,330.00 | 111.55 | 121.65 | 2,708.74 |
| DE LEON GONZALEZ MARGARITA | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| MARTINEZ SANCHEZ ERNESTO | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
| TORRES MARTINEZ ARNULFO | 22,310.00 | 111.55 | 111.55 | 2,483.85 |
|  | 394,837.50 | 1,964.12 | 1,974.20 | 43,958.66 |
|  |  |  |  | 442,734.49 |



## INDEMNIZACIONES CON CORTE AL MES DE ENERO DEL 2002

### CONFIANZA

| | | | |
|---|---|---|---|
| HERNANDEZ DOLORES EMILY MA. | 177,532.20 | 4,871.90 | 1,168.00 | 9,740.20 |
| GALICIA LEDEZMA ANA LUZ | 90,276.60 | 2,375.70 | 594.00 | 4,952.97 |
| VALLEJO CHAVEZ JOSE SAMUEL | 90,231.00 | 2,374.50 | 596.00 | 4,950.47 |
| CRUZ SALAZAR FREDY | 89,051.10 | 2,343.45 | 495.00 | 4,885.74 |
| PARDO MARQUEZ ARTEMIO | 61,924.80 | 1,629.60 | 436.00 | 3,397.47 |
| CAMPOS RODRIGUEZ EDUARDO | 89,569.80 | 2,357.10 | 587.00 | 18,018.72 |
| ALMEDARIZ MEDINA MA. DEL ROSARIO | 77,884.80 | 2,049.60 | 468.00 | 47,004.16 |
| | 676,470.30 | 17,301.85 | 4,344.00 | 92,949.74 |
| | | | | 791,565.89 |



INDEMNIZACIONES CON CORTE AL MES DE NOVIEMBRE DEL 2002

| | LIQUIDACION | AGUINALDO | VACACIONES Y PRIMA | SALARIOS CAIDOS |
|---|---|---|---|---|
| RODRIGUEZ CASTILLO MARCIAL | 23,122.50 | 1,387.35 | 1,387.35 | 30,892.00 |
| BORJAS MORENO MOISES | 24,830.00 | 1,489.80 | 1,489.80 | 33,173.00 |
| ZUÑIGA BAUTISTA PABLO | 23,122.50 | 1,387.35 | 1,387.35 | 30,892.00 |
| SANCHEZ CONTRERAS JESUS | 22,967.50 | 1,378.05 | 1,378.05 | 30,684.00 |
| OLMOS MORENO LUIS ALBERTO | 24,665.00 | 1,479.90 | 1,479.90 | 32,952.44 |
| ROMERO GONZALEZ BENITO | 22,967.50 | 1,378.05 | 1,378.05 | 30,685.00 |
| ESCOBAR SIFUENTES ABEL | 22,967.50 | 1,378.05 | 1,378.05 | 30,685.00 |
| ZAMORANO BUSTOS TERESA | 22,655.00 | 1,359.30 | 1,359.30 | 30,267.08 |
| GALINDO REYES RAUL | 22,655.00 | 1,359.30 | 1,359.30 | 30,267.08 |
| VEGA VELAZQUEZ GLORIA LINA | 24,330.00 | 1,459.80 | 1,459.80 | 32,504.88 |
| ENRIQUEZ TORRES MARIA ISABEL | 22,310.00 | 1,338.60 | 1,338.60 | 29,806.16 |
| MOTA RIVERA ZENAIDA | 22,655.00 | 1,359.30 | 1,359.30 | 30,267.08 |
| CRUZ BLANCO FERNANDO | 24,330.00 | 1,459.80 | 1,459.80 | 32,504.88 |
| VEGA VELAZQUEZ JOSE ADAN | 24,330.00 | 1,459.80 | 1,459.80 | 32,504.88 |
| DE LEON GONZALEZ MARGARITA | 22,310.00 | 1,338.60 | 1,338.60 | 29,806.16 |
| MARTINEZ SANCHEZ ERNESTO | 22,310.00 | 1,338.60 | 1,338.60 | 29,806.16 |
| TORRES MARTINEZ ARNULFO | 22,310.00 | 1,338.60 | 1,338.60 | 29,806.16 |
| | 394,837.50 | 23,569.05 | 23,690.25 | 527,503.96 |

969,600.76



## INDEMNIZACIONES CON CORTE AL MES DE NOVIEMBRE DEL 2002

### CONFIANZA

| | | | | |
|---|---|---|---|---|
| HERNANDEZ DOLORES EMILY MA. | 177,532.20 | 4,671.90 | 3,737.52 | 107,142.24 |
| GALICIA LEDEZMA ANA LUZ | 90,276.60 | 2,375.70 | 1,900.56 | 54,482.72 |
| VALLEJO CHAVEZ JOSE SAMUEL | 90,231.00 | 2,374.50 | 1,899.60 | 54,455.20 |
| CRUZ SALAZAR FREDY | 89,051.10 | 2,343.45 | 1,874.76 | 53,743.12 |
| PARDO MARQUEZ ARTEMIO | 61,924.80 | 1,629.60 | 1,303.68 | 37,372.16 |
| CAMPOS RODRIGUEZ EDUARDO | 89,569.80 | 2,357.10 | 1,885.68 | 54,056.16 |
| ALMEDARIZ MEDINA MA. DEL ROSARIO | 77,884.80 | 2,049.60 | 1,639.68 | 47,004.16 |
| | 676,470.30 | 17,801.85 | 14,241.48 | 408,255.76 |
| | | | | 1,116,769.39 |

B

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER ALLIANCE, L.L.C., | )( | |
| a Texas Limited Liability | )( | |
| Company, and ACCESORIOS | )( | |
| ILIMITADOS, A Mexican | )( | |
| Corporation, | )( | |
| Plaintiffs | )( | |
| | )( | |
| VS. | )( | CASE NO. B-02-079 |
| | )( | |
| WILLIAM F. PROTZ, JR. and | )( | |
| SANTA'S BEST, an Illinois | )( | |
| General Partnership, | )( | |
| Defendants | )( | |

---

ORAL AND VIDEOTAPED DEPOSITION OF
CLARENCE CARROLL
JANUARY 29, 2003

---

ORAL AND VIDEOTAPED DEPOSITION OF CLARENCE

CARROLL, produced as a witness at the instance of the

DEFENDANTS, taken in the above styled and numbered

cause on JANUARY 29, 2003, reported by CORINNA N.

GARCIA, Certified Court Reporter No. 5210, in and for

the State of Texas, at the offices of Phil A. Bellamy,

Attorney at Law, 815 Ridgewood, Brownsville, Texas,

pursuant to the Federal Rules of Civil Procedure.

JANUARY 29, 2003                  Multi-Page™                  CLARENCE CARROLL

Page 150

1   A. I'm sure Emily has it.
2   Q. Emily has it?
3   A. You keep all the Mexican papers in Mexico.
4   Q. But that's a document that -- I guess that's
5   property of Accesorios Ilimitados, correct?
6   A. Right.
7   Q. So it's in the possession of Accesorios
8   Ilimitados to the extent that Emily has possession of
9   it as an agent of Accesorios Ilimitados?
10  A. That's true. That's true.
11  Q. Is Accesorios Ilimitados doing business
12  anymore?
13  A. No.
14  Q. When was the last time it shipped product to
15  anyone?
16  A. Probably in April or May of last year.
17  Q. Who was that last shipment to?
18  A. I don't remember.
19  Q. You don't know the name of the customer?
20  A. No, I don't remember who that shipment went to,
21  no.
22  Q. Okay. Who were the customers you were doing
23  business with at that time?
24  A. It was probably, if I was just guessing,
25  Offray.

Page 151

1   Q. If it wasn't Offray, who was it?
2   A. Santa's Best.
3   Q. Besides Offray, Santa's Best, and Norma Ribbon,
4   did Accesorios Ilimitados have any other customers?
5   A. No.
6   Q. The court reporter has handed you what's been
7   marked as C. Carl Exhibit 6. Do you recognize that
8   document?
9   A. Yeah.
10  Q. That's a letter that you wrote to Bill Protz,
11  correct?
12  A. Uh-huh.
13  Q. Is that your signature at the bottom of it?
14  A. Looks like it.
15  Q. Why does it say C. C. Carroll?
16  A. That's my name. That's how I sign.
17  Q. I thought you told me you didn't have a middle
18  name.
19  A. I don't.
20  Q. Why do you sign C. C.?
21  A. My father was an Indian, and when he took the
22  name Carroll, he was given the name Clarence Carroll.
23  Q. Okay.
24  A. And when he joined the Navy, they would not let
25  him join the Navy as Clarence Carroll. He had to put

Page 152

1   down an initial. So he put Clarence C. Carroll. And
2   I'm a junior, so I became Clarence C. Carroll, Jr. And
3   on my passport it just says Clarence Carroll, Jr., but
4   I've always signed, for ever since I can remember,
5   until I got a passport, as C. C. Carroll. So --
6   Q. Now, this letter here is written July 8th,
7   1994, correct?
8   A. Uh-huh.
9   Q. And this kind of marks the beginning of your
10  relationship with Santa's Best?
11  A. It appears, yes.
12  Q. And Santa's Best was asking Border Alliance to
13  provide it with price quotes, correct?
14  A. Yes.
15  Q. Okay. Now, it says at the top "Border
16  Alliance, S.A. de C.V.," correct?
17  A. Uh-huh.
18  Q. Indicating Border Alliance was a Mexican
19  company, correct?
20  A. Right.
21  Q. But, in fact, that was not true, correct?
22  A. That's not true, right.
23  Q. But you held yourself out in this letter to be
24  a Mexican company, correct?
25  A. Well, we had connections with Accesorios.

Page 153

1   Q. But it says here Border Alliance, S.A. de C.V.
2   A. We just didn't change it.
3   Q. And why didn't you change it?
4   A. Never thought about it being important.
5   Q. Okay. You did not indicate in here -- you
6   never even mention the word Accesorios Ilimitados in
7   this quote, do you?
8   A. No, I don't guess.
9   Q. Santa's Best provided you with some samples for
10  examination, correct?
11  A. That's right.
12  Q. And Border Alliance responded with this quote,
13  correct?
14  A. That's right.
15  Q. And this quote said that price includes all
16  Mexican cost, correct?
17  A. Let me see. "Mexican duties if applicable,
18  trucking from Brownsville to Mexico."
19  Q. Don't get ahead of me, please. It says, "The
20  price includes all Mexican cost," correct?
21  A. Well, it specifies.
22  Q. Yeah.
23  A. "All Mexican cost including" --
24  Q. Down --
25  A. "Mexican customs, Mexican duties" --

BRYANT & STINGLEY, INC.                          Page 150 - Page 153
Brownsville 542-1020   Harlingen 428-0755   McAllen 618-2366

Page 154

1  Q. Please don't get ahead of me.
2  A. Okay.
3  Q. Does this contain the words "The price includes
4  all Mexican cost"?
5  A. Yes.
6  Q. Okay. And then after that it says the word
7  "including," correct?
8  A. Uh-huh.
9  Q. So that's not supposed to be an exhaustive
10 list. That's just, when you say "Mexican cost," some
11 examples of what is included in Mexican cost, correct?
12 A. I assume that could be, correct.
13 Q. So then it goes on to say what's included. And
14 when it says "all Mexican cost" is all labor cost,
15 correct?
16 A. Yes, I guess you could say it that way.
17 Q. It also goes on to say that -- it lists some
18 things that specifically were not included, correct, in
19 the very next sentence?
20 A. Let me see. U.S. customs, yes.
21 Q. It says, "The price does not include raw
22 materials," correct?
23 A. Right.
24 Q. It says, "The price does not include U.S.
25 customs or duties," correct?

Page 155

1  A. Right.
2  Q. It says, "The price does not include trucking
3  from your location to Brownsville and back to you,"
4  correct?
5  A. Right.
6  Q. Those are the only three things it lists as not
7  being included, correct?
8  A. It looks that way.
9  Q. Now, what Santa's Best location is being
10 referred to there?
11 A. I don't understand.
12 Q. It says, "trucking from your location in
13 Brownsville and back to you." Is that -- the "you"
14 means Santa's Best, right?
15 A. At the time I thought it was Manitowoc.
16 Q. Okay.
17 A. Wherever they told us.
18 Q. Okay. But Brownsville means Border Alliance's
19 facilities in Brownsville, correct?
20 A. Yeah.
21 Q. So, in other words, they were going to pay per
22 piece under this quote, correct?
23 A. Uh-huh.
24 Q. And you were going to take care of getting the
25 product to Brownsville, and they were going to take it

Page 156

1  from there?
2  A. Right.
3  Q. The only thing -- only caveat to that is that
4  they are supposed to send the raw materials down to
5  you, correct?
6  A. They sent the raw materials down to us, right.
7  Q. And they were responsible for U.S. customs and
8  duties, correct?
9  A. Right.
10 Q. Okay. This quote does not list any other costs
11 that were not included in the price quote, correct?
12 A. That's right.
13 Q. Quote does not say Accesorios Ilimitados or
14 Border Alliance's liquidation expenses would be Santa's
15 Best's responsibility, does it?
16 A. No.
17 Q. The quote does not say Accesorios Ilimitados or
18 Border Alliance's labor taxes and Social Security
19 payments would be Santa's Best's responsibility, does
20 it?
21 A. No.
22 Q. The letter does not -- this quote does not say
23 that Accesorios Ilimitados' workers salaries would be
24 Santa's Best's responsibility, does it?
25 A. No.

Page :

1  Q. The quote does not say vacation bonuses of
2  Accesorios Ilimitados' workers would be Santa's Best's
3  responsibility, does it?
4  A. No.
5  Q. Quote does not say Accesorios Ilimitados or
6  Border Alliance's worker indemnification expenses would
7  be Santa's Best's responsibility, does it?
8  A. No.
9  Q. The quote does not say that Accesorios
10 Ilimitados or Border Alliance's accountant or legal
11 fees would be Santa's Best's responsibilities, does it?
12 A. No.
13 Q. Now, I'd like you to take a look at another
14 document. Hand you what's been marked as Clarence
15 Carroll Exhibit 7. And this is a memo that was drafted
16 by Elaine Carroll, correct?
17 A. Yeah.
18 Q. And it was sent to Cindy Haefke?
19 A. Uh-huh.
20 Q. And this is a revised price quote -- price
21 quotes for 1996, correct, what this relates to?
22 A. It looks like it.
23 Q. Okay. And it says, "The new prices include the
24 loading and the labeling as discussed during the trip
25 to Manitowoc," correct?

Page 222

1   A. Accesorios Ilimitados.
2   Q. Okay. And why was it Accesorios Ilimitados'
3 responsibility?
4   A. Because they were the ones that were receiving
5 the material.
6   Q. Okay. So when this problem arose, I presume
7 that you contacted Santa's Best?
8   A. Yes, I did talk to Richard.
9   Q. And I presume that this was some sort of a cash
10 flow problem for Accesorios Ilimitados and/or Border
11 Alliance, correct?
12   A. Well, I mean, I couldn't pay the duties, no.
13   Q. You didn't have the cash to go out and do it?
14   A. Right.
15   Q. So because that circumstance arose in July of
16 2001, it was in July of 2001 then, I suppose, you made
17 some kind of agreement with Santa's Best that they
18 would reimburse you for those duties?
19   A. Yes.
20   Q. Okay. And did they, in fact, do that?
21   A. They did.
22   Q. And it was about $105,000 roughly?
23   A. Roughly.
24   Q. And they paid you about $105,000, roughly?
25   A. Roughly.

Page 223

1   Q. Okay. And then Accesorios Ilimitados had the
2 obligation to try and go back and get those back from
3 the Mexican government, correct?
4   A. We didn't have the obligation.
5   Q. Well, it was Accesorios Ilimitados' obligation
6 to the Mexican government, correct?
7   A. To the Mexican government? Yes, our obligation
8 was to the Mexican government. We were trying to
9 recover the money for them from Santa's Best.
10   Q. And Santa's Best advanced you the money,
11 correct?
12   A. For paying the duties.
13   Q. Yes, and then you were to go back to --
14 Accesorios Ilimitados was going to work through the
15 appropriate Mexican authorities to try and get a
16 refund, correct?
17   A. That's right.
18   Q. And you told Santa's Best that you felt that
19 there was about a 90 percent chance that you would be
20 successful, correct?
21   A. That's right.
22   Q. And so I presume by now you've gotten that paid
23 back?
24   A. Absolutely not.
25   Q. And why have you not been paid back?

Page 224

1   A. They said it would take from one to three years
2 to get it back, No. 1. No. 2, they said that because
3 the plant had closed -- that was one of the reasons we
4 were trying to keep the plant open. Because the plant
5 is closed, there was no entity to pay it to anymore.
6 So there is no more Accesorios Ilimitados.
7   Q. You closed down Accesorios Ilimitados?
8   A. We had to.
9   Q. When did you know that you were going to have
10 to close down Accesorios Ilimitados?
11   A. I thought we'd have closed it in February, but
12 we held out until June or July.
13   Q. When was it clear to you that you were going to
14 have to close it?
15   A. When -- I guess when I found out -- I was
16 pretty sure in January or February. I didn't see how I
17 could go on.
18   Q. You said "when we found out." What? You
19 started to say -- when you found out what?
20   A. When we found out -- when our trip, when we
21 went up north, when we went to Offray, we went to some other
22 companies that we thought might supply us some
23 business, and we came back empty-handed.
24   Q. When did that happen?
25   A. The end of 2001 in December.

Page 225

1   Q. December of 2001?
2   A. Roughly November, December 2001.
3   Q. So as of November or December of 2001, you knew
4 that you were going to shut down Accesorios Ilimitados?
5   A. I was pretty sure. I didn't see how --
6   Q. More likely than not?
7   A. More likely than not, right.
8   Q. So as of that time, it should have been clear
9 to you then that you were not going to be able to
10 recover the duties?
11   A. Absolutely. I didn't think we'd be able to.
12 Richard was told this.
13   Q. Well, isn't it true that you told Santa's Best
14 that there was going to be a 90 percent probability of
15 recovering those duties?
16   A. I just told you, yes, they said it would take
17 one to three years.
18   Q. When did you tell them there was a 90 percent
19 chance?
20   A. When did I tell them?
21   Q. Yes.
22   A. I don't remember.
23   Q. But it would have been sometime prior to
24 December of 2001?
25   A. Probably.

Page 330

1   Q. Whose word?
2   A. Bill Protz.
3   Q. And was -- and were the terms of what he told
4   you any different than what was in those documents?
5   A. No. Because that's the reason I wrote down the
6   stuff in those notes.
7   Q. Okay. So you -- is it your testimony the terms
8   of the deal are set forth in the maquila contract,
9   which is marked as Exhibit 18, the one that's marked as
10  Exhibit 17, and the one-page agreement which is marked
11  as Exhibit 16?
12  A. That's right.
13  Q. It's these three documents that you think
14  memorialize the terms of your agreement?
15  A. Plus the handwritten notes.
16  Q. But those are in your handwriting, correct?
17  A. Yeah.
18  Q. Okay. And they weren't signed by William
19  Protz?
20  A. No.
21  Q. Okay. On the maquila contract, for example, on
22  the one that's on Accesorios Ilimitados' letterhead, in
23  front of William Protz' name or on top of it, above it,
24  it says "Santa's Best," right?
25  A. Uh-huh.

Page 331

1   Q. And then underneath it it says "William Protz,
2   Jr.," correct?
3   A. Uh-huh.
4   Q. So he was signing on behalf of Santa's Best,
5   correct?
6   A. I guess. Like I say, I'm not a lawyer. I
7   don't know what legal standing that has.
8   Q. Okay. Can you read Spanish?
9   A. A little bit. I speak it much better than I
10  read it.
11  Q. Okay. In the first paragraph it talks about it
12  being a contract and who it's between. It mentions
13  Santa's Best's name, correct?
14  A. Uh-huh.
15  Q. It also mentions Accesorios Ilimitados,
16  correct?
17  A. Right.
18  Q. It doesn't mention Bill Protz's name, does it?
19  A. No, but it wouldn't. No Mexican contract would
20  do that.
21  Q. Okay.
22  A. They're only interested in the company.
23  Q. Okay. So is it your testimony that, based on
24  this document, it's your understanding that Santa's
25  Best became the U.S. side of the maquiladora, as far as

Page 332

1   Mexican authorities were concerned?
2   A. They became the supplier for the maquiladora.
3   Q. Santa's Best was the supplier?
4   A. Right. They were the supplier.
5   Q. William Protz wasn't the supplier?
6   A. I mean, I don't know that he personally sent
7   the stuff, no.
8   Q. Was it your understanding that William Protz
9   personally sent the stuff, or was it your understanding
10  that Santa's Best sent the stuff?
11  A. It's my understanding that under the direction
12  of William Protz that the material was sent.
13  Q. Yeah, from whom, Santa's Best?
14  A. Right.
15  Q. Because he was an employee of Santa's Best?
16  A. I don't know if he was an employee or not.
17  Q. He had some position of authority at Santa's
18  Best?
19  A. Absolutely. He said he was the owner.
20  Q. Okay. And so he's acting on behalf of Santa's
21  Best?
22  A. Yes.
23  Q. Okay. And on Exhibit 18, same thing?
24  A. Uh-huh.
25  Q. Signing on behalf of Santa's Best, correct?

Page 333

1   A. That's right.
2   Q. That's how you interpret that?
3   A. Yeah.
4   Q. It was never your intention to have William
5   Protz sign these contracts personally, was it?
6   A. Well, it's kind of like me and Border Alliance.
7   When I sign for Border Alliance, I sign for me.
8   Q. So every agreement you ever signed on behalf of
9   Santa's Best, you personally -- or, excuse me, on
10  behalf of Border Alliance, you personally guarantee?
11  A. I personally guarantee it.
12  Q. Okay. On this one-page agreement that you
13  have, it says -- the first sentence says, "This is an
14  agreement between Border Alliance, S.A. de C.V.," the
15  Mexican company?
16  A. Yeah.
17  Q. And Santa's Best?
18  A. Uh-huh.
19  Q. Is that right?
20  A. That's right.
21  Q. But Border Alliance, S.A. de C.V. wasn't in
22  existence when this document was supposedly signed, was
23  it?
24  A. I don't know. It was on the U.S. side.
25  Q. Yeah, but this is indicating a Mexican company,

Page 358

1  Q. You mentioned in there the existence of the
2 lease agreement, correct?
3  A. Yeah.
4  Q. And you mentioned there the existence of an
5 English agreement, correct?
6  A. Yeah, that agreement, right.
7  Q. That one-page English language agreement,
8 correct?
9  A. Yeah.
10  Q. Nowhere in there do you mention the existence
11 of maquiladora contracts, do you, at all?
12  A. No.
13  Q. You didn't come up with that until later,
14 correct?
15  A. I guess.
16  Q. I'd like to hand you another exhibit for you to
17 look at. Actually, it's one that we've already marked,
18 this letter right here. This is just a couple of days
19 later, December 14th, 2001, correct?
20  A. Uh-huh.
21  Q. And this is a letter from your attorney, Paul
22 Hemphill, correct?
23  A. Right.
24  Q. And in it Paul Hemphill is trying to make the
25 case for why Santa's Best should recognize the

Page 359

1 liabilities for some liquidations and things like that,
2 correct?
3  A. Right.
4  Q. Now, he mentions in there the existence of the
5 lease agreement, correct?
6  A. Yes.
7  Q. He mentions in there the existence of an
8 English language contract, correct?
9  A. Right.
10  Q. That one-page English language contract?
11  A. Uh-huh.
12  Q. Specifically Exhibit 16, correct?
13  A. Right.
14  Q. It doesn't mention in there anywhere the
15 existence of a maquila contract, does it?
16  A. No.
17  Q. Now, the last sentence of this one-page
18 agreement says, "A one-year notice is required for
19 termination of this agreement by either party,"
20 correct?
21  A. Uh-huh.
22  Q. Do you dispute that you -- is there any dispute
23 whether you received one year's notice?
24  A. No, I got a year's notice.
25  Q. No dispute about you got a year's notice. No dispute about

Page 360

1 that?
2  A. No, didn't resolve them of their responsibility
3 for liquidations, though.
4  Q. In your opinion.
5  A. I mean, I can't see how it could.
6  Q. You've been handed what has been marked as
7 Clarence Carroll Exhibit 26, correct?
8  A. Yes.
9  Q. That's entitled Plaintiffs' Objections and
10 Responses to Defendant Santa's Best First Request for
11 Production of Documents," correct?
12  A. Yes.
13  Q. Have you ever seen this document before?
14  A. Yes.
15  Q. Did you review this with your attorneys?
16  A. No, I reviewed it, but I don't think I reviewed
17 it with him.
18  Q. You reviewed it by yourself?
19  A. Yes.
20  Q. Okay. Did you read each one of these requests?
21  A. I can't tell you 100 percent sure, but I
22 probably glanced over all of them.
23  Q. Were you ever told to read all of these
24 requests?
25  A. I don't remember.

Page 361

1  Q. It says, "All documents used in preparation of
2 plaintiffs' answer to any interrogatory in this case."
3  A. I would -- the problem with that is all
4 documents used for the preparation of plaintiffs'
5 answers I -- some of these things I never thought would
6 come up. I mean, I gave everything that I felt was
7 pertinent to the case. See, I would have never thought
8 that an invoice that said "labor only" on it would have
9 been pertinent to the case.
10  Q. So you didn't think in terms of these requests?
11 You thought just in terms of what you thought was
12 pertinent?
13  A. No, it's what I understood to be right.
14  Q. Okay. It says, "All documents that plaintiffs
15 contend support the allegations of the first amended
16 complaint." Okay. Did you turn over all documents
17 that you feel support your claims in this case?
18  A. I thought I had.
19  Q. Okay. As you sit here today --
20  A. It looks evident that I didn't.
21  Q. Which documents didn't you?
22  A. The one about labor only, and, I don't know,
23 there has been a couple others brought up.
24  Q. Anything else besides what's been brought up
25 that you can think of?

JANUARY 29, 2003                    Multi-Page™                    CLARENCE CARROLL

Page 362

1    A. No. And I might forget something else. I
2  mean, what lawyers think about and what I think about
3  is two different things, and I don't know. This is --
4  for me this is --
5    Q. It says, "All documents relating to Border
6  Alliance's professional experience and expertise."
7    A. I think I gave all that.
8    Q. Do you have anything else in your possession
9  responsive to that?
10    A. No, I haven't got that much expertise, just
11 time.
12    Q. Okay. No. 4 says, "The original contracts
13 attached as Exhibits A through D to the first amended
14 complaint," which are the disputed contracts.
15    A. Yeah, I told you I didn't have those.
16    Q. Except for the lease.
17    A. The lease.
18    Q. And it's either in your possession -- the
19 original of the lease is either in your possession or
20 the possession of your attorneys?
21    A. It's somewhere.
22    Q. Are there any other contracts or written
23 agreements between Border Alliance, Accesorios
24 Ilimitados, and Santa's Best, William Protz, anywhere
25 in the world that you know of that you haven't turned

Page 363

1  over?
2    A. That I know of, no.
3    Q. What is your understanding of what damages have
4  been suffered by Border Alliance and/or Accesorios
5  Ilimitados?
6    A. Well, my damages would be as far as Border
7  Alliance goes, I don't know, Accesorios is a lost
8  company that cost probably close to $10,000 to set up.
9  My loss is that I can't work in Mexico anymore. So my
10 -- the expertise that -- what little it is that I have
11 is no longer viable because I can't cross the border.
12 Since that -- unfortunately, since the beginning of
13 this year, we have gotten several calls, several, about
14 three, three calls, from different people that were
15 willing for us to do work, one of them called Soft
16 Clip, and we can't do it. Another bow company called
17 us and wanted us to do bows. We can't do them. So,
18 yes, I have lost a great deal of business or possible
19 business because of this.
20    Q. Opportunities?
21    A. Opportunities. I figure I've got about another
22 five or six years of work. I mean, I'm 65, and I
23 figured I'd work until I was 70, 72, something like
24 that.
25    Q. Now, what about out-of-pocket costs? What

Page 364

1  out-of-pocket costs does Border Alliance or Accesorios
2  Ilimitados have?
3    A. Well, we lost desks and machinery and stuff
4  like that. When I'm talking about machine, I'm talking
5  about computers and cutters, and things like that that
6  were in Mexico along with Santa's Best stuff.
7    Q. Is that it?
8    A. I can't think of anything just right offhand.
9  I haven't really sat down and just thought about my
10 losses.
11    Q. What has Accesorios Ilimitados paid to the
12 various Mexican authorities?
13    A. What do you mean?
14    Q. Well, one of the big issues in this case has
15 been that, supposedly, Accesorios Ilimitados is going
16 to have to pay liquidation expenses to various people.
17    A. Yes.
18    Q. What have they had to pay?
19    A. Accesorios so far?
20    Q. Yes.
21    A. How much?
22    Q. Yeah.
23    A. Have had to pay or have paid?
24    Q. How much have they paid?
25    A. We haven't paid anything.

Page 365

1    Q. So you haven't paid anything to Hacienda?
2    A. No, we don't have the money.
3    Q. Haven't paid anything to Social Security?
4    A. No.
5    Q. Haven't paid anything to Infonavit?
6    A. Are you talking about since we closed the
7  plant?
8    Q. Yes.
9    A. No, haven't paid anything.
10    Q. Haven't paid anything for liquidation of
11 workers?
12    A. No.
13    Q. Haven't paid anything to ISPT?
14    A. No.
15    Q. Haven't paid anything to Aduana?
16    A. No.
17    Q. Haven't paid anything to IMSS?
18    A. No.
19    Q. Haven't paid anything to anyone?
20    A. No.
21    Q. Have any of these various Mexican companies --
22 various Mexican authorities initiated lawsuits?
23    A. Not at this point.
24    Q. Against Accesorios Ilimitados?
25    A. Not at this point.

Page 366

1  Q. As a result of the shutdown of the plant, your
2  accountant outlined a bunch of expenses in the expert
3  report. Are you familiar with that report?
4  A. Yes.
5  Q. But it's your testimony that Accesorios
6  Ilimitados has not had to pay any of those expenses to
7  anyone?
8  A. Have not had to?
9  Q. Yeah.
10  A. We haven't had the money to pay them.
11  Q. Have not paid any?
12  A. We haven't paid any of them. That's the
13  problem.
14  Q. And no one has initiated any legal proceedings
15  against Accesorios Ilimitados asking it to pay?
16  A. At this point.
17  Q. At this point?
18  A. Right.
19  Q. And it's a dead company now?
20  A. It's a dead company.
21  Q. Has anyone come to Border Alliance to pay any
22  of those things?
23  A. Cortez has come. They have been to Emily and
24  told Emily that if they didn't get satisfaction, that
25  they were going to take action against me.

Page 367

1  Q. Have they taken any action against you?
2  A. Not at this point.
3  Q. Who is "they"?
4  A. Hacienda, what you just asked.
5  Q. Okay. But Hacienda has not taken any action
6  against you?
7  A. Not at this point.
8  Q. Okay. And Border Alliance has not paid
9  anything to Hacienda?
10  A. Not at this point.
11  Q. Or anyone else --
12  Q. Or anyone else.
13  Q. -- associated with the shutdown of the plant?
14  A. That's right.
15  Q. Nor have you personally paid anything to anyone
16  as a result of the shutdown of the plant?
17  A. No.
18  Q. Nor has Elaine?
19  A. No.
20  Q. Your wife?
21  A. Nor has my little baby.
22  Q. Nor has Emily Hernandez?
23  A. No.
24  Q. No one has?
25  A. No one.

Page 368

1  Q. And no one has initiated any legal proceedings
2  against Border Alliance?
3  A. Not at this point. They're waiting to see
4  what's going to happen.
5  Q. Waiting to see what's going to happen in what?
6  A. In this.
7  Q. Who says?
8  A. I took it over and showed it to him. I took
9  the document over and I said, "Here. This is what's
10  going on."
11  Q. Who did you take these documents to?
12  A. I took them and gave them to Emily. She gave
13  them to the authorities.
14  Q. Okay. And do you know which authorities Emily
15  gave them to?
16  A. The ones we've been talking about.
17  Q. Hacienda?
18  A. Hacienda.
19  Q. Anyone else?
20  A. Yeah, Cortez.
21  Q. Anyone else?
22  A. The union, the union people, the people.
23  Q. Anyone else?
24  A. No.
25  Q. If you turned -- so there really wouldn't be

Page 369

1  any documentation of any out-of-pocket expenses,
2  because there haven't been any out-of-pocket expenses?
3  A. That's what we said.
4  Q. Okay. Because I haven't seen any documents
5  turned over related to out-of-pocket expenses, and that
6  explains why, correct?
7  A. Yes.
8  Q. What work has Paul Hemphill done for either you
9  or Elaine over the years?
10  A. Just this's and that's. Not much.
11  Q. What do you recall?
12  A. Let me see. He wrote a letter to Santa's Best
13  or -- and to you all before that. I'm sure he's done
14  something, but I can't remember what. Oh, he just did
15  a deal for my daughter, and that was through us.
16  Q. Did he help you with the setup of any of these
17  companies?
18  A. Oh, no, he doesn't know anything about that.
19  He speaks good Spanish, though.
20  Q. One of the interrogatory requests that we had
21  was "Identify any persons plaintiffs intend to call as
22  a witness." And the answer was "Plaintiffs have not
23  decided who to call as witnesses." Has any decision
24  been made as of this time as to who you're going to
25  call as witnesses?

**BA**

BORDER ALLIANCE, S.A. de C.V.

135 POINCIANA • BROWNSVILLE, TEXAS 78521
(210) 544-4730  FAX (210) 544-3139

July 8, 1994

William F. Protz, Jr.
Santa's Best
P.O. Box 1387
Manitowoc, Wi. 54221-4448

Dear Mr. Protz;

Thank you for your interest in our company. I must apologize for the delay in responding, as we are in the midst of vacations. Upon reviewing your samples, we feel confident that our quality and production capabilities will meet or exceed your requirements.

Listed below are prices for bow only bulk packaged, followed by the completed bow on the card as sampled. The price includes all Mexican cost including Mexican customs, Mexican duties if applicable, trucking from Brownsville to Mexico and returned to Brownsville. and all labor cost. The price does not include raw materials, U. S. customs or duties, or trucking from your location to Brownsville and back to you. It is difficult to give a binding quote without material to make time studies. We also need quanities to divide fixed cost among; however, with the experience we have in making bows, we feel these prices will be close or possibly a little high.

C Carroll

EXHIBIT NO. 6

CORRINA GARCIA

D 00257

|  |  | bow only |  | bow on card as sample |
|---|---|---|---|---|
| Mini | 7924-28 | .035 |  | .075 |
| 25' Century | 7925-059 | .065 |  | .09 |
| 2" | 7830-39 | .065 |  | .08 |
| Organza Filler | 7920-30 | .05 |  | .075 |
| 1" | 7835-53 | .065 |  | .08 |

I have enclosed a sample of the bows made with available materials.

We look forward to your visit in August.

Sincerely Yours;

Clarence Carroll

D 00258

## Lease Agreement

Santa's Best agrees to continue the use of the building located at Calle 18 and Herrera, Matamoros, Mexico for the next three consecutive years. This term is from May - June 1999 through January - February 2000 at the rate of $3600.00 per month. The rate from February - March 2000 until December 31, 2003 will be $4600.00 per month. This is the agreement set forth by Border Alliance / Accesorios Ilimitados on behalf of and with verbal consent of Santa's Best, Lubbock, Texas, with Fernando Cortez of Matamoros, Mexico. This contract is already in force by verbal agreement and now by this written contract.

William F. Protz, Jr.

Santa's Best

Sept 1, 1999

OFFICIAL SEAL
DOLORES K OLSEN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/20/01

notary U.S.A.   date  9-9-99

Notary Public, State of Texas
Exp. 4/21/2001

notary U.S.A.
date

Clarence Carroll
Border Alliance

Emily Hernandez
Accesorios Ilimitados

EXHIBIT NO. 10
C. Carroll
CORRINA GARCIA

Copy from Original

## CONFIDENTIALITY AGREEMENT

AGREEMENT by and between SANTA'S BEST (Discloser) and *Borden Allianco* (Undersigned).

WHEREAS Discloser agrees to allow Undersigned access to certain confidential information, business plans, trade secrets and proprietary information relating to inventions, designs, abstracts, images and manufacturing methods developed by Discloser for purposes of evaluation by Undersigned as a possible "New Product" in Discloser's line of Christmas oriented products, and

WHEREAS, the Undersigned and its agents, shareholders, officers, employees, engineers, attorneys, accountants or advisors ("Agents") may review, examine, inspect, have access to or obtain such information as may be revealed by Discloser only for the purpose described above, and to hold such disclosed information confidential pursuant to the terms of this agreement.

BE IT ACKNOWLEDGED, that Discloser shall reveal to the Undersigned certain confidential information, mechanisms and images, only on the following conditions:

1.     The Undersigned agrees to hold all disclosed confidential or proprietary information, trade secrets, inventions, designs, images, written and oral representations ("information") in trust and confidence and agrees that it shall be used only for the intended purpose, and shall not be used for any other purpose nor disclosed to any third party (other than the Agents) without the written consent of Discloser. The parties agree and understand that notwithstanding anything herein to the contrary, the following shall not constitute confidential information subject to the restrictions of this Agreement:   (a)   information which was in the public domain at the time of disclosure;  (b) information which was known to the Undersigned or its Agents prior to its disclosure by Discloser; (c)  information which, though originally confidential, subsequently becomes part of the public domain through no fault of the Undersigned or its Agents' (d)  information which, though originally confidential, is subsequently received by the Undersigned or its Agents from a third party who is free to disclose the information; and (e)  information which the Undersigned or its Agents is obligated or otherwise required to disclose pursuant to court order, or pursuant to the provision of any statute, regulation, ordinance or other applicable law.

2.     No copies, representations or abstracts will be made or retained of any information supplied by Discloser. Upon written demand by Discloser, all information provided by Discloser, including written notes, photographs or memoranda shall be promptly returned to Discloser.



EXHIBIT NO. 14

CORRINA GARCIA

D 00003

Confidentiality Agreement                                                     Page 2

3.      The Undersigned specifically agrees that it will undertake to use reasonable efforts to protect the confidentiality of the information supplied by Discloser and that prior to disclosing any such information to any Agents, the Undersigned shall inform such Agent who is to receive such information of the confidential nature thereof and of the Undersigned's duties hereunder. In the event the Undersigned desires to disclose such information to a third party other than an Agent, the Undersigned shall first obtain a written acknowledgement from such third party that it will be bound by the terms of this Agreement.

4.      The Undersigned acknowledges the information disclosed under terms of this agreement herein constitutes proprietary and trade secrets and in the event of unlawful use of wrongful disclosure, Discloser shall be entitled to injunctive relief as a cumulative and not necessarily successive remedy without need to post bond.

5.      This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

Signed under seal this  15th day of  April      , 19 97.

*Border Alliance*

By:  *C.C. Carroll*

And

SANTA'S BEST

By:  *Wm. J. Platz*

(Discloser)

STATE OF TEXAS

COUNTY OF CAMERON

This instrument was acknowledged before me on the 15th day of April, 1997, by C. C. CARROLL.



*Noemi A. Campos*
Notary Public, State of TExas

D 00004

## Lease Agreement

Santa's Best agrees to continue the use of the building located at Calle 18 and Herrera, Matamoros, Mexico for the next three consecutive years. This term is from May - June 1999 through January - February 2000 at the rate of $3600.00 per month. The rate from February - March 2000 until December 31, 2003 will be $4560.00 per month. This is the agreement set forth by Border Alliance / Accesorios Ilimitados on behalf of and with verbal consent of Santa's Best, Lubbock, Texas, with Fernando Cortez of Matamoros, Mexico. This contract is already in force by verbal agreement and now by this written contract

_William F. Protz, Jr._ signature 8/9/99

William F. Protz, Jr.

Santa's Best

notary U.S.A.
date

_C. C. Carroll_ signature

Clarence Carroll

Border Alliance

notary U.S.A.
date

EXHIBIT NO. 15

CORRINA GARCIA

Emily Hernandez

Accesorios Ilimitados

## AGREEMENT

This agreement is between Border Alliance S.A. de C. V. and Santa's Best.

Border Alliance agrees to the following provisions:
Border Alliance will provide labor, payroll, and payroll taxes, and negotiate union contracts on behalf of Santa's Best. Border Alliance will provide all utilities, phones, office equipment and supplies. Border Alliance will produce a quality product and deliver all goods in a timely manner as per the requirements of Santa's Best. A warehouse in the U.S. will be supplied to ship and receive. Transportation and broker in Mexico will be furnished not to exceed one import or export per week. Border Alliance will submit bids for all new products and provide transportation to pick up and deliver products in the ejidos.

Santa's Best agrees to the following provisions.
Santa's Best agrees to provide all raw materials, machinery, and equipment necessary to produce their product as well as any required training. Santa's Best will provide payment for lease (including taxes) of Mexican Warehouse, transportation and broker in U.S. and in Mexico if more than once per week. Santa's Best will be responsible for all taxes (except payroll), liquidations of not more than 20 union workers, 2 supervisors, and 2 office workers, and fire and theft insurance to cover their product.

Santa's best also agrees to allow Border Alliance to use a small area for storing ribbon for Norma Ribbon in exchange for the use of the U. S. warehouse.

A one year notice is required for termination of this agreement by either party.

_____
Clarence Carroll

_____
Bill Protz

EXHIBIT NO. _16_

CORRINA GARCIA

P 0034



PAGINA 1 DE 3

CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST
EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS
PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WI. 544221-
1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE,
TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H.
MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA
CONTRATAR, Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE
A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA
TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON
EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE
LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES,
EQUIPO , DISENOS ESPECIFICACIONES Y NORMAS DE CALIDAD
PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS,
S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS
MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO
INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO
QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS
DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE
HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A
EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA
UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE
A RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE
NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA
PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS
TAMPS.

EXHIBIT NO. 17
CORRINA GARCIA

P 0014



CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN. SANTAS'S BEST REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS POR LA PRIMERA, REEMBOLSANDOSE POR ELLAS UNICAMENTE EL COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE (12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N 5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR , SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS — TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.



PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE
ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE —
DEMANDADA.

SANTA'S BEST

_WILLIAM PROTZ JR._

ACCESORIOS ILIMITADOS,
S.A. DE C.V.

C. EMILY MA. HERNANDEZ D.

P 0016



SANTA'S BEST.



1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 544221-1387
(414) 684-4448
FAX (414) 684-8772

PAGINA 1 DE 3

## CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST
EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS
PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WI. 544221-1387
Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE,
TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H.
MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA
CONTRATAR. Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE
A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA
TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON
EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE
LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES,
EQUIPO , DISENOS ESPECIFICACIONES Y NORMAS DE CALIDAD
PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS,
S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS
MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO
INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO
QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS
DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE
HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A
EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA
UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A
RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE
NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA
PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS
TAMPS.

EXHIBIT NO. 18
CORRINA GARCIA



SE ____ ___RIA DE COMERCIO Y
FOMENTO INDUSTRIAL
USDELEGACION FEDERAL EN CD. VICTORIA
TAMAULIPAS.

SANTA'S BEST.



1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4448
FAX (414) 684-8772

PAGINA 2 DE 3

CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU
SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR
LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS
PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN, SANTA'S BEST
REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD
CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD
ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS
POR LA PRIMERA, REEMBOLSANDOSE POE ELLAS UNICAMENTE EL
COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO
CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN
CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE
CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON
TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE
(12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU
VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S
BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES
QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N.
5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR ,
SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE
ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE
TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS ——
TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA
EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY
FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.





SANTA'S BEST.

1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4448
FAX (414) 684-4772

PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE
ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE
DEMANDADA.

SANTA'S BEST                          ACCESORIOS ILIMITADOS,
                                       S.A. DE C.V.

_____               _____
WILLIAM PROTZ JR.                      C. EMILY MA. HERNANDEZ D.

LIC. ABELARDO GUERRA FARIAS
GUFA-421111-902
NOTARIO PUBLICO NUMERO 131

LIC. ABELARDO GUERRA FARIAS
Notario Público No. 131
H. Matamoros, Tams.

P 0012

NORTHFIELD, IL    •    VINELAND, NJ    •    MANITOWOC, WI    •    HONG KONG



State of Texas        )(

County of Cameron )(

This instrument was acknowledged before me on this 10th day of March, 1995 by William Protz Jr. of SANTA'S BEST, on behalf of said corporation.

_Alicia Castillo_
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95



State of Texas        )(

County of Cameron )(

This instrument was acknowledged before me on this 10th day of March, 1995 by Emily Maria Hernandez Dolores of Accesorios Ilimitados, S.A. DE C.V., on behalf of said corporation.

_Alicia Castillo_
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95

SELLO

CONSULADO DE Nov. 827953/20
BROWNSVILLE, TEXAS

| DERECHOS |
| --- |
| $17.00 DOLARES |

SERVICIO EXTERIOR MEXICANO

P 0013

EL SUSCRITO:    JUAN CARLOS CUE VEGA

C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BORDER ALLIANCE AND<br>ACCESORIOS ILIMITADOS | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL NO. B-02-079 |
| WILLIAM F. PROTZ, JR. AND<br>SANTA'S BEST | §<br>§<br>§ | |

United States District Court
Southern District of Texas
RECEIVED

**MAY 15 2002**

Michael N. Milby, Clerk of Court.

## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Border Alliance and Accesorios Ilimitados, Plaintiffs, file this their First Amended Original Complaint, complaining of William F. Protz, Jr. and Santa's Best, Defendants, and for cause of action would show the following:

I

Defendant William F. Protz, Jr. ("Defendant Protz") is a natural person residing in Illinois and though served, has not answered herein.

Defendant Santa's Best is an Illinois general partnership and has answered herein.

Plaintiffs reserve the right to add additional parties.

II

Defendant Protz and Defendant Santa's Best entered into various contracts with Plaintiffs and third parties in connection with a maquiladora operation run in Matamoros, Tamaulipas, Mexico on behalf of Defendant Santa's Best by Plaintiffs.  *See* Exhibits A-D attached hereto.  Plaintiffs are in the process of obtaining translations of the "contrato[s] de maquila" attached hereto as Exhibit C and Exhibit D.

### III

Under the contracts, Santa's Best obligated itself to pay all taxes (other than payroll taxes), liquidations of not more than twenty union workers plus additional personnel, and fire and theft insurance to cover Santa's Best's product. *See* Exhibit A.

### IV

Under these agreements, Santa's Best also agreed to pay rent at the facility in Matamoros at a rate of $3,600.00 per month through February 2000 and at a rate of $4,600.00 per month thereafter until December 31, 2003. *See* Exhibit B. In addition to reimbursing or directly paying the expenses and costs of the operation, Santa's Best also agreed to pay Border Alliance a piece rate amount for various products over time.

### V

Defendant Protz signed all four contracts. On three of the contracts, "Santa's Best" appears above or below Defendant Protz's signature and name. *See* Exhibits B-D. None of the signature lines for Defendant Protz include the phrase "as agent for Santa's Best," "the authorized officer of Santa's Best," or some similar phrase. Accordingly, Defendant is personally liable under one or more of these contracts.

### VI

Further, upon information and belief, Defendant Protz has an interest in the subject matter of the contracts and is also personally liable for this reason.

### VII

Defendants made the decision to abandon the operations in Mexico, as Defendant Santa's Best has admitted in Paragraph IV of Defendant Santa's Best's Answer, Affirmative

Defenses and Counterclaims to Complaint, and they refuse to fulfill their contractual obligations.

### VIII

Defendants' announcement of this decision and their stated intention of not fulfilling their obligations to pay lease payments under the lease agreement through December 2003 and to pay all taxes (other than payroll taxes) and liquidations of not more than twenty union workers without any justification constitute anticipatory breaches of the contracts.

### IX

The refusal by Defendants to fulfil their obligations exposes Plaintiffs to damage claims by third parties, including lawsuits in Mexico under laws protecting employees.

### X

Further, the lease agreement attached hereto as Exhibit B and the "contrato[s] de maquila" attached hereto as Exhibit C and Exhibit D expose Plaintiffs to claims by the lessor and employees for duties imposed on Defendants under the contract attached hereto as Exhibit A.

### XI

Further, Defendants' wrongful actions interfere with Plaintiffs' ability to conduct business in Mexico now and in the future.

### XII

For several months, Plaintiffs have demanded that Defendants fulfill their obligations and Defendants refuse to comply.

**XIII**

Pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code, Plaintiffs seek a declaratory judgment declaring that Defendants are obligated to fulfill the obligations described above and in the contracts and that Defendants are in breach.

Further, Plaintiffs seek a determination of their damages.

**XIV**

Further, Plaintiffs seek the recovery of their actual damages flowing from Defendants' breaches of contracts, including, but not limited to, lost profits, loss of good will, incidental damages, including the cost of mitigation, and damages suffered by Plaintiffs in reliance on the contracts, including, but not limited to, indemnification for third party liability and expenses incurred as a result of Defendants' breaches of contract.

**XV**

Plaintiffs seek the recovery of their attorney's fees and costs pursuant to Section 37.009 and Section 38.001 of the Civil Practice and Remedies Code.

**XVI**

Plaintiffs reserve the right to supplement to include other causes of action, including but not limited to tortious interference with prospective contracts.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs requests that Defendants be cited to appear and answer, and that on final trial Plaintiffs have a declaratory judgement, a judgment for the recovery of their actual damages, attorney's fees, costs, prejudgment and

post judgment interest as provided by law, and any other and further relief, at law or in

equity, legal or special, to which Plaintiffs may be justly entitled.

<div align="center">Respectfully submitted,</div>

**LAW OFFICE OF PHIL A. BELLAMY**
815 Ridgewood
Brownsville, Texas 78520
(956) 546-9345
(956) 544-7201 (Fax)

By: _____

Phil A. Bellamy
State Bar No. 00787065
Federal ID No. 17505

<div align="center">Attorney for Plaintiffs</div>

<div align="center"><u>CERTIFICATE OF SERVICE</u></div>

I hereby certify that a true and correct copy of the foregoing has on this the 15th day of May, 2002, been forwarded via certified mail, return receipt requested, to:

Joseph A. Rodriguez
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Brownsville, Texas 78522
(CM-RRR No. 7001 0320 0005 3381 9390)

_____
Phil A. Bellamy

**EXHIBIT A**
**Plaintiffs' First Amended Original Complaint**
*[Agreement relating to maquiladora operation]*

# AGREEMENT

This agreement is between Border Alliance S.A. de C. V. and Santa's Best.

Border Alliance agrees to the following provisions:
Border Alliance will provide labor, payroll, and payroll taxes, and negotiate union contracts on behalf of Santa's Best. Border Alliance will provide all utilities, phones, office equipment and supplies. Border Alliance will produce a quality product and deliver all goods in a timely manner as per the requirements of Santa's Best. A warehouse in the U.S. will be supplied to ship and receive. Transportation and broker in Mexico will be furnished not to exceed one import or export per week. Border Alliance will submit bids for all new products and provide transportation to pick up and deliver products in the ejidos.

Santa's Best agrees to the following provisions.
Santa's Best agrees to provide all raw materials, machinery, and equipment necessary to produce their product as well as any required training. Santa's Best will provide payment for lease (including taxes) of Mexican Warehouse, transportation and broker in U.S. and in Mexico if more than once per week. Santa's Best will be responsible for all taxes (except payroll), liquidations of not more than 20 union workers, 2 supervisors, and 2 office workers, and fire and theft insurance to cover their product.

Santa's best also agrees to allow Border Alliance to use a small area for storing ribbon for Norma Ribbon in exchange for the use of the U. S. warehouse.

A one year notice is required for termination of this agreement by either party.


Clarence Carroll

Bill Protz

.**EXHIBIT B**
**Plaintiffs' First Amended Original Complaint**
*[Lease Agreement]*

## Lease Agreement

Santa's Best agrees to continue the use of the building located at Calle 18 and Herrera, Matamoros, Mexico for the next three consecutive years. This term is from May - June 1999 through January - February 2000 at the rate of $3600.00 per month. The rate from February - March 2000 until December 31, 2003 will be $4600.00 per month. This is the agreement set forth by Border Alliance / Accesorios Ilimitados on behalf of and with verbal consent of Santa's Best, Lubbock, Texas, with Fernando Cortez of Matamoros, Mexico. This contract is already in force by verbal agreement and now by this written contract

OFFICIAL SEAL
DOLORES K OLSEN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/20/01

notary U.S.A.
date  1-1-11

Notary Public, State of Texas
Exp. 4/21/2001

notary U.S.A.
date

William F. Protz, Jr.

Santa's Best

Clarence Carroll
Border Alliance

Emily Hernandez
Accesorios Ilimitados

Copy from Original

**EXHIBIT C**
Plaintiffs' First Amended Original Complaint
*[Contrato de Maquila, dated February 7, 1995, on
Santa's Best letterhead]*



**SANTA'S BEST.**



1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4646
FAX (414) 684-4772

PAGINA 1 DE 3

## CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WL 54221-1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE, TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H. MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA CONTRATAR, Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE LA DECORACION, UTILIZANDO PARA EL EFECTO, MATERIALES, EQUIPO , DISEÑOS ESPECIFICACIONES Y NORMAS DE CALIDAD PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS TAMPS.



ECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL.
DELEGACION FEDERAL EN CD. VICTORIA.
TAMAULIPAS.

## SANTA'S BEST.



1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
:414) 684-4448
FAX (414) 684-8773

**PAGINA 2 DE 3**

CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO, A SU SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN, SANTAS'S BEST REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS POR LA PRIMERA, REEMBOLSANDOSE POE ELLAS UNICAMENTE EL COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE, QUE DE ACUERDO CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN CONTRATISTA INDEPENDIENTE PERMANECIENDO LIBRE DE CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE (12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N. 5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR , SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS — TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.





**SANTA'S BEST.**

1155 SOUTH 16TH STREET
P.O. BOX 1267
MANITOWOC, WI 54221-1267
(414) 684-4646
FAX (414) 684-3772

**PAGINA 3 DE 3**

**OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE — . DEMANDADA.**

SANTA'S BEST                          ACCESORIOS ILIMITADOS,
                                       S.A. DE C.V.

WILLIAM PROTZ JR.                     C. EMILY MA. HERNANDEZ D.

LIC. ABELARDO GUERRA FARIAS
GUFA-421110-202
NOTARIO PUBLICO NUMERO 131

LIC. ABELARDO GUERRA FARIAS
Notario Público No. 131
H. Matamoros, Tams.

**EXHIBIT D**
Plaintiffs' First Amended Original Complaint
*[Contrato de Maquila, dated February 7, 1995, on
Accesorios Ilimitados letterhead]*



### CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST
EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS
PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WL 544221-
1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE,
TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H.
MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA
CONTRATAR,  Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE
A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA
TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON
EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE
LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES,
EQUIPO , DISENOS ESPECIFICACIONES Y NORMAS DE CALIDAD
PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS,
S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS
MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO
INTERNARLOS EN EL PAIS ( MEXICO ) DE ACUERDO CON EL PERMISO
QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS
DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE
HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A
EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA
UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE
A RETORNAR A LA MAYOR BREVEDAD POSIBLE  Y EN UN PLAZO QUE
NO  EXCEDERA EL MARCADO  POR LA SECRETARIA DE  COMERCIO Y
FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA
PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS
TAMPS.

JUL 24 2002  3:05PM  RODRIGUEZ, COLVIN & CHANEY, LLP  NO. 0907  P. 23/25



PAGINA 2 DE 3

CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU
SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR
LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS
PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN, SANTAS'S BEST
REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD
CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD
ESPECIFICADOS POR SANTA'S BEST.  DEBERAN SER RETRABAJADOS
POR LA PRIMERA, REEMBOLSANDOSE POR ELLAS UNICAMENTE EL
COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO
CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN
CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE
CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON
TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE
(12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU
VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S
BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES
QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N
5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR,
SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE
ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE
TERMINAR CON LA RELACION LABORAL  LIQUIDAR A TODOS LOS ——
TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO
MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY
FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.



**PAGINA 3 DE 3**

**OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE — DEMANDADA.**

**SANTA'S BEST**

**WILLIAM PROTZ JR.**

**ACCESORIOS ILIMITADOS, S.A. DE C.V.**

**C. EMILY MA. HERNANDEZ D.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

BORDER ALLIANCE, L.L.C. AND §
ACCESORIOS ILIMITADOS §
§
VS. §            CIVIL NO. B-02-079
§
WILLIAM F. PROTZ, JR. AND §
SANTA'S BEST §

## ORDER GRANTING MOTION FOR LEAVE TO FILE
## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT
## (WITH AMENDED CERTIFICATE OF CONFERENCE)

On this day came on for consideration *Plaintiffs' Motion for Leave to File Plaintiffs'*

*First Amended Original Complaint (with Amended Certificate of Conference)*, and the

Court, having considered the pleadings, evidence, and arguments of counsel, is of the

opinion that said Motion should be granted. It is therefore

ORDERED that *Plaintiffs' Motion for Leave to File Plaintiffs' First Amended Original*

*Complaint (with Amended Certificate of Conference)* is hereby granted.

SIGNED this _____ day of _____, 2002 at Brownsville, Texas.

_____
HILDA TAGLE
UNITED STATES DISTRICT JUDGE

**MITZY PERLA MATTA ARIZA**            Multi-Page™            **APRIL 8, 2003**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| BORDER ALLIANCE, L.L.C. a | X |
| Texas Limited Liability | X |
| Company and ACCESORIOS | X |
| ILIMITADOS, a Mexican | X |
| Corporation | X |
| | X |
| VS. | X CASE NO. B-02 079 |
| | X |
| WILLIAM F. PROTZ, JR. and | X |
| SANTA'S BEST, an Illinois | X |
| General Partnership | X |

---

ORAL DEPOSITION OF MITZY PERLA MOTTA ARIZA
APRIL 8, 2003

---

REPORTED BY SHELLEY STINGLEY
CERTIFIED COURT REPORTER

APPEARANCES

COUNSEL FOR PLAINTIFFS:
  PHIL A. BELLAMY
  LAW OFFICE OF PHIL A. BELLAMY
  815 Ridgewood
  Brownsville, Texas  78520

COUNSEL FOR DEFENDANTS:
  BEAU T. GREIMAN
  LEVENFELD PEARLSTEIN
  2 North LaSalle Street, Suite 1300
  Chicago, Illinois  60602

  JOSEPH A. (TONY) RODRIGUEZ
   RODRIGUEZ, COLVIN & CANEY
  1201 East Van Buren
  Brownsville, Texas 78520


ALSO PRESENT:  Adela Garcia-Moreno, Interpreter
               Clarence Carroll

Page 30

1  report, one has the heading Federal Income Taxes and
2  Social Security Accruals and then the next two pages
3  both have the same heading, Indemnification as of
4  January 2002, those actual pages are not the Tax Report
5  to January 2002 that Emily provided you, correct?
6     A.  These pages exactly, no.
7     Q.  Okay.
8     A.  It was in another presentation.
9     Q.  But you used the Tax Report to January 2002
10  that Emily provided you when you typed these schedules
11  into your computer?
12     A.  I'm sorry.  I got lost.
13     Q.  You used the Tax Report to January 2002 that
14  Emily provided you to prepare the schedules in your
15  report which are entitled Federal Income Taxes and
16  Social Security Accruals and the two pages that are
17  entitled Indemnification as of January 2002, correct?
18     A.  Yes, apart from the other pages.
19     Q.  Okay.  But these pages in your report were not
20  actually prepared by Emily Hernandez?
21     A.  These pages exactly, no.  They were done in my
22  computer.
23     Q.  Okay.  So, besides the Social Security Report
24  and that document we named Tax Report to January 2002,
25  what other documents did Emily give to you to prepare

Page 31

1  this report?
2     A.  Only that.
3     Q.  Okay.  Going -- and the Tax Report to January
4  2002, the exact documents that were handed to you by
5  Emily Hernandez, you don't have?
6     A.  No.
7     Q.  You gave them back to Emily?
8     A.  Yes.
9     Q.  And the same with the Social Security Report?
10     A.  Yes.
11     Q.  So if I want to get those documents now, I need
12  to take that up with Accesorios Ilimitados, because you
13  don't have them?
14     A.  Yes.
15     Q.  Okay.  Now, on your report, the first page is
16  kind of just like a title page, I take it?
17     A.  Yes.
18     Q.  And then there's a page entitled Index and it
19  lists all the different proofs that follow the index,
20  correct?
21     A.  Yes.
22     Q.  So let's turn to proof No. 1.  There's a row
23  entitled Federal Income Taxes for Year 2001 and then
24  right next to it is the figure 50,032 pesos, correct?
25     A.  Yes.

Page 32

1     Q.  Who supplied that figure to you?  Did you lift
2  that figure straight from the Tax Report to January
3  2002 that Emily provided you?
4     A.  Would you please repeat the question again?
5     Q.  Does this figure of 50,032 pesos, what thought
6  did you put into that figure?  Was it just given to you
7  by Emily, something you take as a given because Emily
8  said so, or is this something that you independently
9  verified?
10     A.  It was verified.
11     Q.  How did you verify it?
12     A.  With financial statements.
13     Q.  Earlier you said -- well, what financial
14  statements?
15     A.  Excuse me?
16     Q.  What financial statements did you use to verify
17  it?
18     A.  I don't remember.  It must have been a document
19  to have based myself and to have determined these
20  figures.
21     Q.  You went through earlier in your testimony and
22  you told me all of the social security returns,
23  treasury returns, state tax returns, informative
24  statements, annual statements, income statements,
25  balance statements, check stubs and other information

Page 33

1  that you had whatsoever with regard to Accesorios
2  Ilimitados, you gave back to them about two to three
3  years ago.  Do you remember saying that?
4     A.  Yes.
5     Q.  And then you said at that point you didn't have
6  anything left.
7     A.  Yes.
8     Q.  So when you went to prepare your report you
9  were starting from scratch again.
10     MR. GREIMAN:  Maybe she doesn't understand
11  "starting from scratch."  It doesn't translate well.
12     Q.  You needed to get new information?
13     A.  Yes.
14     Q.  And the only new information you got was two
15  things, Social Security Report and a document we have
16  named Tax Report to January 2002.
17     A.  Yes.
18     Q.  So you must have gotten this figure off of
19  either the Social Security Report or the Tax Report to
20  January 2002.
21     A.  It was from a report up to January 2002, which
22  was the employee report and also the one for the
23  Treasury.
24     Q.  How many pages was the document we have named
25  Tax Report to January 2002?  What was in that?

Page 34

1   A. What pages? I'm sorry, the question again?
2   Q. The document we've called Tax Report to January
3   2002, how many pages was it?
4   A. I don't remember.
5   Q. Approximately?
6   A. Three pages, four pages.
7   Q. Three or four pages?
8   A. Yes, I don't remember.
9   Q. But definitely less than ten?
10  A. Yes.
11  Q. Probably less than five?
12  A. Maybe.
13  Q. All right. What information was in or on those
14  pages?
15  A. Accruals to cover the month January 2002.
16  Q. What do you mean when you say "accruals?"
17  A. The payments for the Social Security.
18  Q. You mean the numbers that Accesorios Ilimitados
19  owed Social Security?
20  A. Yes.
21  Q. And what amounts were owed to Social Security?
22  What categories?
23  A. In one of the reports you can see the -- what
24  was owed to the Social Security, 241,987.
25  Q. Okay. Is that as of January 2002?

Page 35

1   A. To January the 15th of 2002.
2   Q. Okay.
3   A. It says here November the 15th, to November
4   15th of 2002.
5   Q. Is that correct? Is that correct?
6   A. Yes, November.
7   Q. So that's after you updated it?
8   A. Yes, what was owed was determined up to
9   November and what I did was to apply the update, what
10  was owed, and the fine.
11  Q. Okay, what is the total amount that is owed to
12  Social Security?
13  A. To November the 15th, it was 845,154.63.
14  Q. That's the total of all fines, penalties, and
15  other amounts?
16  A. With respect to the Social Security, yes, up to
17  November 15th.
18  Q. Okay. So when you liquidate a worker, then you
19  owe some amount of money for severance to Social
20  Security; is that what you're saying?
21  A. No.
22  Q. Okay. Why does Accesorios Ilimitados owe these
23  amounts to Social Security?
24  A. That amount or the accruals that the company
25  has to pay for having them affiliated to the Social

Page 36

1   Security.
2   Q. And what is that based on? What are those
3   accruals based on, their salaries?
4   A. Yes.
5   Q. Okay. Is this page entitled Federal Income
6   Taxes and Social Security Accruals a summary of some of
7   the following pages?
8   A. Yes.
9   Q. Okay. What pages does it summarize? The next
10  two pages?
11  A. I don't know if it's in the same order.
12  Q. Yeah, it is.
13      MR. GREIMAN: You checked?
14  A. This one is this one and the next one I have
15  this one --
16  Q. This is the translation that was provided.
17  A. It's this page. This one is this one.
18  Q. So this one should be immediately after?
19  A. Yes, but this one is different to this one.
20  They are different concepts.
21  Q. Well, look, which pages does this summarize?
22  A. I'm sorry. It's not the summary of anything.
23  It's another page where it is summarizing.
24  Q. So the page that is the Federal Income Tax and
25  Social Security Accruals is not summarizing any other

Page 37

1   pages in the report?
2   A. No, it's just dividing the concepts and the
3   amounts that have to be paid.
4   Q. How did you calculate the 50,000 peso figure?
5   A. It had -- it was there with what Emily gave me.
6   Q. That figure?
7   A. Yes.
8   Q. Did you verify it?
9   A. I must have verified it to be able to update
10  it.
11  Q. How did you verify it?
12  A. With a document, with some document from the
13  Treasury.
14  Q. So you got some documents from the Treasury?
15  A. I do not remember if they were original
16  documents from the Treasury or that they already had
17  the figures just to be updated.
18  Q. So you don't remember how you verified this
19  number?
20  A. They were figures that Emily had already given
21  to me.
22  Q. And you just relied on what Emily had given to
23  you?
24  A. Yes.
25  Q. Now, for the first quarter 2002, January

Page 54

1  A.  No.
2  Q.  Do you know?
3  A.  No.
4  Q.  So this total was just supplied to you by
5  Emily?
6  A.  Part of.
7  Q.  And part was supplied by your own -- what you
8  were to bill?
9  A.  Possibly, yes.
10 Q.  And this should be 45,000 pesos?
11 A.  That is the amount.
12 Q.  See, on the translation, it's in dollars again.
13 I just wanted to make sure you meant 45,000 pesos.
14 A.  Yes.
15 Q.  And then on the last page here, it seems to be
16 a total of everything we just talked about.
17 A.  Yes.
18 Q.  And it comes down to a grand total of 3,300,766
19 pesos as of November 2002?
20 A.  Yes.
21 Q.  And that's the end of your report?
22 A.  Yes.
23 Q.  In your report you say -- you have a note that
24 says, "We would like to clarify that these are only
25 estimates and the exact amount due will not be known

Page 55

1  until the moment of payment because different criteria
2  is utilized by government agencies."  Is that a true
3  statement?
4  A.  Yes.
5  Q.  So we really won't know how much Accesorios
6  Ilimitados will pay until they actually pay?
7  A.  That is correct.
8  Q.  If you wanted to pay right now, what method
9  could you use to come up with that figure or who would
10 you go to to get that figure?
11 A.  It would have to -- I would have to check it
12 with the different agencies.
13 Q.  But at the end of the day, that would be the
14 amount that would really be owed?
15 A.  Yes.
16 Q.  Has there been any agency that you checked with
17 to verify actual amounts owed?
18 A.  Personally, no, but the agencies can give
19 information to determine the amounts to be paid.
20 Q.  But you haven't done that?
21 A.  No.
22 Q.  No one has asked you to do that?
23 A.  No.
24 Q.  And you don't know if anyone else has done
25 that?

Page 56

1  A.  No.
2  Q.  The next note says -- under -- I want to start
3  over with a new question.  Under Mexican law, who owes
4  social security taxes to employees?  Is it the company
5  which is the employer?
6  A.  Yes.
7  Q.  So in this case it would be Accesorios
8  Ilimitados?
9  A.  Yes.
10 Q.  Under Mexican law, who owes the federal income
11 taxes?  Is it the company Accesorios Ilimitados?
12 A.  Yes.
13 Q.  Okay.  And under Mexican law, who owes the
14 employees for the liquidations, Christmas bonuses,
15 vacation bonuses, salaries due?  Is it the company that
16 employed them?
17 A.  Yes.
18 Q.  So Accesorios Ilimitados?
19 A.  Yes.
20 Q.  Do the shareholders have personal liability?
21 A.  The legal representative.
22 Q.  And where would you go to find the legal
23 representative?
24 A.  Where would you go?
25 Q.  What's the difference between a legal

Page 57

1  representative and a shareholder?
2  A.  The legal representative, it's stated in the
3  charter.  I don't know too much about laws, but he is
4  the one that is in charge of signing the documents and
5  for the payments in the Treasury.
6  Q.  It would be an individual designated in the
7  charter?
8  A.  Yes.
9  Q.  Of the company?
10 A.  Yes.
11 Q.  This had nothing to do with a maquiladora law;
12 these are general laws that apply to all companies?
13 A.  Yes.  For the moral persons, yes.
14       MR. GREIMAN:  Can we take a break?
15       (Brief recess)
16 Q.  I take it from your report that you were just
17 asked to calculate and summarize the amounts that
18 Accesorios Ilimitados owes.
19 A.  Yes.
20 Q.  You were not asked to go beyond that?
21 A.  No.
22 Q.  As to whether Santa's Best or William Protz or
23 anyone else should have to reimburse Accesorios
24 Ilimitados, that's not something you are giving an
25 opinion on?

Page 66

1    A.  It came with the paperwork of when I started
2  working for them and also to be able to register it
3  under the Treasury and the Social Security and in any
4  agency.  It was a document, a copy that had to be
5  delivered to the agency, to any agency.
6    Q.  Okay.  Now, did you read the maquila contract
7  carefully?
8    A.  I read it.
9    Q.  And when did you read it?
10   A.  When I received the paperwork and when I was
11 going to start working for the company.
12   Q.  In '96?
13   A.  More or less.
14   Q.  Okay.  Do you remember what the maquila
15 contract said --
16   A.  No.
17   Q.  -- all these years later?  Now, under Mexican
18 law, we've established, I think, that the company
19 Accesorios Ilimitados is liable for the amount set
20 forth in your report.
21   A.  Yes.
22   Q.  And its legal representative, correct?
23   A.  Yes.
24   Q.  And that's it under the statutes?
25   A.  Yes.

Page 67

1    Q.  So if anyone else is going to be liable,
2  there's going to have to be a separate agreement to
3  reimburse Accesorios Ilimitados or something like that,
4  correct?
5    A.  Yes.
6    Q.  So now we're just talking about, if we're going
7  to add anyone else to the list, whether there was some
8  a separate agreement that gave somebody else liability
9  besides the people that Mexican law would make liable?
10   A.  I did not understand.
11   Q.  The only way -- the only people that are liable
12 under Mexican law are Accesorios Ilimitados and its
13 legal representative?
14       MR. BELLAMY:  Objection; asked and
15 answered.
16   Q.  That's correct, right?
17   A.  Do I have to answer?
18   Q.  Yeah, you may answer.
19   A.  I had already answered the question.  What I
20 was confused about was only the last part of the
21 question.
22   Q.  I know, but to get going again --
23   A.  It is not necessary.
24   Q.  Well, it is necessary to make sure we're on the
25 same page.  Under Mexican law, Accesorios Ilimitados

Page 68

1  and the legal representative are liable, correct?
2    A.  Yes.
3    Q.  There has to be a separate agreement to
4  establish that somebody was supposed to reimburse
5  Accesorios Ilimitados, correct?
6    A.  Yes.
7    Q.  So to understand whether there was a separate
8  agreement, we have to look for some kind of written
9  contract or oral contract, correct?
10   A.  Yes.
11   Q.  You talked about the maquila contract.  And, as
12 you sit here today, you know, some seven years or so
13 after the fact, after you read it, I presume you don't
14 remember what the maquila contract says about that
15 subject.
16   A.  I had already answered.
17   Q.  Is it true that you don't remember what the
18 maquila contract says about that subject?
19   A.  It is true.
20   Q.  And the only other documents that you know of
21 that might indicate that there's some oral or written
22 contract are the Import Requests and the invoice for
23 Accesorios, correct?
24   A.  Yes.
25   Q.  With regard to the Import Requests, what about

Page 69

1  the Import Requests made you think that Santa's Best
2  may have had some agreement to reimburse Accesorios
3  Ilimitados?
4    A.  Well, it was the one that sent the money for
5  the expenses.
6    Q.  What expenses?
7    A.  The payroll, the electricity, the phone.
8    Q.  All the expenses of Accesorios Ilimitados?
9    A.  That is correct.
10   Q.  Isn't it true that that money actually came
11 from Border Alliance?
12   A.  Your question again?
13   Q.  We have heard testimony in this case that
14 Santa's Best paid money for the products it received on
15 a per-piece basis, with some exceptions, and that
16 Border Alliance used that money to pay Accesorios
17 Ilimitados so that all the money that Accesorios
18 Ilimitados received, again with maybe some exceptions,
19 came from Border Alliance to Accesorios Ilimitados.
20 Are you saying that that's not true?
21   A.  I think that Border Alliance was a middleman or
22 something like that, but I saw the contract, a copy of
23 the maquila contract to affiliate to the different
24 agencies.
25   Q.  Did you examine the signatures to verify

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


| | | |
|---|---|---|
| BORDER ALLIANCE, ET AL | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-079 |
| | § | |
| WILLIAM F. PROTZ, JR., ET AL | § | |

CONDENSED TRANSCRIPT & WORD INDEX

## DEPOSITION OF WILLIAM F. PROTZ, JR.

### JANUARY 30, 2003

*PREPARED FOR MR. GREIMAN BY:*



## SCHWAB COURT REPORTING SERVICE
2900 CENTRAL BOULEVARD, SUITE C
P. O. BOX 3665
BROWNSVILLE, TEXAS 78520

**(956) 544-5126 • FAX (956) 542-8842**

Page 53

1    A That's correct -- well, they started
2 assembling -- tying bows for us in 1995, that's
3 correct. There was no manufacturing processes
4 involved. It was all hand work.
5    Q In your pleadings -- in Santa's Best
6 pleadings, there's the following sentence.
7 "Throughout its relationship with Border Alliance,
8 Santa's Best entered into various agreements with
9 Border Alliance." What agreements were those?
10    A I don't know what the context is of that
11 particular statement or what the question is or
12 anything of that nature, so I don't know where
13 you're coming from. It's kind of a sentence out of
14 the blue for me.
15    Q Let's not worry about the pleadings then.
16 What agreements were entered into between Santa's
17 Best and Border Alliance, what various agreements?
18    A Well, I think that if you can -- I'm
19 trying to assert for what you would call an
20 agreement. If it's -- from time to time -- I mean,
21 we were doing business with them on a daily basis
22 and there was a lot of conversation back and forth.
23 We agreed to advance them monies, we agreed to send
24 them printers -- we sent them a printer, we agreed
25 to provide X, Y and Z. I mean, I don't even really

Page 54

1 know some of the things that were --
2    Q You agreed to lease payments?
3    A We agreed to compensate them for their
4 lease obligations in a particular instance, yes.
5    Q I would like to show you what's been
6 marked as Deposition Exhibit Number 1. Are you
7 denying that the signature on that document is your
8 signature?
9    A I'm denying -- no, that's my signature. I
10 mean, that is a representation of my signature.
11    Q Are you denying that you signed it?
12    A I did not sign this document.
13    Q You're denying that Santa's Best is
14 responsible for all taxes?
15    A Absolutely.
16    Q Are you denying that Santa's Best is
17 responsible for liquidation of not more than 20
18 union workers?
19    A Absolutely.
20    Q And are you denying that the Santa's Best
21 was responsible for fire and theft insurance to
22 cover their product?
23    A I'm denying that we were responsible for
24 it, but we were entitled to do that.
25    Q Did you, in effect, pay for fire and theft

Page 55

1 insurance for your product?
2    A It is our policy to do that at all our
3 locations. We have a blanket policy that that's --
4    Q Did you also pay taxes in connection with
5 the operation in Matamoros?
6    A No.
7    Q Never paid any taxes?
8    A No, not to my knowledge.
9    Q Never paid any duties?
10    A We paid duties -- I don't believe we paid
11 any duties directly. We compensated Border Alliance
12 if they had a duty.
13    Q Did you ever compensate them for taxes?
14    A No.
15    Q Not at all?
16    A No -- well, I mean, let me say this. Are
17 you referring to the liquidation where we agreed to
18 compensate them for -- help them out on the
19 liquidation issue? That's the only thing I recall
20 that could come close on that.
21    Q Other than that, you've never paid any
22 taxes or liquidations arising from Border Alliance's
23 operation in Matamoros?
24    A Not to my knowledge, no.
25    Q I would like to show you what's been

Page 56

1 marked as Protz Deposition Exhibit 2. Do you
2 recognize that document?
3    A Yes.
4    Q Is that a lease agreement entered into
5 with the owner of the property, the warehouse in
6 Matamoros, that was used?
7    A No.
8    Q What is it?
9    A Basically, it says "Lease Agreement" on
10 the top, but this is a document which Clarence
11 requested that we sign. We had -- he had obligated
12 himself to the leasing of that warehouse and he
13 wanted to have an agreement signed and we agreed
14 that we would do that and this agreement, basically,
15 said that we would compensate him for those costs.
16    Q Okay, and you certainly did, you paid the
17 lease payments for a certain period of time, didn't
18 you?
19    A We fulfilled the obligation, correct.
20    Q When was your last lease payment?
21    A I believe it was in May of 2002.
22    Q Do you recall signing this document called
23 "lease agreement" marked as Deposition Exhibit 2?
24    A I do.
25    Q Specifically recall actually signing it?

WILLIAM PROTZ, JR.  1/30/03  Multi-Page BORDER ALLIANCE VS. WILLIAM PROTZ

Page 61

1 same document -- the same wording as Deposition
2 Exhibit 2, with the exception that your name is
3 now -- has been added.
4       MR. GREIMAN: Did you want him to
5 read both documents?
6       THE WITNESS: You're saying that
7 Exhibit 2 is the same as the second page of Exhibit
8 3 except for my signature line.
9       Q (BY MR. BELLAMY) Right, I'm asking you
10 that.
11      A That appears to be the case, yes.
12      Q So --
13      A And the underline.
14      Q So if Clarence Carroll and Border
15 Alliance, in fact, sent this fax to Richard Nugent,
16 he was advising Santa's Best that the rent went
17 through December 2003?
18      A If he sent it, yes.
19      Q And that the term of the lease expired
20 December 31st, 2003?
21      A In this fax was sent, you would have to
22 assume that is what he was doing.
23      Q So if it was sent, Santa's Best was not
24 uninformed about that fact?
25      A I have no recollection of this fax,

Page 62

1 myself.
2       Q I'm not asking you that, Mr. Protz. If
3 this fax was sent to Richard Nugent, then Border
4 Alliance was, in fact, keeping Santa's Best informed
5 about its rent or lease obligation.
6       A When you say "its lease obligation," are
7 you talking about Border Alliance's lease
8 obligation?
9       Q I'm talking about Santa's Best.
10      A No. This would have -- this may have been
11 -- you know, the way I would interpret this if
12 you're asking that --
13      Q I object. That's nonresponsive to my
14 question, Mr. Protz. First let me ask you this.
15 Are you saying that Santa's Best had no lease
16 obligation in Matamoros?
17      A Santa's Best had an obligation to
18 compensate Border Alliance for the cost of leasing
19 that warehouse in Matamoros.
20      Q You heard your attorney examining Mr.
21 Carroll yesterday on the subject of the lease
22 agreement, is that correct?
23      A As so defined on the top of the page,
24 that's correct.
25      Q And he was trying to imply to Mr. Carroll

Page 63

1 that somehow Mr. Carroll and Border Alliance was
2 keeping Santa's Best in the dark, do you recall
3 that?
4       A No, I don't recall that.
5       Q So on Deposition Exhibit 3, the fax from
6 Border Alliance to Richard Nugent, if Richard
7 Nugent, in fact, received that, then Santa's Best
8 had been informed of its obligation to pay lease
9 payments through December 2003, is that correct?
10      A Again, when you say "its obligation,"
11 Border Alliance's obligation?
12      Q Santa's Best.
13      A No, I would say no.
14      Q I'll show you what's been marked as Protz
15 Deposition Exhibit Number 4. You go to Page 3. Are
16 you also denying that you signed this document?
17      A Yes, I am.
18      Q Are you denying that you ever went to
19 Matamoros and signed a document back in 1995?
20      A I have no recollection of signing any
21 document in Matamoros.
22      Q Are you saying you don't have a
23 recollection of it, that it may have happened, or
24 are you saying that you definitely did not?
25      A I signed any document? I have no

Page 64

1 recollection of signing -- I have no recollection of
2 signing any document. I did not sign this document.
3       Q Okay. Are you testifying that you did not
4 sign any document in Matamoros in 1995?
5       A I can't recall back that far.
6       Q So you may have and you may not have?
7       A I suppose there might have been something
8 I would have signed, but I doubt it, I seriously
9 doubt it but, again, I did not sign this document.
10      Q Okay. Prior to yesterday, had you ever
11 been to this office, to this building?
12      A No.
13      Q Never?
14      A Never.
15      Q Are you sure?
16      A Positive.
17      Q And there's no way you're mistaken?
18      A No way I'm mistaken.
19      Q I'll show you what's been marked as Protz
20 Deposition Exhibit 5, and I guess you're saying that
21 your signature on this document is not yours?
22      A Well, again, that's a replication of my
23 signature, but I did not sign this document.
24      Q And you did not sign this document in this
25 building in 1995?

Page 61 - Page 64

Page 65

1    A No, I did not.
2        MR. GREIMAN: Can we go off the
3    record for a second?
4        (Discussion Off The Record)
5        MR. BELLAMY: As pointed out by Mr.
6    Greiman, we're missing a page on Exhibit 5, which is
7    a notarization of that, and we'll add that by
8    agreement, is that correct.
9        MR. GREIMAN: Yes, purported
10   notarization.
11   Q (BY MR. BELLAMY) I would like to show
12   you what's been marked as Deposition Exhibit 6. Can
13   you identify that?
14   A Yes. This looks a letter to Clarence from
15   Richard Nugent.
16   Q What is the purpose of the letter?
17   A It looks like, basically, what he's doing
18   is outlining our situation that we were trying to
19   put together for the lease agreement.
20   Q I would like to call your attention to the
21   second page of that exhibit about two-thirds of the
22   way down. Do you see where it has, "Effective
23   December 15" -- and we're talking about the lease --
24   "December 15, 1999, through December 14, 2003," and
25   then it outlines what payments are going to be made

Page 66

1    for various months during that timeframe, does it
2    not?
3    A Mm hm.
4    Q Does that mean yes?
5    A Yes, I'm sorry.
6    Q And there's one phrase underneath that
7    says, "December 1st, 1999, through December 14,
8    2003, $4,600 per month net cash."
9    A Proposed, proposed. It says -- in
10   completion, it says, "Proposed $4,600 a month less
11   $600, $4,000 net cash," that's correct.
12   Q So there is another document, would you
13   agree, that indicates Santa's Best awareness of its
14   obligation through December 2003?
15       MR. GREIMAN: Objection, assumes
16   facts not in evidence. He hasn't testified to that.
17       THE WITNESS: I don't think this was
18   any obligation. This was, basically, the proposal
19   -- it was a proposal which we -- which I was not in
20   agreement with as it worked out.
21   Q (BY MR. BELLAMY) Do you recall reading
22   this at the time?
23   A No, I don't recall reading this. I was
24   not -- I don't believe I was copied on this.
25   Q Do you recall having discussions with

Page 67

1    Richard Nugent about the proposal on the lease?
2    A During that time period when -- I think we
3    were going to expand our operation down there and
4    Clarence needed some money to expand the building,
5    they wanted to expand the building, which we were in
6    agreement with. Richard Barry and myself did have
7    discussions on how we were going to handle this and
8    what we would cover.
9    Q So is that what this proposal on Exhibit 6
10   reflects, that payments would be made by Santa's
11   Best with some amount deducted to pay back for the
12   improvements?
13   A If you want me to answer yes or no, I
14   mean, think I would have to answer no to that. I
15   mean, I think I can tell you how it did work.
16   Q Sure.
17   A Basically, we advanced a sum to jump start
18   that project, to get the project going, so that the
19   building could be built down there -- the addition,
20   I think there was an addition put on, and we were
21   compensating for -- compensating Border Alliance for
22   that rent and that advancement was, basically,
23   deducted off of rent payments for a period of time
24   until the advance was netted down.
25   Q That would have been netted down --

Page 68

1    according to Exhibit 6 that we're looking at, that
2    would have been netted down by December of '99?
3    A I don't know. I mean, I'll have to take a
4    look at this. I'm not sure. Like I say, I don't
5    remember this memo at the time. Point out to me
6    what you're talking about.
7    Q We have effective December 15, 1999, to
8    December 14, 2003, and we have 2(a), $4,600 per
9    month less 600. The 600 is the first, I guess,
10   beginning of the paydown of that advancement made by
11   Santa's Best, is that correct?
12   A I suppose what this is was it was -- the
13   rent was $4,600 and the 600 was going to be the net
14   amount -- the amount that was netted out is what I
15   assume that this means, and I'm only interpreting it
16   because I don't remember the memo.
17   Q Based on your memory of what happened, was
18   that a reduction to the rent that you were having to
19   pay to compensate you for having advanced the money
20   for the building?
21   A There was a formula put together that
22   compensated us to recoup that money, and what that
23   final formula was or just how that was done, I don't
24   know. I think the amount of advance was $20,000 and
25   over a period of time we had a reduction in rent

## AGREEMENT

This agreement is between Border Alliance S.A. de C. V. and Santa's Best.

Border Alliance agrees to the following provisions:
Border Alliance will provide labor, payroll, and payroll taxes, and negotiate union contracts on behalf of Santa's Best. Border Alliance will provide all utilities, phones, office equipment and supplies. Border Alliance will produce a quality product and deliver all goods in a timely manner as per the requirements of Santa's Best  A warehouse in the U.S. will be supplied to ship and receive.  Transportation and broker in Mexico will be furnished not to exceed one import or export per week.   Border Alliance will submit bids for all new products and provide transportation to pick up and deliver products in the ejidos.

Santa's Best agrees to the following provisions.
Santa's Best agrees to provide all raw materials, machinery, and equipment necessary to produce their product as well as any required training.  Santa's Best will provide payment for lease (including taxes) of Mexican Warehouse, transportation and  broker in U.S. and in Mexico if more than once per week.  Santa's Best will be responsible for all taxes (except payroll), liquidations of not more than 20 union workers, 2 supervisors, and 2 office workers, and fire and theft insurance to cover their product.

Santa's best also agrees to allow Border Alliance to use a small area for storing ribbon for Norma Ribbon in exchange for the use of the U. S. warehouse.

A one year notice is required for termination of this agreement by either party.

_____                    _____
Clarence Carroll                                                      Bill Protz

**DEPOSITION EXHIBIT**

Prots 1



PAGINA 1 DE 3

## CONTRATO DE MAQUILA

**CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WI. 544221-1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE, TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H. MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.**

**AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA CONTRATAR, Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE A LAS SIGUIENTES CLAUSULAS.**

**PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES, EQUIPO, DISENOS ESPECIFICACIONES Y NORMAS DE CALIDAD PROPORCIONADAS POR SANTA'S BEST.**

**SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE HACIENDA Y CREDITO PUBLICO.**

**TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS TAMPS.**

DEPOSITION EXHIBIT

Photo 4



PAGINA 2 DE 3

CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN. SANTAS'S BEST REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS POR LA PRIMERA, REEMBOLSANDOSE POR ELLAS UNICAMENTE EL COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE (12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N 5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR , SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS ── TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.



PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE — DEMANDADA.

SANTA'S BEST

WILLIAM PROTZ JR.

ACCESORIOS ILIMITADOS, S.A. DE C.V.

C. EMILY MA. HERNANDEZ D.





# SANTA'S BEST,

1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4448
FAX (414) 684-8772

**PAGINA 1 DE 3**

## CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST
EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS
PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WL 544221-1387
Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE,
TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H.
MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA
CONTRATAR. Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE
A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA
TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON
EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE
LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES,
EQUIPO , DISEÑOS ESPECIFICACIONES Y NORMAS DE CALIDAD
PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS,
S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS
MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO
INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO
QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS
DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE
HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A
EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA
UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A
RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE
NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA
PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS
TAMPS.





S⁻ ⁻ETARIA DE COMERCIO Y
⸱OMENTO INDUSTRIAL
SUBDELEGACION FEDERAL EN CD. VICTORIA.
TAMAULIPAS

## SANTA'S BEST.



1133 SOUTH 16ᵀᴴ STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4448
FAX (414) 684-8772

**PAGINA 2 DE 3**

CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU
SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR
LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS
PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

QUINTA.- POR LA EJECUCION DE CADA ORDEN, SANTAS'S BEST
REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD
CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD
ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS
POR LA PRIMERA, REEMBOLSANDOSE POE ELLAS UNICAMENTE EL
COSTO QUE SE HICIERA.

SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO
CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE
ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN
CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE
CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON
TERCERAS PERSONAS.

SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE
(12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU
VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S
BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES
QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. , I.S.P.T. 2% S/N.
5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR ,
SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE
ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE
TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS ——
TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA
EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY
FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.

AZNELA ND NY          MANITOWOC WI          HONG KONG





**SANTA'S BEST.**

1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-4448
FAX (414) 684-8772

PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE — DEMANDADA.

---

SANTA'S BEST

_____
WILLIAM PROTZ JR.

ACCESORIOS ILIMITADOS,
S.A. DE C.V.

_____
C. EMILY MA. HERNANDEZ D.

LIC. ABELARDO GUERRA FARIAS
GUFA-421114-D02
NOTARIO PUBLICO NUMERO 131

LIC. ABELARDO GUERRA FARIAS
Notario Público No. 131
H. Matamoros, Tams.

NORTHFIELD, IL    •    VINELAND NJ    •    MANITOWOC WI    •    HONG KONG

State of Texas        )(

County of Cameron )(

     This instrument was acknowledged before me on this
10th day of March, 1995 by William Protz Jr. of SANTA'S
BEST, on behalf of said corporation.



Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95

State of Texas      )(

County of Cameron )(

    This in
10th day of
of Acces
corpora

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION

BORDER ALLIANCE, )
and ACCESORIOS ILIMITADOS, )
                          )
            Plaintiffs, )         Case No. B-02 079
                          )
      vs. )
                          )
WILLIAM F. PROTZ, JR. and )
SANTA'S BEST, an Illinois )
general partnership, )
                          )
          Defendants.

## AFFIDAVIT OF GEORGE S. PEARL

I, George S. Pearl, being duly sworn an oath, depose and state as follows:

1.     I am over the age of 18, make this Affidavit based upon my own personal knowledge and, if called as a witness, would testify to the facts set forth herein.

2.     Three letter reports of my examinations of various documents at issue in this case are attached to this Affidavit.

3.     I relied on the facts and data set forth in the attached letter reports to form the opinions and conclusions set forth in the attached letter reports.

4.     I hold the opinions and conclusions set forth in my attached letter reports as true and accurate to a reasonable degree of scientific certainty.

5.   I am qualified to state the opinions and conclusions set forth in my letter reports based on the qualifications set forth in my attached curriculum vitae.

George S. Pearl

State of Georgia          )
                          )  SS
County of _____         )

Subscribed and sworn to before me
This _14_ day of April, 2003.

Notary Public

Notary Public, DeKalb County, Georgia
My Commission Expires July 27, 2004

{PLACE SEAL BELOW}

H \Docs\37500\37519\pearl aff .doc

2

RECEIVED JAN 7 2003



SM

# EVIDENCE & PHOTO
### Since 1978 – A Total Demonstrative Evidence Service!
**2139 Liddell Drive, NE   Atlanta, Georgia 30324-4132**
Tel: 404-872-2577   Nat'l: 1-800-USE-ALPS   Fax: 404-872-0548
Web Site: www.alpslabs.com
E-mail: alps007@mindspring.com

**ATLANTA LEGAL
PHOTO SERVICES, INC.**

December 24, 2002

Beau T. Greiman, Esq.
Levenfeld Pearlstein Attorneys
33 West Monroe Street
21st Floor
Chicago, Illinois 60603

**Re: Border Alliance, et al. v. William F. Protz, Jr., et al.**
Your Case File # 26674-37519
**(Examination of Signatures on Contracts)**

Dear Mr. Greiman,

Upon your request, I have examined several contracts and the signatures appearing on those contracts for their authenticity. You requested especially that I examine the signatures of William F. Protz, Jr. for their genuineness. I have this date completed my examination of these signatures and documents and the following is my *Letter of Opinion* to you listing my findings from this exam process as of this date.

The documents sent to me from your office were all faxed to me. Sometimes in the instance of my examination of faxed and / or photo copied documents I will withhold a final opinion based on the examination of a faxed copy rather than that of the original. Although my examination of the 'originals' of these documents would indeed be of high interest to me in this case, I seriously doubt that true 'original' documents exist in this instance. When you ask for my ability to inspection these documents, you will certainly get a reply that the 'originals' have conveniently been lost in some way. If this request is actually granted and the "original" contract documents are to be made available to me for examination, I will certainly be more than receptive to examine these particular documents. As of now, I will provide you with my opinion based upon the examination of the faxed copies, which is in my opinion, will be all that I can expect to receive.

I doubt that my opinion will change upon the examination of the "originals" should such a bunch of documents ever be tendered. If they do surface upon our request for examination, I will certainly want to examine these documents and add any additional findings to my opinion. I doubt very seriously from seeing what I have already seen, that my basic opinions rendered herein will be changed, but rather just added to.

Page 2.

The **KNOWN** genuine signatures given to me of Mr. William F. Protz, Jr. are those signatures of his on documents **D00004, P0009**, and **P0004**. All 3 of these documents were faxed to me and are copies from file. (Photocopies are attached)

The **SUBJECT** signatures of this examination are those of Mr. William F. Protz, Jr. appearing on documents **P0012, P0016**, and **P34**. (Photocopies are attached)
Note: Other signatures became Subjects as well upon examination of the documents. These are Clarence Carroll and C. Emily Ma. Hernandez D.

### FINDINGS and OPINIONS

I have made a visual examination of all of these Known and Subject documents over a transmission light table. I did this because some of the signatures appeared to me to be the same in their construction. Upon performing the light table examination, I have found the following things:

### DOCUMENTS P0004 & P34

The signature of Clarence Carroll on the Lease Agreement P34 document is a perfect overlay (Transfer Signature) of the Clarence Carroll signature from the P0004 document. I am pretty certain that the signature on P34 actually came from P0004 since one can easily see on that document how the descending terminal stroke of the letter "l" on Carroll runs through a typed letter "o" on the line below the signature. When one looks at the same descending down stroke of the letter "l" on the P34 document there is a whited out break in that line at the location of where the typed letter "o" was located and had to be removed. This is due to the difference in the typed names on each document removal of the "o" was required. It is my opinion that **the Carroll signature on P34 is NON–GENUINE**, and is simply a tracing or a 'cut and paste' or otherwise copy and transferred signature from the P0004 document.

The Known signature of William F. Protz, Jr. on the P0004 document perfectly overlays the Subject signature of his name on the P34 document where he was supposed to have signed "Bill Protz". The signature on the P34 document is simply a tracing or a 'cut and paste' or otherwise copy and transferred signature from the P0004 document. The Subject signature of **William F. Protz, Jr. on P34 is NON-GENUINE.**

### DOCUMENTS P0009 & P0016, also P0012

The Known Genuine signature of William F. Protz, Jr. on the document P0009 and the Subject Signature of William F. Protz, Jr., on the P0016 document are identical and overlay each other. The signature on the P0016 document is simply a tracing or a 'cut and paste' or otherwise copy and transferred signature from the P0009 document. The Subject signature of **William F. Protz, Jr. on P0016 is NON-GENUINE.**

The signature of C. Emily Ma. Hernandez D., on the P0016 document can be seen to overlay and match up with the same signature on document P0012. Also the photocopier's "trash marks" found to the right of the signature block are seen to have also been copied as well. The signature of C. Emily Ma. Hernandez D., on P0016 or perhaps the other way around on P0012, is a NON-GENUINE 'cut and paste' or otherwise copy and transferred signature. Without the examination of the original documents or knowing the dates of these particular documents, I cannot be certain

which one came first and which is the copy. Also, I cannot tell from these documents if any of them are real and not copied from yet a third signature without the examination of the "originals". At any rate, something is very wrong here.

**DOCUMENTS D00004 & P0012**

The Known signature of William F. Protz, Jr., as seen on document D00004, can be seen to perfectly overlay the Subject signature of William F. Protz, Jr. , on document P0012. The signature on the P0012 document is simply a tracing or a 'cut and paste' or otherwise copy and transferred signature from the P00004 document. The Subject signature of **William F. Protz, Jr. on P0012 is NON-GENUINE.**

**Data in Consideration for Opinions and Further Thoughts about this examination...**

The opinions that I am giving about signatures that perfectly overlay each other as to being Non-Genuine (one, the other, or both) is because the writing is done by human beings and our very nature is such that we can not be totally perfect in any endeavor we perform. This opinion is in part based on my years of training, experience and observations in the field of handwriting identification. Certain Axioms of handwriting identification, Principles, and Theories that I also base my opinions on can be found in chapter 7 of *Fundamentals of Document Examination* by: Edna W. Robertson, copyright 1991, Nelson-Hall Publishing.

In Robertson's book, she list several Axioms and Principles that are:

Axiom #6: A tracing of writing can be made only when model writing is available.

Principle #4: Once a handwriting has been executed, it cannot be identically reproduced in all its intricate features by the same or another person by freehand writing.

Principle #5: There is always natural variation in normal writing.

Principle #11: Signatures that are exactly identical are replicas of which only one, if any of them, is genuine.

As to who did these false entries on these contracts, I cannot tell through this kind of an examination, but I can give my opinion that this is quite rare for me to see signatures from both sides being copied. Perhaps there is **a third party** doing this that would have interest in making a fraudulent contract between the two? I do not know all of the particulars and the players involved in this case, so the "whys and the who would do this" sort of thing is out of my area of expertise at the moment.

The signature is not all that I might want to examine if the "original" documents will ever surface. There are other factors dealing with the paper that the documents are produced on that I may consider along with any watermarks available for dating the documents. The actual copy machine may be needing to be examined and a microscopic examination of the letters and marks reproduced on those documents by the photocopy process and their measurements. Already even on these copied and faxed documents sent to me I see the probability of misalignment of typewriter type and fonts. I have done a very preliminary examination of the alignment on document P0012 and see some problems with the name block of Hernandez matching the rest of the document. This would be the case if the block had been cut and pasted into the document. I am not certain of this alignment problem at this time because I am dealing with faxed copies that may be skewed in a degree anyway. The best would be for me to examine the "originals" to make a determination on this.

Page 4.

The fee that I have been paid to this date has been $1,800 US for my examination time and my professional time to write this letter at an hourly fee of $250 and hour. If I am required to testify in this case, I will prepare court exhibits that demonstrate how these signatures perfectly overlay each other and the handwriting of Mr. Protz. If allowed to examine the "originals" of these documents, I will certainly have more exhibits, which will deal with the manner in which these bogus documents were produced and the type misalignment of sections of these documents. These will be mostly large photographic blow-ups of areas in detail to be explained.

Included with attached to this letter is a CV of my qualifications. As to the list of cases that I have testified in the past 4 years, I have tried to look them up for you and attached is a listing of them. This is not something that I keep track of recently. Maybe 10 or 15 years ago when I reached over a 100 times on the stand, I just quit keeping up with it. Since I do other things besides Questioned Document Examination work, there are other occasions that I have testified that do not have much to do with what I am reporting on today.

Should it become necessary, I will be available to demonstrate my findings and to testify to my opinions in a court of law.

Sincerely,

George S. Pearl, FEPIC, BCEP, BCQDE

Founding Member:
*Association of Forensic Document Examiners, Inc.*

Attached:
        CV, list of cases testified in the last 4 years, and copies of the documents faxed to my laboratory
        for examination.

# GEORGE S. PEARL

### Board Certified Questioned Document Examiner & Handwriting Expert

## CURRICULUM VITAE
## Update : December 1999

## STUDY

**1974**   UNIVERSITY OF SOUTHERN MISSISSIPPI - Began study of questioned document examination and handwriting

**1975**   UNIVERSITY OF SOUTHERN MISSISSIPPI - Received Bachelor of Science degree

**1979**   Studied briefly with Dr. Dan Vomhof, Certified Document Examiner of Expert Witness Services, LaMasa, California, who recommended me for membership with the Independent Association of Questioned Document Examiners, Inc. (IAQDE)

**1979**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS - (IAQDE) - - After passing all written exams and form blindness testing, I was accepted for membership in IAQDE on October 9, 1979.

**1979**   UNIVERSITY OF SAN DIEGO, SCHOOL OF LAW - October 15 thru October 19 - Attended the IAQDE weeklong seminar in questioned document examination (over 40 hours of classroom instruction).

**1980**   ROBERTSON DOCUMENT & HANDWRITING EXAMINERS - Panama City, Florida - August - Studied under Edna W. Robertson who was President of IAQDE from 1978-1979 & the author of "FUNDAMENTALS OF DOCUMENT EXAMINATION" (*from 1980 to the present, I have studied & worked with Mrs. Robertson over 100 hours)

**1980**   SOUTHERN METHODIST UNIVERSITY, SCHOOL OF LAW - September 28 thru October 3 - IAQDE seminar (over 40 hours of classroom instruction) - speaker on document photography

**1981**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) - October 19 thru October 23 - Springfield, Illinois - (over 40 hours of classroom instruction in questioned document examination)

**1982**   AMERICAN ACADEMY OF FORENSIC SCIENCE, QUESTIONED DOCUMENTS SECTION - February 8 thru February 11 - Orlando, Florida

**1982**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) - October 10 thru October 15 -Providence, Rhode Island - (over 40 hours of classroom instruction) - speaker on Photographic Forgery

**1983**   O. W. COBURN SCHOOL OF LAW at ORAL ROBERTS UNIVERSITY October 16 thru October 21 - Tulsa, OK. - IAQDE seminar - (over 40 hours of classroom instruction in questioned document)

**1985**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) - October 6 thru October 21 - Portland, Oregon - (over 40 hours of classroom instruction in questioned document) - Instructor in Video Spectro-Scanner & associated equipment

**1985**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) - October 8 - Portland, Oregon - gained IAQDE Board Certification after final testing and board review

**1986**   INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) - September 12 thru September 17 - seminar in Toronto, Canada

| | |
|---|---|
| 1986 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - September - became a founding member |
| 1987 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - May 29 thru June 1 - Atlanta, Georgia - Symposium - Chairman of the First AFDE Symposium On Questioned Document Examination. I instructed on inks, papers, and other examination of documents and indented writings. Became Certified Document Examiner status in AFDE after testing. |
| 1988 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - May - Milwaukee, Wisconsin - Presented paper "Admittance Of Photographic Evidence In Our Courts For The Document Examiner". Board Member of AFDE. |
| 1989 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - May 13 thru May 15 - Portland, Oregon - attended symposium |
| 1990 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - May 3 thru May 7 - San Antonio, Texas - written examination and re-certified through testing. |
| 1991 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - October 10 thru October 14 - Boston, MA. - Attended symposium. |
| 1992 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - October 8 thru October 11 - Rolling Meadows / Chicago, Illinois. Spoke on computerized handwriting identification in respect to the dynamics of the writer. Installed as President of AFDE 1992-1993 term. |
| 1993 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - October 6 thru October 12 - Cleveland, Ohio. Spoke on "Stop Watch Method Of Handwriting Examination". |
| 1994 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - September 15 thru September 18 - symposium in Las Vegas, NV. Chairman for Board Certification Testing. Introduced proto-type of new mini-video spectro-scanner being developed at ALPS EVIDENCE & PHOTO. |
| 1995 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - August 6 thru August 10 - joint symposium with the Seventh Biennial Conference Of The International Graphonomics Society at the University Of Western Ontario, London, Ontario, Canada. Basic & applied issues in handwriting & drawing research. |
| 1999 | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE - November 4 thru November 7 - symposium in forensic document examination - 20 hours classroom instruction - continuing education - Scottsdale, Arizona |
| | |

# 1978

**M y firm, ATLANTA LEGAL PHOTO SERVICES, INC. d/b/a ALPS EVIDENCE & PHOTO, was started June 8, 1978, and I began to accept work as an independent document examiner in August of 1980.**

**ALPS EVIDENCE & PHOTO provides *a complete demonstrative evidence service* to the legal profession, insurance field, large corporations, governmental agencies, law enforcement, and private individuals. We deal with objects of evidence & documents on an ongoing daily basis, and we maintain our own laboratory for the examination of documents.**

**Some of the equipment in common use at my 5,000 square foot laboratory includes long & short wave ultraviolet lighting equipment, video spectro-scanner, magnifying devices and lamp, black & white photocopy machine, color photocopy machine, transparency maker, light transmission table, special rules, grids, scales, and other measuring equipment, stereoscopic microscope, copy stands both vertical & horizontal with up to 8" X 10" film cameras. Complete color, and black & white processing labs for all aspects of document photography and special photographic sheet & roll film and photo materials, plus a wide assortment of special exciter & barrier filters for testing and other document examination uses. Also, I have equipment for the electrostatic development of indented writing impressions. I also have on hand, chemistry and apparatus for performing thin layer ink chromatography and also paper analysis. We have a video spectro-scanning apparatus for detection of inks. I also maintain a reference library at ALPS as part of my independent laboratory.**

# PROFESSIONAL ORGANIZATIONS & AFFILIATIONS

| | | |
|---|---|---|
| A.F.D.E. | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS | **Founding Member (Sept. 1986) - to present**<br>**Past President**<br>**Past Board Member**<br>**Past Chairman of Board Certification** |
| E.P.I.C. | EVIDENCE PHOTOGRAPHERS INTERNATIONAL COUNCIL | **Member 1977 to present.**<br><br>**Offices held: Vice-President**<br>**President**<br>**Board Of Management**<br><br>**Awards & Degrees: Certified as a Professional Evidence Photographer.**<br>**Fellow**<br>**R.C. Hankinson award 'Evidence Photographer Of The Year' - 1989** |
| D.E.S.A. | DEMONSTRATIVE EVIDENCE SPECIALISTS ASSOCIATION | **Founding Member**<br>**(no longer a member)** |
| P.P.A. | PROFESSIONAL PHOTOGRAPHERS OF AMERICA | **Member 1978 - 1997**<br>**Note: out of approximately 20,000 + members, I am recognized as 1 of 7 Qualified Evidence Photographers in the nation; and also a Certified Professional Photographer as listed in 'Who's Who In Professional Imaging'.**<br>**(no longer a member)** |
| I.A.Q.D.E. | INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS | **1979-1986 Board Certified Document Examiner**<br>**(no longer a member)** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# PUBLICATIONS

| | | |
|---|---|---|
| "A NEGATIVE IS A NEGATIVE" | a new method for retrieving complete typewritings or other information from spent carbon papers. | INSIGHT Magazine - 1979 winter issue - published by Independent Association of Questioned Document Examiners (IAQDE) |
| "CROSS EXAMINING THE PHOTOGRAPH......PHOTOGRAPHIC FORGERY & MISREPRESENTATION", | How jurors are often mislead to the wrong verdict after viewing an improperly presented photograph. This article could help you win your case ! | THE CHAMPION - May 1982 issue - an official news publication of the National Association Of Criminal Defense Lawyers |
| "TOOLS OF THE TRADE" - | In depth examination and explanation of the equipment required in a questioned document laboratory. | Journal Of Forensic Document Examination - February 1987 issue |
| "TECHNICALLY SPEAKING......MAGNIFICATION " | Technical article with complete overview on the differences between enlargement and magnification. | Journal Of Forensic Document Examination - Fall 1988 issue |
| "GETTING A HANDLE ON FORGERY" | What attorneys need to understand before taking on a questioned document case or realizing that they even have a questioned document case in the first place. | The Verdict - May/June 1991 issue - published by Georgia Trial Lawyers Association |
| "THE STOPWATCH METHOD OF DISGUISED SIGNATURE IDENTIFICATION" | A unique approach and technique for the identification of who wrote certain disguised writings produced by reduced speed by the writer. | Journal of Forensic Document Examination - Fall 1994 issue |
| | | |
| | | |
| | | |
| | | |
| | | |

# SPEAKER / LECTURER / INSTRUCTOR

| | |
|---|---|
| A.F.D.E. - | ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS, INC. |
| E.P.I.C. | EVIDENCE PHOTOGRAPHERS INTERNATIONAL COUNCIL |
| STATE BAR OF GEORGIA | Criminal Defense Section |
| G.T.L.A. | GEORGIA TRIAL LAWYERS ASSOCIATION |
| UNIVERSITY OF WISCONSIN - | Milwaukee, WI. |

* NOTE : I have lectured numerous times before EPIC, IAQDE, and AFDE on the subjects of document examination, forensic photography, demonstrative evidence, and photographic forgery.

| | | |
|---|---|---|
| SOUTHERN METHODIST UNIVERSITY, SCHOOL OF LAW | (over 40 hours of classroom instruction). Speaker on Document Photography. | September 28 thru October 3, 1980 IAQDE seminar |
| INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) | (over 40 hours of classroom instruction) - speaker on Photographic Forgery | October 10 thru October 15, 1982 Providence, Rhode Island |
| INDEPENDENT ASSOCIATION OF QUESTIONED DOCUMENT EXAMINERS (IAQDE) | (over 40 hours of classroom instruction in questioned document) - Instructor in Video Spectro Scanner & associated equipment | October 16 thru October 21, 1985 Portland, Oregon |
| ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE | Symposium - Chairman of the First AFDE Symposium On Questioned Document Examination. I instructed on inks, papers, and other examination of documents and indented writings. Became Certified Document Examiner status in AFDE after testing. | May 29 thru June 1, 1987 Atlanta, Georgia |
| ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE | Presented paper "Admittance Of Photographic Evidence In Our Courts For The Document Examiner". Board Member of AFDE. | May 1988 Milwaukee, Wisconsin |
| ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS - AFDE | Spoke on "Stop Watch Method Of Handwriting Examination". Completed AFDE Board Certification program and received Board Certification at this meeting. | October 6 thru October 12, 1993 Cleveland, Ohio |
| | | |

# PROFESSIONAL OPINION RENDERED

| 1991 July | 'MIA photograph' | regarding the 'MIA photograph' presented by Colonel McDonald of the MIA Organization which was brought to me for examination and the rendering of my professional & expert opinion as to it's authenticity. Rendered 'NON-GENUINE' opinion. | **Interviewed By :** ABC Nightline CNN International News Hour (Live) Good Morning America Newsweek Magazine <br><br> **Quoted By :** Larry King Live Newsweek Magazine |
|---|---|---|---|
| 1997 April June | ATLANTA CENTENNIAL PARK | alleged letter from Olympic Park Bomber | **Interviewed by :** numerous television stations |
| 1997 April June | JON BENET RAMSEY case | letter allegedly left by murderer | **Interviewed by :** numerous television stations |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

ALPS EVIDENCE & PHOTO  2139 Liddell Drive  Atlanta, Georgia 30324 USA
Local : 404-872-2577   Fax : 404-872-0548   National : 1-800-USE-ALPS
E-Mail : ALPS007@mindspring.com   Web Site : www.ALPSLABS.com

# Testimony of George S. Pearl in the last 4 years

**1.**

September 25 – 27, 2002, Court Testimony
Mary Margaret Wright, administrator of the estate of Kevin Francis Wright, Jr.
　　　　PLAINTIFF
　　　　　Vs.
CSX Transportation, Inc.
　　　Defendant
In the United States District Court Middle District of Georgia, Macon Division
Civil Action No. 5:01-CV-324-4(DF)

Testified for the Plaintiff
Davis, Gregory, Christy, & Forehand Attorneys
Cordele, GA.
Tel: 912-237-7150

**2.**

January 19, 2001, Affidavit
Armendez Baker and Robert Baker individually and as surviving parents of
Kelsey Alexandra Baker, deceased, and Robert A. Baker as administrator of the estate of
Kelsey Alexandra Baker, deceased
　　PLAINTIFFS
　　　Vs.
Piedmont Hospital, Inc., Defendant
Civil Action File # 98VS-145204J
In the State Court of Fulton, Co.
State of Georgia

Testified for the Plaintiff
Benjamin S. Williams & Associates, Attorneys
Suite 1050
Tower Place 200
3348 Peachtree Road, NE
Atlanta, GA. 30326
Tel: 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

**3.**

October 1, 2001 Court appearance; 2001 Deposition; April 2, 1999 Affidavit
State Of Georgia v. Leroy and Tammy Turner

Appearance for:
Assistant District Attorney
Mountain Judicial Circuit
Toccoa, Georgia

Deposition before:
McLure, Ramsey and Dickerson
ALPS Evidence and Photo
2139 Liddell Dr.
Atlanta, Georgia

Affidavit written on April 2, 1999

**4.**

August 14, 2001 Court appearance
John Peter v. Marine Military Academy
Attorney: Nancy C. Wilson of Rodriguez, Colvin and Chaney, L.L.P.

Appearance for:
197th Judicial District Court
Cameron County, Texas

**5.**

August 15, 2001 Court appearance; August 6-14, 2001 affidavit
State of Georgia v. Rogilo Castillo
Attorney: Robert E. Turner, P.C.

Appearance for:
Judge Flemming
County Court House
Appling, Georgia

Affidavit written August 6 through August 14, 2001

**6.**

June 12, 2001 Deposition
Stacy Emens v. Bill's House Movers   - Civil action 99VS155075F
Shelley Hersh v. Bill's House Movers - Civil action 99VS154675J
Plaintiff attorney: Samuel Starks (Hersh)
Plaintiff attorney: Thomas Kenney (Emens)
Defendant attorney: Sharon Neal
Defendant attorney: Rory Starkey

Deposition taken before:
Angelia Wheeler Evert – Court certified reporter and Notary Public
3151 Maple Drive
Atlanta, GA

**7.**

December 6, 2000 Court appearance; December 5, 2000 affidavit
Wanda Holt v. Truesdale, et al
Attorney: Lannis Temple, Esq.

Appearance for:
Guilford County Court
North Carolina

**6.**

December 16, 1999 Deposition
Sharise, Amelia, Norma and Kenneth Mock v. Norman Mock
Plaintiff Attorney: Richard Shope

Deposition at:
ALPS Evidence and Photo
2139 Liddell Dr
Atlanta, Georgia

**8.**

March 22, 1999 Affidavit
Ann Pritchett v. Galaxy Electronics
Plaintiff Attorney: V. Janey Campbell of Scheeder, Wheeler and Flint

**9.**

February 16, 1999 Court Appearance
United States Federal Supreme Court v. Gurmeet Singh Dhinsa
Defendant Attorney: Gerald L. Shargel

Appearance at:
Brooklyn Federal Court
New York City, New York

**10.**

April 2, 1999 Affidavit
Lucent Technologies v. Communication Workers of America

State of Texas        )(

County of Cameron )(

   This instrument was acknowledged before me on this 10th day of March, 1995 by William Protz Jr. of SANTA'S BEST, on behalf of said corporation.



*Alicia Castillo*
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95



State of Texas        )(

County of Cameron )(

   This instrument was acknowledged before me on this 10th day of March, 1995 by Emily Maria Hernandez Dolores of Accesorios Ilimitados, S.A. DE C.V., on behalf of said corporation.

*Alicia Castillo*
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95

SENT BY:LEVENFELD PEARLSTEIN  ;12-11- 2 ;  12:53 ;          CHICAGO→              14048720548;# 9/14

# AGREEMENT

This agreement is between Border Alliance S.A. de C. V. and Santa's Best.

Border Alliance agrees to the following provisions:
Border Alliance will provide labor, payroll, and payroll taxes, and negotiate union contracts on behalf of Santa's Best. Border Alliance will provide all utilities, phones, office equipment and supplies. Border Alliance will produce a quality product and deliver all goods in a timely manner as per the requirements of Santa's Best. A warehouse in the U.S. will be supplied to ship and receive. Transportation and broker in Mexico will be furnished not to exceed one import or export per week. Border Alliance will submit bids for all new products and provide transportation to pick up and deliver products in the ejidos.

Santa's Best agrees to the following provisions.
Santa's Best agrees to provide all raw materials, machinery, and equipment necessary to produce their product as well as any required training. Santa's Best will provide payment for lease (including taxes) of Mexican Warehouse, transportation and broker in U.S. and in Mexico if more than once per week. Santa's Best will be responsible for all taxes (except payroll), liquidations of not more than 20 union workers, 2 supervisors, and 2 office workers, and fire and theft insurance to cover their product.

Santa's best also agrees to allow Border Alliance to use a small area for storing ribbon for Norma Ribbon in exchange for the use of the U. S. warehouse.

A one year notice is required for termination of this agreement by either party.


Clarence Carroll                                    Bill Protz

Confidentiality Agreement                                                                    Page 2

3.   The Undersigned specifically agrees that it will undertake to use reasonable efforts to protect the confidentiality of the information supplied by Discloser and that prior to disclosing any such information to any Agents, the Undersigned shall inform such Agent who is to receive such information of the confidential nature thereof and of the Undersigned's duties hereunder. In the event the Undersigned desires to disclose such information to a third party other than an Agent, the Undersigned shall first obtain a written acknowledgement from such third party that it will be bound by the terms of this Agreement.

4.   The Undersigned acknowledges the information disclosed under terms of this agreement herein constitutes proprietary and trade secrets and in the event of unlawful use of wrongful disclosure, Discloser shall be entitled to injunctive relief as a cumulative and not necessarily successive remedy without need to post bond.

5.   This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

Signed under seal this __15th__ day of __April__ , 19 _97_.

Border Alliance

By: _____

                                                    And

SANTA'S BEST

By: _____

(Discloser)

STATE OF TEXAS
COUNTY OF CAMERON

This instrument was acknowledged before me on the 15th day of April, 1997, by C. C. CARROLL.

SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL
SUBDELEGAC. FEDERAL EN CD. VICTORIA,
TAMAULIPAS.

**SANTA'S BEST.**

1133 SOUTH 16TH STREET
P.O. BOX 1347
MANITOWOC, WI 54221-1347
(414) 684-4448
FAX (414) 684-3773

PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE
ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE
DEMANDADA.

SANTA'S BEST

_____
WILLIAM PROTZ JR.

ACCESORIOS ILIMITADOS,
S.A. DE C.V.

_____
C. EMILY MA. HERNANDEZ D.

LIC. ABELARDO GUERRA FARIAS
GUFA-421114-202
NOTARIO PUBLICO NUMERO 131

ESTADOS UNIDOS MEXICANOS

LIC. ABELARDO GUERRA FARIAS
Notario Público No. 131
H. Matamoros, Tams.

SENT BY:LEVENFELD PEARLSTEIN ;12-11- 2 ; 12:53 ; CHICAGO→ 14048720548;#10/14

## Lease Agreement

Santa's Best agrees to continue the use of the building located at Calle 18 and Herrera, Matamoros, Mexico for the next three consecutive years. This term is from May - June 1999 through January - February 2000 at the rate of $3600.00 per month. The rate from February - March 2000 until December 31, 2003 will be $4560.00 per month. This is the agreement set forth by Border Alliance / Accesorios Ilimitados on behalf of and with verbal consent of Santa's Best, Lubbock, Texas, with Fernando Cortez of Matamoros, Mexico. This contract is already in force by verbal agreement and now by this written contract

K W~ D.Rqt~  8/9/99
William F. Protz, Jr.
Santa's Best

notary U.S.A.
date

C. C. Carroll
Clarence Carroll
Border Alliance

notary U.S.A.
date

Emily Hernandez

## Lease Agreement

Santa's Best agrees to continue the use of the building located at Calle 18 and Herrera, Matamoros, Mexico for the next three consecutive years.    This   term   is   from May - June 1999 through January - February 2000 at the rate of $3600.00 per month.  The rate from  February - March 2000 until December 31, 2003  will be $4600.00 per month.  This is the agreement set forth by Border Alliance / Accesorios  Ilimitados on behalf of and with verbal consent of Santa's Best, Lubbock, Texas, with Fernando Cortez of Matamoros, Mexico.   This contract is already in force by verbal agreement  and now by this written  contract

X _William F. Protz_ Sept 9, 1999

William F. Protz, Jr.

Santa's Best

**OFFICIAL SEAL**
**DOLORES K OLSEN**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/20/01

notary U.S.A. _Dolores K Olsen_
date   9-9-99

_Clarence Carroll_
Clarence Carroll

Border Alliance

_Noni J Cardin_
Notary Public, State of Texas
Exp. 4/21/2001

notary U.S.A.
date

Emily Hernandez
Accesorios Ilimitados

SENT BY:LEVENFELD PEARLSTEIN  ;12-11- 2 ;  12:55 ;               CHICAGO→           14048720548;#13/14



PAGINA 3 DE 3

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE
ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE —
DEMANDADA.

SANTA'S BEST

WILLIAM PROTZ JR.

ACCESORIOS ILIMITADOS,
S.A. DE C.V.

C. EMILY MA. HERNANDEZ D.



SM

# EVIDENCE & PHOTO
★ Since 1978 – A Total Demonstrative Evidence Service! ★
**2139 Liddell Drive, NE   Atlanta, Georgia 30324-4132**
Tel: 404-872-2577   Nat'l: 1-800-USE-ALPS   Fax: 404-872-0548
Web Site: www.alpslabs.com
E-mail: alps007@mindspring.com

**ATLANTA LEGAL
PHOTO SERVICES, INC.**

March 11, 2003

Beau T. Greiman, Esq.
Levenfeld Pearlstein Attorneys
33 West Monroe Street
21st Floor
Chicago, Illinois 60603

**Re: Border Alliance, et al. v. William F. Protz, Jr., et al.**
**Your Case File # 26674-37519**
**(Examination of Documents)**

Dear Mr. Greiman,

    Upon your request, I have examined what has been described to me as being the original documents of the 15 April 1997 Confidentially Agreement. These are matching the documents numbered D00003 and D00004, and were sent to me by your office by FedEx February 26, 2003.

    I have preformed an examination visually and microscopically of these 2 documents against the prior received D00003 and D00004 faxed copy documents. It is additional to my opinion letter of December 26, 2002, that these newly received documents are in fact the ORIGINAL documents that the faxed copies D00003 and D00004 at some point in time were originally made from.

    The original documents as described above will be retained in my file until such time as I receive instructions as to where they should be sent, or whom given to.

    With kindest regards, I am

Sincerely,

George S. Pearl, FEPIC, BCEP, BCQDE

Founding Member:
*Association of Forensic Document Examiners, Inc.*



**SM**

# EVIDENCE & PHOTO
★ Since 1978 – A Total Demonstrative Evidence Service! ★
2139 Liddell Drive, NE   Atlanta, Georgia 30324-4132
Tel: 404-872-2577  Nat'l: 1-800-USE-ALPS  Fax: 404-872-0548
Web Site: www.alpslabs.com
E-mail: alps007@mindspring.com

**ALPS**
ATLANTA LEGAL
PHOTO SERVICES, INC.

April 3, 2003, 2003

Beau T. Greiman, Esq.
Levenfeld Pearlstein Attorneys
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60603

**Re: Border Alliance, et al. v. William F. Protz, Jr., et al.**
**Your Case File # 26674-37519**
**(Examination of Documents)**

Dear Mr. Greiman,

Upon your request, I have now examined the original documents of the Lease Agreement, dated 9-9-1999, received from Phil Bellamy, Esq. This is matching the document numbered 0009. I received this document by FedEx March 31, 2003.

I have preformed an examination visually and microscopically of this document against the prior received 0009 faxed copy document. It is additional to my opinion letter of December 26, 2002, that this newly received document is in fact the ORIGINAL document that the faxed copy 0009 at some point in time was originally made from. This meaning that it is the original document that copies or that copies from copies all began their existence from. It is further in that vein my opinion that this William F. Protz, Jr. signature is the original signature that was used to copy from which ultimately was TRANSFERRED to document P0016. The signature of Protz on P0016 is Non-Genuine.

I will continue to await the arrival of the ORIGINALS of the SUBJECT documents for their examination. Mr. Bellamy should surly be able to produce these for my examination just as easily as the document with the original signatures on it. Let's see the other "Originals" please.

I have this day packaged and shipped by Federal Express Shipment the ORIGINAL lease agreement and the ORIGINAL confidentiality agreement to Phil Bellamy, Esq.

With kindest regards, I am

Sincerely,

George S. Pearl, FEPIC, BCEP, BCQDE

Founding Member: Association of Forensic Document Examiners, Inc.

**1.- Does SECOFI have any record of receiving a maquila contract from Accesorios Ilimitados?**

As a result of the investigation done in the Economy Ministry, Delegation in Ciudad Victoria, Tamaulipas, (formerly SECOFI), regarding the presentation, by "Accesorios Ilimitados", S.A. de C.V., of the Maquila Contract for its register, there is not any record related with such contract, since that Ministry only keeps the documents for a 5 (five) years period.

In the same office, I was told that, in the middle of 2001, a person unknown for us, requested a copy of the Maquila Contract reached by "Accesorios Ilimitados", S.A. de C.V. and Santa's Best, which, in that date, could not be found in the "Accesorios Ilimitados" file; by this reason, the personnel of the Economy Ministry Delegation Ciudad Victoria, Tamaulipas (formerly SECOFI), requested to "Accesorios Ilimitados", S.A. de C.V. to deliver a copy of such contract.

At that time, middle of 2001, "Accesorios Ilimitados", S.A. de C.V., delivered to the Economy Ministry Delegation Ciudad Victoria, Tamaulipas (formerly SECOFI), a copy of the Maquila Contract reached by that company and Santa's Best; that document is which I was asked to analyze and investigate.

**2.- Was Accesorios ever registered with SECOFI? If so, what years was Accesorios registered?**

It is important to remark that the register of the Maquila Contract in the Economy Ministry is only a step, since, when a company wishes to have the benefits that this Ministry offer to the Maquila companies, they must present the above mentioned contract, as well as other documents, with the signatures certified by Notary Public.

In this way, the term "register" is inappropriately used, because a Maquila Contract never is actually registered in the Economy Ministry; it is only presented a copy as a formality. To use appropriately the word "register", it should have been presented at the Public Register of the Property and Commerce, in Ciudad Victoria, or in Matamoros, Tamaulipas.

In Mexico, when a contract is registered in the Public Register of the Property and Commerce of the state in which the contract is reached, or in the place in which the main activities involved would be performed, in the moment in which it is registered, it causes effects before third parties and makes plain proof until the contrary is proved. In the case of *Accesorios Ilimitados, S.A. de C.V.,* the contract was never registered in any place, and in the Economy Ministry only was presented a copy, as a single formality.

During my visit to the Economy Ministry (formerly SECOFI), Delegation Ciudad Victoria, Tamaulipas, I was told that, since 1995, "Accesorios Ilimitados", S.A. de C.V., had requested and had received the approval to operate under the Official Program for enterprises dedicated to the Maquila, for obtaining, in that way, the fiscal benefits that provides that Program of the Mexican Government.

It is important to remark that the Economy Ministry (formerly SECOFI), in order to encourage the economic growing and the employment in Mexico, grants, to the companies dedicated to the Maquila activity, some fiscal benefits. To obtain them, it is required to accomplish certain requisites; among them, it is the Maquila Contract, which must be certified by Notary Public; the allowance that the Economy Ministry Grants to obtain the above mentioned benefits, should be renewed annually.

We were also told that the company "Accesorios Ilimitados", S.A. de C.V. did not presented its request for the renewal of the register in the Maquila Program for 2002; for this reason, it was sent a notice to its address, in which it was no more. Since the company did not present a notice informing about the address change, the company "Accesorios Ilimitados", S.A. de C.V. was excluded of the Maquila Program, in accordance with the applicable laws and regulations. The cancellation was done on October 15, 2002 (Attached is a letter issued by the Economy Ministry, in which the cancellation is mentioned)..

**3.- If Accesorios was registered, have you been able to discover who was the foreign customer that they originally told SECOFI that they would be working for?**

During our investigation and the talks we had with the personnel of the Economy Ministry, ( formerly SECOFI) Delegación en Ciudad Victoria, it could not be found any document regarding the business relation of "Accesorios Ilimitados", S.A. de C.V. with any company to which it could have given the Maquila service during 1995.

It is impossible to determine which foreign company made business whit "Accesorios Ilimitados", S.A. de C.V. in 1995

**4.- Does SECOFI have any record or receiving the maquila contract which is on Santa´s Best letterhead that we sent to you?**

In the files of the Economy Ministry (formerly SECOFI), Delegation en Ciudad Victoria, Tamaulipas, there is not evidence that the Maquila Contract had been received for ther Office.

The only evidence of that fact is a seal that can be seen in the left upper side of the contract, by which it can be assumed that it was received in the date that appear in such seal; however, it is important to remark that the personnel of the Economy Ministry (formerly SECOFI), Delegation en Ciudad Victoria, Tamaulipas, did not identify that seal as the one that is used by that office to mark the documents received in it.

Based on this, I believe that the seal is funny.

**5.- Is there anything about the maquila contract which is on Santa´s Best letterhead that is suspicious or not proper? Please explain any problems with the maquila contract in detail.**

Besides the funny seal of the Economy Ministry, one of the relevant aspects were the seal and the signature that are located under the signatures of the parties; such seal and signature are of lawyer Abelardo Guerra Farías, Notary Public Number 131 of Matamoros, Tamaulipas.

In Mexico, when a person asks a Notary Public to certify the signatures in a contract, the Notary Public certifies that the signatures were done in his presence and he identifies the parties requesting the presentation of an official document, as driver license, passport, etc.; at the end of the certified document. The Notary Public annotates, in a paragraph, that the persons really are who they say to be, since they identified themselves with the above mentioned document and the signatures were also annotated before him; in the contract with *Accesorios Ilimitados, S.A. de C.V.*, there is no such paragraph; there are only the Notary Public seal and signature.

By this reason, we visited the Notary Public, Lawyer Abelardo Guerra Farias, to inquire why the above mentioned paragraph was not annotated, as required by the applicable law; he was surprised and told us that he had not done that work; that somebody had photocopied his seal and signature and had superposed them in the mentioned contract. He offered his support to present a claim for falsification or to appear before the Courts, to testify that the contract with *Accesorios Ilimitados, S.A. de C.V.* was never presented to him and that the signatures of the parties were not done in his presence.

Because of that said before, it can be assured that the personnel or representatives of "Accesorios Ilimitados", S.A. de C.V., photocopied the seal and signature of Notary Public number 131, Lawyer Abelardo Guerra Farías. To make appear as valid the Maquila Contract and to accomplish one of the requisites established by the Economy Ministry to obtain the fiscal benefits above mentioned.

Another doubtful aspect regarding the Maquila Contract, is that anybody has seen the original contract, since we were told that the signature of Mr. William Protz Jr. was falsified, taking a copy of a document in which the original signature of Mr. Protz Jr. had been written.

It is important to remark that, under the Mexican laws, the falsification and the functions usurpation, are crimes prosecuted by the justice.

**6.- Is the maquila contract on file at at the Public Register of the Property and Commerce in Ciudad Victoria or Matamoros, Tamaulipas? If not, what does that mean?**

Under the Mexican laws, there are several forms in which a Contract is more effective before the law; the contract can be signed only by the parties without any formality, but in case of controversy, it should be proved that the signatures contained in the contract are precisely of the persons that appear in such contract and that were written by their own hand.

Another form of giving more effectiveness to a document under the Mexican laws, is by signing such document the parties, before a Notary Public, since, in Mexico, a Notary Public has Public Faith and the acts done before him will be absolutely valid, until the contrary be proved. In the case of the contracts, the Notary Public attests that the signature were put by the individuals

mentioned in the contract, since it is requested to them to present an identification credential with a photography, in order to verify that they are who they say to be.

The form in which a contract has plain effectiveness and is a perfect proof in a judgment, is when it is certified by a Notary Public and besides it is registered in the Public Register of Property and Commerce, in the State in which the contract is done or in the place in which the main activity will be performed; when registered, such contract cause effects against third parties and is plain proof until the contrary is proved. If regarding a given contract, this two facts have occurred, this is, it has been certified by a Notary Public and it has been registered in the Public Register of Property and Commerce, before the Mexican laws it has plain validity.

The Maquila contract implying "Accesorios Ilimitados", S.A. de C.V. does not accomplish with any of the formalities and requisites described above, since it was not duly certified by a Notary Public, nor was registered at the Public Register of Property and Commerce.

**7.- Based on your answers to questions 1-6 and any other information you have, do you believe the maquila contract which is on Santa´s Best letterhead was filed with SECOFI in 1995?**

It is very suspicious that in the Economy Ministry (formerly SECOFI) Delegacion Ciudad Victoria, Tamaulipas, there is no evidence of the Maquila Contract and the personnel that have been working there for more than ten years, do not remember any fact related with such contract.

In addition, it must be considered that, as has been said, in the middle of 2001 a copy of the contract was requested and it could not be found and the only fact that the personnel of the Economy Ministry (formerly SECOFI) remember on this respect, is the delivering of the copy, by the representatives or personnel of "Accesorios Ilimitados", S.A. de C.V.

On the basis of my professional experience as a lawyer and the investigations done regarding this work, it is more likely then not that "Accesorios Ilimitados", S.A. de C.V. had not presented the Maquila contract before the Economy Ministry (formerly SECOFI) in 1995; other point that confirms this suspect is the fact regarding the seal and signature of Notary Public Number 131, since, if this Notary had done his work correctly, as assumed by "Accesorios Ilimitados", S.A.de C.V., he should have annotated the date in which the contract parties appeared before him, to request the signatures certification, which could not have been in 1995.

On the other hand, the certification of the signatures of the Maquila contract was a requisite demanded by the Economy Ministry (formerly SECOFI) and, in any form, the "Accesorios Ilimitados", S.A. de C.V. representatives, should make appear that such requisite was accomplished.

It is not likely that the Maquila Contract could have been presented before the Economy Ministry (formerly SECOFI), since the Economy Ministry would need to observe the original, in order to verify if the signatures and the seals put on it were written with ink.

Since it looks like the evidence is that all of the elements for its validity and its presentation before the Economy Ministry, have been photocopied and superposed, I believe that the Enonomy Ministry it had not accepted the Maquila Contract.

I also believe that the Economy Ministry made have been presented a different contract, wich made have identified with a different client and it contained different terms

**8.- Based on your answers to questions 1-6 and any other information you have, do you believe the maquila contract that we sent to you are authentic?**

I consider that, in order to do a correct judgment on the contracts, it must be clarified a number of doubts, since, as has been remarked in this document, there are many situations in which, in conformity with the Mexican law, the Maquila contracts would not have validity and I consider that the only way to resolve such doubts, would be observing the original contracts.

Because of the above mentioned, about the possibility that the signature of Mr William Protz had been falsified by the representatives of *Accesorios Ilimitados, S.A. de C.V.,* if it can be proved before the Courts, requesting a graphic examination from an expertise, that the signature in the contract is not Mr. William Protz signature, *Accesorios Ilimitados, S.A. de C.V.,* would have not any relation with Santa's Best and would not have any right to that is claimed in its demand.

**9.- If the maquila contrac are not authentic, does Santa´s Best have any liability for Accesorios or Border Alliance´s liquidations, taxes or other expenses under Mexican lax?**

In case that the Maquila Contracts are not authentic, it would not exist any responsibility for Santa´s Best or Mr. William Protz Jr., regarding the indemnity for finishing the labor relation with the workers, as well as of any tax that be claimed in the lawsuit.

**10.- If the maquila contract were authentic, woul Santa´s Best be responsible for Accesorios´o Border Alliance´s taxes, liquidations, etc.?**

In case that the Maquila Contracts are authentic, Santa´s Best would be responsible only and exclusively for the contracted obligations and only during the validity of the Contract.

In clause seventh of Maquila Contracts we can observe, the validity of the contract and Santa´s Best obligations related with taxes, which is transcribed on following:

SEVENTH.- **This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months. "SANTA´S BEST" is obligated to comply with the fiscal and labor** obligations derived from this agreement, for example the payment of "I.S.R.", "I.S.P.T.", 2% "S/N". 5% "INFONAVIT", and 2% "S.U.A.", taxes on foreign trade, social security taxes, rent for the building until the termination of the contract, and likewise **assumes the responsibility of indemnifying all of the workers in the**

**event that this labor relationship terminates**, according to article 436, paragraph 4, and article 162 of the federal labor law of Mexico.

From the above mentioned, we can conclude that since the contract was signed in February 12 1995 and counting the time that is specified in the mentioned clause, the contract would be effective up to February 12 1997.

The contrat would not obligado Santa´s Best for expenses like taxes and liquidations, after February 12 1997.

**11.- Can you determine whether the Ministry of Finance is currently planning to collect any taxes from Accesorios as Accesorios alleges?**

We investigated the status of *"Accesorios Ilimitados", S.A. de C.V.* at the Ministry of Finance (Secretaría de Hacienda y Credito Publico) and they told us that the company was deleted in their system; this is, that company is not a taxpayer currently; so, the Secretaria de Hacienda is not intending to collect the taxes for which *"Accesorios Ilimitados", S.A. de C.V.,* is indebted.

**12.- Is Accesorios exagerating its potential liability for liquidations, taxes, etc., in the report of it´s accountant which we provided to you?**

It must be requested to the company "Accesorios Ilimitados", S.A. de C.V. to present its accounting records, to perform an appropriate study on the taxes that it actually should pay, since it is necessary to know the salary that received each one of its workers, in order to computing his liquidation, as well as the profits obtained by the company, to determine its taxes payable.

Regarding the taxes, updatings and surcharges, as manifested in the prior paragraph, it is necessary to analyse the accounting records of the company "Accesorios Ilimitados", S.A. de C.V.

A fact that can be analysed now, is that, in the report that I received, the payment of fines is demanded, but such fines have not been demanded by the Finance Ministry (Secretaría de Hacienda y Crédito Público) to the company "Accesorios Ilimitados", S.A. de C.V., since, as a rfesult of my investigations in this regard, the above mentioned Office has not a fiscal credit against "Accesorios Ilimitados", S.A. de C.V. and it is not possible to know the amount of the fines that such Ministry will impose to the company; something that  already can be known, is that, in any case, the Finance Ministry charges 70% fines.

**13.- If the union really seized Santa´s Best´s equipment as Accesorios alleges, was it proper for Accesorios to permit the seizure?**

If there were a Labor Claim against "Accesorios Ilimitados", S.A. de C.V. issued by that Company Labor Union, those goods, Santas Best property, can not be seized by the workers, since such goods are not a part of the Company capital.

If the workers of "Accessorios Ilimitados", S.A. de C.V., have seized the equipment of this company and among them the equipment of Santa´s Best, it is necessary that they have an order from the court, if they do not have such order, they would be commit a crime (robbery).

If such machinery and equipment have been seized by "Accesorios Ilimitados", S.A.de C.V., workers, it is illegal.

Lawyer Alejandro González Martí.
Professional Licenses number 3294081

DE : Productividad Asis Admvos SC      NO. DE TEL : 812 35 66      14 ABR. 2003 04:55PM P2

**2.- ¿Existe algún registro en las oficinas de SECOFI de recibir el contrato de Maquila por parte de Accesorios Ilimitados?**

Según la investigación que se realizó en la Secretaría de Economía Delegación de Ciudad Victoria, Tamaulipas (antes SECOFI), sobre la presentación por parte de "Accesorios Ilimitados", S.A. de C.V., del contrato de maquila, no se tiene ningún registro sobre la presentación de dicho contrato, toda vez que se nos informó que dicha Secretaría sólo conserva los documentos por un periodo de 5 años.

Así mismo, se nos informó que a mediados del 2001, le fue solicitado por una persona ajena a nuestro conocimiento, una copia del Contrato de Maquila celebrado entre "Accesorios Ilimitados", S.A de C.V., y Santa´s Best, el cual desde aquella fecha no pudo ser encontrado en el expediente de "Accesorios Ilimitados", S.A. de C.V., por lo cual el personal de la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI), le solicitó a "Accesorios Ilimitados", S.A. de C.V., le proporcionara una copia de dicho contrato.

"Accesorios Ilimitados", S.A. de C.V., le entregó a mediados del años 2001, a la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI), una copia del Contrato de Maquila celebrado entre esta empresa y Santa´s Best, el cual es el que se me solicitó analizar e investigar.

**2.- Estuvo Accesorios alguna vez registrado con SECOFI? Si es el caso, en que año fue registrado Accesorios?**

Es importante señalar que la inscripción del Contrato de Maquila ante la Secretaría de Economía (antes SECOFI), es solo un trámite, toda vez que cuando una sociedad desea obtener los beneficios que ofrece esta Secretaría a las empresas dedicadas a la Maquila, debe de presentar entre otros documentos, una copia del Contrato de Maquila firmado por las partes y certificadas dichas firmas ante Notario Público.

Es por lo cual está mal empleada la palabra inscripción por que realmente nunca se inscribe el Contrato de Maquila ante la Secretaría de Economía, si no que solo se presente una copia por un mero trámite, para hablar de inscripción se debió haberse inscrito ante la oficina del Registro Público de la Propiedad y de Comercio ya sea de Ciudad Victoria o Matamoros.

En México cuando un contrato privado se inscribe ante la oficina del Registro Público de la Propiedad y de Comercio en la entidad federativa donde se realice el contrato o en el lugar donde se desempeñaran la actividad preponderante del contrato, dicho contrato al momento de su inscripción causa efectos contra terceros y es prueba plena hasta que se demuestre lo contrario, en el caso que nos ocupa el Contrato de Maquila, nunca se inscribió en ningún lugar, en el caso de la Secretaría de Economía (antes SECOFI) sólo se presentó una copia para cumplir con un requisito.

DE : Productividad Asis Admvos SC       NO.DE TEL : 812 35 66       14 ABR. 2003 04:55PM P3



En nuestra visita a la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI), se nos informó que desde 1995 "Accesorios Ilimitados", S.A. de C.V., había solicitado y fue aprobado para pertenecer al programa de empresas dedicada a la Maquila, para que de esta forma obtener los beneficios fiscales que ofrece este programa.

Es importante hacer de su conocimiento que la Secretaría de Economía (antes SECOFI), para fomentar el crecimiento y la creación de empleos, otorga a las empresas dedicadas a la Maquila beneficios fiscales, para obtener dichos beneficios es necesarios cumplir con ciertos requisitos y presentar ante dicha Secretaría diversos documentos entre los cuales se encuentra el Contrato de Maquile con la certificación de firma ante Notario Público, el permiso que otorga la Secretaría de Economía para obtener los beneficios debe ser renovado anualmente.

Así mismo, se nos indicó que la sociedad Accesorios Ilimitados, S.A. de C.V., no había presentado su renovación al sistema de maquila para el año 2002, es por lo cual se procedió a requerirlo y se señaló que la sociedad Accesorios Ilimitados, S.A. de C.V., ya no se encontraba ubicada en el domicilio donde solía estar y toda vez que no presentado escrito alguno informando a la Secretaría de Economía sobre el cambio de domicilio, de conformidad con la Ley en la Materia se procedió a cancelar a la sociedad "Accesorios Ilimitados", S.A. de C.V., del programa de maquila, dicha cancelación se llevo a cabo el día 15 de octubre de 2002. (Se anexa carta expedida por la Secretaría de Economía al presente escrito donde se hace mención sobre la cancelación).

**3.- Si Accesorios fue registrado, fue posible encontrar con que cliente extranjero originalmente se le informó a SECOFI que estaría trabajando?**

Durante la investigación y las platicas que se tuvieron con el personal de la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI), no se pudo encontrar ningún documento el cual nos indicará con que empresa fue la que la sociedad "Accesorios Ilimitados", S.A. de C.V., comenzó a trabajar como una empresa maquiladora durante el año 1995.

**4.- SECOFI tiene algún registro de recibir el contrato de Maquila en donde comparece Santa's Best, el cual te fue enviado?**

Dentro de los archivos de la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI) no existe ninguna evidencia que el Contrato de Maquila hubiese sido recibido por esta Secretaría.

La única evidencia que existe de esto es un seño que se encuentra en la parte superior izquierda del contrato, el cual se puede interpretar que fue recibido con la fecha que aparece dentro del seño, pero es importante señalar que las personas de la Secretaría de Economía Delegación de Ciudad Victoria (antes SECOFI), no reconocieron este seño como el que utiliza esta Secretaría para recibir los documentos que son presentados ante ella.

DE : Productividad Asis Admvos SC     NO.DE TEL : 812 35 66     14 ABR. 2003 04:57PM P4

Otra forma que tiene mas validez bajo las Leyes Mexicanas es que las firmas sean puestas ante un Notario Público, toda vez que la figura del Notario Público en México está investido de Fe Pública, y los actos que se realicen ante el tendrán toda la validez, hasta que se demuestre lo contrario, en el caso de los contratos lo que el Notario Público hará es que da Fe que las firmas fueron puestas por las personas que están en el Contrato, toda vez que les solicita una identificación con fotografía a dichas personas, para poder comprobar que es quien dice ser.

La forma que tiene validez plena y dentro de un juicio es una prueba perfecta es cuando un contrato es celebrado ante un Notario Público y además inscrito en el Registro Público de la Propiedad y de Comercio en la entidad federativa donde se realice el contrato o en el lugar donde se desempeñaran la actividad preponderante, dicho contrato al momento de su inscripción causa efectos contra terceros y es prueba plena hasta que se demuestre lo contrario. En caso que se realicen dentro de un contrato estos dos acontecimientos es decir la celebración ante Notario Público y la inscripción en el Registro Público de la Propiedad y de Comercio, dentro de las Leyes Mexicanas tiene la validez absoluta.

En el Contrato de Maquila que nos ocupa, el contrato no cumple con ninguna de la formalidades para obtener algún tipo de validez, toda vez que no fue firmado ante Notario Público ni inscrito en el Registro Público de la Propiedad y de Comercio.

**7.- Basado en tus respuestas de las preguntas 1-6 y cualquier otro información que tu tengas, tu crees que el contrato de Maquila en donde comparece Santa's Bests fue archivado en SECOFI en 1995?**

Es muy dudoso que dentro de la Secretaría de Economía Delegación Ciudad Victoria (antes SECOFI) no exista ninguna evidencia del Contrato de Maquila y las personas que tiene más de 10 años laborando en dicha Secretaría se acuerden.

Así mismo como se menciono anteriormente la cuestión que en a mediados del 2001, solicitaron una copia y tampoco se pudo encontrar y que la única vez que recuerdan el Contrato de Maquila las personas que trabajan en la Secretaría de Economía, es la copia que les entregó la empresa "Accesorios Ilimitados", S.A. de C.V.

Por mi experiencia laboral como abogado y por las investigaciones que se realizaron sobre este trabajo, es posible que "Accesorios Ilimitados", S.A. de C.V., no haya presentado el contrato de maquila ante la Secretaría de Economía en 1995, otro punto que confirma mi sospecha en la cuestión del seño y la firma del Notario Público número 131, toda vez que si el Notario hubiese realizado su trabajo correctamente como presume "Accesorios Ilimitados", S.A. de C.V., que lo hizo, tuvo que a ver puesto la fecha en que concurrieron las partes contratantes ante él, a solicitarle la certificación de firma, la cual no hubiese sido en el año 1995.

Pero por otro lado la certificación de las firmas del contrato de maquila era un requisito exigido por la Secretaría de Economía y de alguna forma tenían que hacerlo parecer que sí cumplía con dicho requisito.



Es probable que nunca hayan presentado este contrato de maquila ante la Secretaría de Economía Delegación Ciudad Victoria (antes SECOFI), toda vez que es necesario observar el original para poder ver si tanto las firmas como los seños que en el se encuentran están con tinta, ya que por los indicios que se tienen parecería ser que todos los elementos tanto de validez como para demostrar su presentación ante la Secretaría de Economía, estar sobre puestos o fotocopiados.

**8.- Basado en tus respuestas a las preguntas 1-6 y cualquier otra información que tu tengas, tu crees que el contrato de Maquila que te fue enviado es autentico?**

Considero que para poder tener un juicio correcto sobre el contrato, se deben de aclarar muchas dudas ya que como se ha señalado en el presente escrito, existen muchas cuestiones en las que de conformidad con la Ley Mexicana el contrato de maquila no tendría validez, y considero que una de las formas en que se podrían ir resolviendo estas dudas sería observando el contrato original.

Con motivo de lo antes señalado, tenemos la fuerte creencia que la firma del señor William Protz pudo haber sido falsificada por la parte actora (Accesorios Ilimitados, S.A. de C.V.), si se puede comprobar esto ante los tribunales (solicitando una prueba caligráfica) que la firma del Contrato de Maquila no pertenece al señor William Protz, la parte actora no tendría un vínculo con Santa´s Best y no tendría derecho a reclamar nada de lo que señala en su demanda.

**9.- Si el contrato de Maquila no fuera autentico, Santa´s Best tiene alguna obligación con Accesorios o Borden Alliance´s de pagar las liquidaciones, impuestos o otros gastos bajo las leyes Mexicanas?**

En el supuesto de que el contrato de Maquila no fuera autentico, no existe ninguna responsabilidad por parte de Santa´s Best o el señor William Protz Jr., sobre el pago de las indemnizaciones por la terminación laboral con los trabajadores, así como el pago de ninguno de los impuestos que se reclaman en la demanda.

**10.- Si el contrato de Maquila fuera autentico, Santa´s Best sería responsable de pagar por Accesorios o Border Alliance´s los impuestos, liquidaciones, etc.?**

En el supuesto que Santa´s Best o William Protz Jr., resultaran responsables del pago de las cantidades que argumenta la parte actora, se deberá hacer un estudio contable sobre dichas cantidades, para saber si se realizaron los cálculos correctamente y si se encuentran apegados a Derecho, así como observar hasta qué fecha existía la obligación de Santa´s Best o William Protz Jr., de realizar dichos pagos.

En el caso de que el contrato de Maquila sea autentico, Santa´s Best será responsable sólo y exclusivamente por las obligaciones contraídas en el contrato y solo durante el tiempo de vigencia del contrato.

Dentro del Contrato de Maquila se puede observar en la cláusula séptima, la vigencia del contrato y las obligaciones de Santa´s Best referentes a los impuestos, la cual es del tenor siguiente:

DE : Productividad Asis Admvos SC    NO.DE TEL : 812 35 66    14 ABR. 2003 04:58PM P6



> SÉPTIMA.- **Este contrato entrará en vigor por un periodo de (12) doce meses y será automáticamente renovado a sus vencimiento por otros (12) doce meses,** obligándose Santa´s Best a cumplir con las obligaciones fiscales y laborales que de éste resulten como son (pago de I.S.R., I.S.P.T. 2% S/N. 5% INFONAVIT, 2% S.U.A. impuestos al comercio exterior, seguro social, renta del edificio hasta la terminación del contrato. Asimismo se compromete **en caso de terminar con la relación laboral liquidar a todos los trabajadores sindicalizados y de confianza,** según lo marca el artículo 436 fracción 4ª y artículo 162 de la Ley Federal de Trabajo en los Estados Unidos Mexicanos.

De lo anterior se desprende que toda vez que el contrato de referencia fue firmado el día 12 de febrero de 1995 y computando el tiempo que se estipula en la cláusula antes mencionada, el contrato estaría vigente hasta el 12 de febrero de 1997.

**11.- Puedes determinar si la Secretaría de Hacienda y Crédito Público actualmente se encuentra planeando cobrar algún impuesto por parte de Accesorios, así como Accesorios manifiesta en su demanda?**

La investigación sobre la situación de "Accesorios Ilimitados", S.A. de C.V. en la Secretaría de Hacienda y Crédito Público, se nos informó que para esta Secretaría la sociedad Accesorios Ilimitados, S.A. de C.V., se encuentra dada de baja por no localizada (no contribuyente), esto quiere decir que la Secretaría de Hacienda y Crédito Público no pretende intentar cobrar los impuestos que le quedo a deber esta sociedad.

**12.- Accesorios está exagerando en su cálculos para el pago de liquidaciones, impuestos, etc. Según el reporte contable que te fue enviado?**

Se deberá solicitar a la sociedad "Accesorios Ilimitados", S.A. de C.V., presente su contabilidad para poder hacer un estudio adecuado, sobre los impuesto que deberá pagar realmente, ya que es necesarios saber los salarios que tenían cada uno de los trabajadores para poder determinar su liquidación, así como también las ganancias que obtuvo la sociedad para determinar sus impuestos a pagar.

En relación a las impuestos, actualizaciones y recargos como se manifiesta en el párrafo anterior, es necesarios poder analizar la contabilidad de la sociedad "Accesorios Ilimitados", S.A. de C.V.

Lo que si se puede analizar de antemano es que en el reporte que se me entregó, se está exigiendo el pago de multas, las cuales no han sido exigidas por la Secretaría de Hacienda y Crédito Público a la sociedad "Accesorios Ilimitados", S.A. de C.V., toda vez que por la investigación que realizamos dentro de dicha Secretaría, la sociedad "Accesorios Ilimitados", S.A. de C.V., no tiene un crédito fiscal en su contra, es por lo cual no se puede saber que cantidad por concepto de multas la Secretaría de Hacienda y Crédito Público le cobrará a "Accesorios Ilimitados", S.A. de C.V., lo que si se puede saber es que en ninguna ocasión dicha Secretaría cobra el 70% de multa.

**13.-Si el sindicato realmente embargó el equipo propiedad de Santa´s Best como Accesorios manifiesta, es correcto o apropiado que Accesorios permitiera este embargo.**

DE : Productividad Asis Admvos SC    NO.DE TEL : 812 35 66    14 ABR. 2003 04:59PM P7



**SECRETARIA DE
ECONOMÍA**

DELEGACIÓN FEDERAL EN TAMAULIPAS
SUBDIRECCION DE SERVICIOS AL PUBLICO

Of. No.  120/28/A.4/5.2.3./2003/ **306**
Cd. Victoria, Tam., a 18 de marzo de 2003

**LIC. ALEJANDRO GONZALEZ
SAN LUIS POTOSI, S.L.P.**

En atención a su escrito mediante el cual solicita información de la empresa Accesorios Ilimitados, S.A. de C.V., me permito informar a Usted, que derivado del incumplimiento en algunas de las obligaciones del programa de industria maquiladora N° 2001-394 operado por dicha empresa, esta Delegación Federal inicio procedimiento de cancelación y posteriormente  la cancelación del programa mediante oficio N° 2002-70 de fecha 15 de octubre del año 2002.

Sin otro particular, aprovecho el conducto para reiterar a Usted, la seguridad de mi atenta y distinguida consideración.

**SUFRAGIO EFECTIVO. NO REELECCION
EL SUBDIRECTOR DE SERVICIOS AL PUBLICO**

**LIC.  ALFREDO CANTU ARIZPE**

H

# SANTA'S BEST

## MAQUILA   (MANUFACTURING  SERVICES ) CONTRACT

Signed February  7th, 1995, between **"SANTA'S BEST"**, in the city of Brownsville,

Texas, with the main office located at 1133 South 16th Street, Manitowoc, WI, 544221-

1387, and with a branch office at 1604 Price Road, in the city of Brownsville, Texas,

and **"ACCESORIOS ILIMITADOS, S.A. DE C.V."**, domiciled in Matamoros,

Tamaulipas, Mexico.

Both  parties  declare  they have  authority  to negotiate  and contract,  and both

voluntarily agree to abide by and respect the following clauses:

First: **"ACCESORIOS ILIMITADOS, S.A. DE C.V."** will perform production work

in manufacturing ribbon arrangements made of fabric and plastic polyester materials

for the decorations industry using for said effect materials, equipment, designs,

specifications, and quality procedures furnished by **"SANTA'S BEST."**

Second: **"SANTA'S BEST"** will deliver to **"ACCESORIOS  ILIMITADOS, S.A.**

**DE C.V."** the work orders and their respective materials in Brownsville, Texas,

1

importing them into Mexico or in accordance with the permit authorized by the Secretaries of Commerce and Finance.

Third: "ACCESORIOS ILIMITADOS, S.A. DE C.V." will proceed to perform the manufacturing and assembling services agreed to in its plant located in the city of H. Matamoros, Tamaulipas, and obligates itself to return at the shortest possible time and in a term no longer than that specified by the Secretary of Commerce the products manufactured in "ACCESORIOS ILIMITADOS, S.A. DE C.V." plant in H. Matamoros, Tamps.

Fourth: "SANTA'S BEST" can at any time send its own technical personnel, when deemed necessary, to perform selective or detailed quality control tests on the products manufactured or elaborated by "ACCESORIOS ILIMTADOS, S.A. DE C.V." plant in H. Matamoros, Tamps.

Fifth: For every work order fulfilled, "SANTA'S BEST" will reimburse "ACCESORIOS ILIMITADOS, S.A. DE C. V." the agreed amount, and those products that do not meet the quality control requirements specified by "SANTA'S

BEST" must be reworked by "ACCESORIOS ILIMITADOS, S. A. DE C.V.", reimbursing them only for the cost incurred.

SIXTH: It is understood and mutually agreed, in accordance with this agreement and in any order, that the status of "ACCESORIOS ILIMITADOS, S.A. DE C.V." will be that of an independent contractor free to conduct its operations and enter into negotiations with third parties.

SEVENTH: This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months. "SANTA'S BEST" is obligated to comply with the fiscal and labor obligations derived from this agreement, for example the payment of "I.S.R.", "I.S.P.T.", 2% "S/N". 5% "INFONAVIT", and 2% "S.U.A." taxes on foreign trade, social security taxes, rent for the building until the termination of the contract, and likewise assumes the responsibility of indemnifying all of the workers in the event that this labor relationship terminates, according to article 436, paragraph 4, and article 162 of the federal labor law of Mexico.

3

EIGHTH:  If there is any disagreement concerning the interpretation of this contract, both parties agree to submit to the courts of the party being sued.


"SANTA'S  BEST"          "ACCESORIOS ILIMITADOS S.A. DE C.V."
/s/ Illegible            /s/ Illegible
William  Protz Jr.       C. Emily Ma. Hernandez  D.

4

Page one (1) of three (3): Upper left hand corner:
SEAL:    SECRETARY OF BUSINESS AND COMMERCE. OFFICE OF THE    FEDERAL UNDERSECRETARY IN CD. VICTORIA, TAMAULIPAS.

Page one (1) of three (3): Upper left quadrant: SEAL:   Illegible. 17 1995. 05298. Legal.

Page one (1) of three (3): Upper right quadrant: Letterhead: "SANTA'S BEST". 1133 South 16th Street. P.O. Box 1387. MANITOWOC WI. 54221- 1387. (414) 684-1448. FAX (414) 684- 8772.

Page one (1) of three (3): Bottom quadrant: NORTHFIELD, IL. VINELAND, NJ. MANITOWOC, WI. HONG KONG

Page two (2) of three (3): Upper left hand corner: SEAL: SECRETARY OF BUSINESS AND COMMERCE.   OFFICE OF THE FEDERAL UNDERSECRETARY   IN   CD.   VICTORIA, TAMAULIPAS.

Page two (2) of three (3): Upper left quadrant: SEAL: Illegible. 17, 1995. 05298. Legal.

Page two (2) of three (3): Upper right quadrant: Letterhead: "SANTA'S BEST". 1133 South 16th Street. P.O. Box 1387. MANITOWOC WI. 54221- 1387. (414) 684-1448. FAX (414) 684- 8772.

Page two (2) of three (3):   Bottom quadrant: NORTHFIELD, IL. VINELAND, NJ. MANITOWOC, WI. HONG KONG.

Page three (3) of three (3): Upper left hand corner: SEAL: SECRETARY OF BUSINESS AND COMMERCE.   OFFICE OF THE FEDERAL UNDERSECRETARY   IN   CD.   VICTORIA, TAMAULIPAS.

Page three (3) of three(3):   Upper left quadrant: SEAL: Illegible. 17, 1995. 05298. Legal.

Page three (3) of three(3): Upper right quadrant: Letterhead: "SANTA'S BEST". 1133 South 16th Street. P.O. Box 1387. MANITOWOC WI. 54221- 1387. (414) 684-1448. FAX (414) 684- 8772.

ABELARDO GUERRA FARIAS, ESQ.
GUFA- 42111 illegible 2
NOTARY PUBLIC NUMBER 131
/S/ Illegible

Page three(3) of three(3): Lower right quadrant: SEAL: UNITED MEXICAN STATES. ABELARDO GUARRA FARIAS, ESQ.
Notary public No. 131
H. Matamoros, Tams.

Page three(3) of three(3): Bottom quadrant: NORTHFIELD, IL. VINELAND, NJ. MANITOWOC, WI. HONG KONG.





**SANTA'S BEST®**

1133 SOUTH 16TH STREET
P.O. BOX 1387
MANITOWOC, WI 54221-1387
(414) 684-1448
FAX (414) 684-8772

**PAGINA 1 DE 3**

## CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WL 544221-1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE, TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H. MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA CONTRATAR, Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS, S.A. DE C.V. EJECUTARA TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE LA DECORACION, UTILIZANDO PARA EL EFECTO, MATERIALES, EQUIPO , DISEÑOS ESPECIFICACIONES Y NORMAS DE CALIDAD PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS TAMPS.

NORTHFIELD, IL     •     VINELAND, NJ     •     MANITOWOC, WI     •     HONG KONG



SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL
SUBDELEGACION FEDERAL DE CD. VICTORIA
TAMAULIPAS



**SANTA'S BEST.**



1133 SOUTH 16th STREET
P.O. BOX 1387
MANITOWOC, WI 34221-1387
(414) 684-4448
FAX (414) 684-8772

JUN 17 1996

05298

**PAGINA 2 DE 3**

**CUARTA.- SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO , A SU SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.**

**QUINTA.- POR LA EJECUCION DE CADA ORDEN, SANTAS'S BEST REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD ESPECIFICADOS POR SANTA'S BEST. DEBERAN SER RETRABAJADOS POR LA PRIMERA. REEMBOLSANDOSE POE ELLAS UNICAMENTE EL COSTO QUE SE HICIERA.**

**SEXTA.- SE ENTIENDE Y CONVIENE MUTUAMENTE , QUE DE ACUERDO CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON TERCERAS PERSONAS.**

**SEPTIMA.- ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE (12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R. ; I.S.P.T. 2% S/N. 5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR , SEGURO SOCIAL , RENTA DEL EDIFICIO HASTA LA TERMINACION DE ESTE CONTRATO . ASIMISMO SE COMPROMETE EN CASO DE TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS ——— TRABAJADORES SINDICALIZADOS Y DE CONFIANZA , SEGUN LO MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.**



*legal*

**SANTA'S BEST.**



SECRETARIA DE COMERCIO Y
FOMENTO INDUSTRIAL
SUBDELEGACION FEDERAL EN CD. VICTORIA
TAMAULIPAS

17 1995

05298

1133 SOUTH 16TH STREET
P.O. BOX 1287
MANITOWOC, WI 54221-1287
(414) 684-4448
FAX (414) 684-3772

**PAGINA 3 DE 3**

OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE
ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE —
DEMANDADA.

---

**SANTA'S BEST**

WILLIAM PROTZ JR.

**ACCESORIOS ILIMITADOS,
S.A. DE C.V.**

C. EMILY MA. HERNANDEZ D.

LIC. ABELARDO GUERRA FARIAS
GUFA-421114-D2
NOTARIO PUBLICO NUMERO 131

LIC. ABELARDO GUERRA FARIAS
Notario Público No. 131
H. Matamoros, Tams.

NORTHFIELD, IL.    •    VINELAND, NJ    •    MANITOWOC, WI    •    HONG KONG

01/31/2003  16:32   5965402001   LAW OFFICES   PAGE  03

SENT BY:LEVENFELD PEARLSTEIN  :12-11- 2 :  12:52 :              CHICAGO→         14048720548:# 8/14



State of Texas      )(

County of Cameron )(

    This instrument was acknowledged before me on this
10th day of March, 1995 by William Protz Jr. of SANTA'S
BEST, on behalf of said corporation.

*Alicia Castillo*
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95

JAN 17 1995
05298

State of Texas      )(

County of Cameron )(

    This instrument was acknowledged before me on this
10th day of March, 1995 by Emily Maria Hernandez Dolores
of Accesories Ilimitados, S.A. DE C.V., on behalf of said
corporation.

*Alicia Castillo*
Notary Public, State of Texas
ALICIA CASTILLO
My commission expires: 10/5/95

KAREN F. PEÑA

U.S. CERTIFIED JUDICIAL INTERPRETER

600 E. HARRISON

BROWNSVILLE, TEXAS 78520                                    Oct. 8, 2002

TO WHOM IT MAY CONCERN:

I, KAREN F. PEÑA, THE UNDERSIGNED, HAVE FAITHFULLY TRANSLATED FROM SPANISH TO ENGLISH THE FOREGOING INSTRUMENT TO THE BEST OF MY KNOWLEDGE AND ABILITY :

A MAQUILA (SERVICES) CONTRACT BETWEEN "SANTA'S BEST" AND "ACCESORIOS ILIMITADOS, S. A. DE C. V.", SIGNED FEBRUARY SEVENTH (7TH), NINE THOUSAND NINE HUNDRED AND NINETY-FIVE ( 1995).

*Karen F Peña*

KAREN F. PEÑA, U.S. CERTIFIED JUDICIAL INTERPRETER

SWORN TO AND SUBSCRIBED BY THE SAID KAREN F. PEÑA ON THIS 8th DAY OF October OF 2002, IN TESTIMONY OF WHICH WITNESS MY HAND AND SEAL OF OFFICE IN BROWNSVILLE, TEXAS.

*Kary Richardson*

NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

MY COMMISSION EXPIRES THE 7th DAY OF July OF 2006 .



KARY RICHARDSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 07-07-2006

13

# ACCESORIOS ILIMITADOS, S.A. DE C.V.

## MAQUILA (MANUFACTURING SERVICES ) CONTRACT

Signed February 7th, 1995, between **"SANTA'S BEST"**, in the city of Brownsville, Texas, with the main office located at 1133 South 16th Street, Manitowoc, WI, 544221-1387, and with a branch office at 1604 Price Road, in the city of Brownsville, Texas, and **"ACCESORIOS ILIMITADOS, S.A. DE C.V."**, domiciled in Matamoros, Tamaulipas, Mexico.

Both parties declare they have authority to negotiate and contract, and both voluntarily agree to abide by and respect the following clauses:

First: **"ACCESORIOS ILIMITADOS, S.A. DE C.V."** will perform production work in manufacturing ribbon arrangements made of fabric and plastic polyester materials for the decorations industry using for said effect materials, equipment, designs, specifications, and quality procedures furnished by **"SANTA'S BEST."**

Second: **"SANTA'S BEST"** will deliver to **"ACCESORIOS ILIMITADOS, S.A. DE C.V."** the work orders and their respective materials in Brownsville, Texas,

importing them into Mexico or in accordance with the permit authorized by the Secretaries of Commerce and Finance.

Third: "ACCESORIOS ILIMITADOS, S.A. DE C.V." will proceed to perform the manufacturing and assembling services agreed to in its plant located in the city of H. Matamoros, Tamaulipas, and obligates itself to return at the shortest possible time and in a term no longer than that specified by the Secretary of Commerce the products manufactured in "ACCESORIOS ILIMITADOS, S.A. DE C.V." plant in H. Matamoros, Tamps.

Fourth: "SANTA'S BEST" can at any time send its own technical personnel, when deemed necessary, to perform selective or detailed quality control tests on the products manufactured or elaborated by "ACCESORIOS ILIMTADOS, S.A. DE C.V." plant in H. Matamoros, Tamps.

Fifth: For every work order fulfilled, "SANTA'S BEST" will reimburse "ACCESORIOS ILIMITADOS, S.A. DE C. V." the agreed amount, and those products that do not meet the quality control requirements specified by "SANTA'S

BEST" must be reworked by "ACCESORIOS ILIMITADOS, S. A. DE C.V.", reimbursing them only for the cost incurred.

SIXTH: It is understood and mutually agreed, in accordance with this agreement and in any order, that the status of "ACCESORIOS ILIMITADOS, S.A. DE C.V." will be that of an independent contractor free to conduct its operations and enter into negotiations with third parties.

SEVENTH: This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months. "SANTA'S BEST" is obligated to comply with the fiscal and labor obligations derived from this agreement, for example the payment of "I.S.R.", "I.S.P.T.", 2% "S/N". 5% "INFONAVIT", and 2% "S.U.A." taxes on foreign trade, social security taxes, rent for the building until the termination of the contract, and likewise assumes the responsibility of indemnifying all of the workers in the event that this labor relationship terminates, according to article 436, paragraph 4, and article 162 of the federal labor law of Mexico.

EIGHTH:  If there is any disagreement concerning the interpretation of this contract, both parties agree to submit to the courts of the party being sued.


**"SANTA'S  BEST"**          **"ACCESORIOS ILIMITADOS S.A. DE C.V."**

/s/ Illegible                      /s/ Illegible

William  Protz Jr.           C. Emily Ma. Hernandez  D.

Page one (1) of three (3):   Upper middle quadrant:   Letterhead:   "ACCESORIOS ILIMITADOS, S.A. DE C.V."

Page one (1) of three (3):  Lower quadrant:  18 y Herrera No. 84  ZONA CENTRO C.P. 87300 H. MATAMOROS, TAM.  TEL. (8) 816- 51- 30 FAX (8) 813-99- 92. R.F.C. AIL-941215-IF4.

Page two (2) of three (3):   Upper middle quadrant:   Letterhead:   "ACCESORIOS ILIMITADOS, S.A. DE C.V."

Page two (2) of three (3):  Bottom quadrant: Illegible.  H. MATAMOROS, TAM.  TEL. (8) 816- 51- 30 FAX (8) 813-99- 92.

Page three (3) of three (3):  Upper middle quadrant:Letterhead:"ACCESORIOS ILIMITADOS, S.A. DE C.V."

Page three (3) of three (3):  Lower quadrant:  18 y Herrera No. 84  ZONA CENTRO C.P. 87300 H. MATAMOROS, TAM.  TEL. (8) 816- 51- 30 FAX (8) 813-99- 92. R.F.C. AIL-941215-IF4.



PAGINA 1 DE 3

## CONTRATO DE MAQUILA

CELEBRADO DEL DIA 07 DE FEBRERO DE 1995 ENTRE SANTA'S BEST EN LA CD. DE BROWNSVILLE, TEXAS, TENIENDO SUS OFICINAS PRINCIPALES EN 1133 SOUTH 16TH STREET, MANITOWOC, WI. 544221-1387 Y CON SUCURSAL EN 1604 PRICE RD. DE LA CD. DE BROWNSVILLE, TEXAS Y ACCESORIOS ILIMITADOS, S.A. DE C.V. CON DOMICILIO EN H. MATAMOROS, TAMAULIPAS, ESTADOS UNIDOS MEXICANOS.

AMBAS PARTES DECLARAN QUE TIENEN CAPACIDAD LABORAL PARA CONTRATAR, Y QUE VOLUNTARIAMENTE CONVIENEN EN SUJETARSE A LAS SIGUIENTES CLAUSULAS.

PRIMERA .- ACCESORIOS ILIMITADOS. S.A. DE C.V. EJECUTARA TRABAJOS DE FABRICACION Y ELABORACION DE MONOS DE LISTON EN POLIESTER, TELA Y POLIESTER PLASTICO PARA LA INDUSTRIA DE LA DECORACION. UTILIZANDO PARA EL EFECTO, MATERIALES, EQUIPO , DISENOS ESPECIFICACIONES Y NORMAS DE CALIDAD PROPORCIONADAS POR SANTA'S BEST.

SEGUNDA .- SANTA'S BEST ENTREGARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LAS ORDENES DE TRABAJO Y SUS RESPECTIVOS MATERIALES EN LA CIUDAD DE BROWNSVILLE, TEXAS, DEBIENDO INTERNARLOS EN EL PAIS ( MEXICO ) O DE ACUERDO CON EL PERMISO QUE PARA EL EFECTO LE FUE AUTORIZADO POR LAS SECRETARIAS DE COMERCIO Y FOMENTO INDUSTRIAL Y POR LA SECRETARIA DE HACIENDA Y CREDITO PUBLICO.

TERCERA.- ACCESORIOS ILIMITADOS, S.A. DE C.V., PROCEDERA A EFECTUAR EL SERVICIO DE FABRICACION O ENSAMBLE EN SU PLANTA UBICADA EN LA CD. DE H. MATAMOROS, TAMAULIPAS, OBLIGANDOSE A RETORNAR A LA MAYOR BREVEDAD POSIBLE Y EN UN PLAZO QUE NO EXCEDERA EL MARCADO POR LA SECRETARIA DE COMERCIO Y FOMENTO INDUSTRIAL . LOS PRODUCTOS ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. EN H. MATAMOROS TAMPS.



PAGINA 2 DE 3

**CUARTA.-** SANTA'S BEST PODRA ENVIAR PERSONAL TECNICO, A SU SERVICIO CUANDO LO ESTIME CONVENIENTE A EFECTO DE REALIZAR LAS PRUEBAS SELECTIVAS O DETALLADAS DE LA CALIDAD DE LOS PRODUCTOS FABRICADOS O ELABORADOS EN LA PLANTA DE ACCESORIOS ILIMITADOS, S.A. DE C.V. DE H. MATAMOROS, TAMPS.

**QUINTA.-** POR LA EJECUCION DE CADA ORDEN, SANTAS'S BEST REEMBOLSARA A ACCESORIOS ILIMITADOS, S.A. DE C.V. LA CANTIDAD CONVENIDA. Y LAS QUE NO REUNAN LOS REQUISITOS DE CALIDAD ESPECIFICADOS POR SANTA'S BEST.  DEBERAN SER RETRABAJADOS POR LA PRIMERA, REEMBOLSANDOSE POE ELLAS UNICAMENTE EL COSTO QUE SE HICIERA.

**SEXTA.-** SE ENTIENDE Y CONVIENE MUTUAMENTE, QUE DE ACUERDO CON ESTE CONTRATO Y EN CUALQUIER ORDEN, EL STATUS DE ACCESORIOS ILIMITADOS, S.A. DE C.V. SERA AQUEL DE UN CONTRATISTA INDEPENDIENTE PERMANENCIENDO LIBRE DE CONDUCIR SUS OPERACIONES Y ENTRAR EN NEGOCIACIONES CON TERCERAS PERSONAS.

**SEPTIMA.-** ESTE CONTRATO ENTRARA EN VIGOR POR UN PERIODO DE (12) DOCE MESES Y SERA AUTOMATICAMENTE RENOVADO A SU VENCIMIENTO POR OTROS (12) DOCE MESES OBLIGANDOSE SANTA'S BEST A CUMPLIR CON LAS OBLIGACIONES FISCALES Y LABORALES QUE DE ESTE RESULTEN COMO SON ( PAGO DE I.S.R., I.S.P.T. 2% S/N 5% INFONAVIT, 2% S.U.A. IMPUESTOS AL COMERCIO EXTERIOR, SEGURO SOCIAL, RENTA DEL EDIFICIO HASTA LA TERMINACION DE ESTE CONTRATO. ASIMISMO SE COMPROMETE EN CASO DE TERMINAR CON LA RELACION LABORAL LIQUIDAR A TODOS LOS ——  TRABAJADORES SINDICALIZADOS Y DE CONFIANZA, SEGUN LO MARCA EL ARTICULO 436 FRACCION 4a. Y ARTICULO 162 DE LA LEY FEDERAL DE TRABAJO EN LOS ESTADOS UNIDOS MEXICANOS.



PAGINA 3 DE 3

**OCTAVA.- EN CASO DE CONTROVERSIA EN LA INTERPRETACION DE ESTE CONTRATO SE SOMETEN A LOS TRIBUNALES DE LA PARTE — DEMANDADA.**

SANTA'S BEST

**WILLIAM PROTZ JR.**

ACCESORIOS ILIMITADOS, S.A. DE C.V.

**C. EMILY MA. HERNANDEZ D.**

18 Y HERRERA No. 84 ZONA CENTRO C.P. 87300 H. MATAMOROS, TAM. TEL. (8) 816-51-30 FAX (8) 813-99-92