IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| BORDER ALLIANCE, and ACCESORIOS ILIMITADOS, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. B-02 079 |
| vs. | ) ) ) | |
| WILLIAM F. PROTZ, JR. and SANTA'S BEST, an Illinois general partnership, | ) ) ) ) ) | |
| Defendants. | | |

## DEFENDANTS' MEMORANDUM SUPPORTING THEIR AMENDED MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, William F. Protz, Jr. ("Protz") and Santa's Best ("SB"), by their attorneys, Levenfeld Pearlstein, and for their memorandum supporting their amended motion for summary judgment, state as follows:

### INTRODUCTION

In this case, Plaintiffs allege Defendants should indemnify them against certain potential liabilities that Plaintiffs may owe to third parties in Mexico as a result of Plaintiffs' decision to shut down the Mexican operations of Plaintiff Accesorios Ilimitados ("AI"). Plaintiffs claim the shutdown became necessary after SB stopped ordering holiday ornaments from AI's American affiliate, Plaintiff Border Alliance ("BA"). Nevertheless, as explained in more detail below, Plaintiffs' claims for indemnification are all defective as a matter of law primarily because they are built around (1) unreliable photocopies that are inadmissible for summary judgment purposes, and (2) damages that are purely speculative.

With the exception of their claims for rent reimbursement, Plaintiffs' claims are all based on three photocopies of original contracts that have supposedly been misplaced. Throughout this case, Plaintiffs have been unable or unwilling to locate the originals of these photocopied contracts.

Even though Defendants can demonstrate these photocopies are obvious forgeries, Plaintiffs remain undaunted. Plaintiffs may hope to escape summary judgment, and push this case through to trial, by offering self-serving testimony that they saw Defendant Protz sign the originals of the photocopied contracts. They have tried this tactic in discovery. Notwithstanding their audacity, however, Plaintiffs cannot escape summary judgment by relying on the disputed photocopies.

Plaintiffs cannot rely on the disputed photocopies for summary judgment purposes because they will not be able to rely on them as evidence at trial. According to the Fifth Circuit, a party opposing summary judgment cannot rely on evidence that is inadmissible under the Federal Rules of Evidence. Under Rule 1003 of the Federal Rules of Evidence, a party cannot admit a duplicate document into evidence where there is a "genuine question" regarding the authenticity of the duplicate. As demonstrated below, Rule 1003 has previously been used in the Fifth Circuit to bar unreliable documents from consideration in connection with summary judgment proceedings.

<u>Defendants do not need to prove that there is no genuine issue of material fact regarding the authenticity of the disputed photocopies</u>. In fact, as noted above, if there is a "genuine question" as to the reliability of the disputed photocopies, they must be disregarded under Rule 1003. In other words, whether the disputed photocopies are

admissible is a threshold evidentiary issue for the trial court to determine under Rule 1003, not a substantive summary judgment issue to be decided under the summary judgment standard of no genuine issue of material fact.

In any event, even if the disputed photocopies are admitted, Defendants are still entitled to complete summary judgment. Without exception, Plaintiffs' claims are for indemnification against mere potential liabilities, which cannot be the subject of an indemnification claim under Texas law. As noted below, Plaintiffs readily admit that they have not been compelled to pay anything to anyone with respect to the shutdown liabilities. In addition, Plaintiffs readily concede no judgment has ever been entered against them. Indeed, Plaintiffs do not even know how much, if any, they will ultimately need to pay with respect to the alleged shutdown liabilities.

Given these reasons, and the other reasons explained below, Defendants are seeking summary judgment as to all of Plaintiffs' claims as follows:

(1) In Section I below, Defendants explain why they are entitled to partial summary judgment as to Plaintiffs' indemnification claims for non-rent shutdown expenses because the disputed photocopies are inadmissible.

(2) In Sections II and III below, Defendants explain that, even if the disputed photocopies are admitted, Defendants are still entitled to partial summary judgment as to Plaintiffs' indemnification claims for non-rent shutdown expenses because the disputed photocopies all expired or were terminated long before AI closed its operations in Mexico.

(3) Lastly, in Section IV, Defendants explain that they are entitled to total summary judgment as to all of Plaintiffs' claims because Plaintiffs have not been compelled to pay any of the potential liabilities alleged in this case, and none of those liabilities have become fixed and certain through the rendition of a judgment.

## **STATEMENT OF FACTS**[1]

SB is an Illinois general partnership that sells holiday ornaments.

BA supplied goods to SB from Brownsville, Texas. (SUF at ¶ 2.) BA received the goods it shipped to SB from BA's Mexican affiliate, AI. (*Id.* at ¶ 3.)

### Supplier Relationship

BA quoted prices to SB for the goods BA shipped to SB on a per-piece basis. (*Id.* at ¶¶ 4-6.) The price included all Mexican costs, including, without limitation, all of BA's and/or AI's Mexican labor costs. (*Id.*) The price did not include raw materials, United States customs or duties, and trucking between SB and BA's Brownsville, Texas location. (*Id.*) Eventually, SB agreed to reimburse BA for some of AI's rent expenses in Mexico.

### The Relationship Ends

Towards the end of 2000, SB notified BA that it would be discontinuing its orders from BA by the end of 2001. (SUF at ¶ 8.) Towards the end of 2001, SB stopped ordering goods from BA. (*Id.* at ¶ 9.) There is no dispute concerning the fact that BA received at least one year's advance notice of SB's decision to stop ordering from BA. (*Id.* at ¶ 10.)

When SB stopped ordering goods from BA, Plaintiffs decided to close AI's operations in Mexico. (*Id.* at ¶ 11.) Sometime in 2002, AI shut down its plant in Mexico. (*Id.*)

---

[1] These facts are drawn primarily from Defendants' Statement of Undisputed Facts.

4

### The Alleged Shutdown Liabilities

According to Plaintiffs, they are now "exposed" to certain liabilities and potential claims in Mexico as a result of the closing of AI's Mexican operations. Plaintiffs claim they are exposed to potential liabilities to AI's former employees, Plaintiffs' landlord in Mexico, and various Mexican agencies. (SUF at ¶ 13.) Except for the alleged amounts Plaintiffs claim AI owes to its landlord in Mexico, AI's shutdown expenses are set forth in the report of Plaintiffs' damages expert, Mitzy Motta. (*Id.* at ¶ 14.) These non-rent shutdown expenses are referred to in this Memorandum as the "Liquidation Expenses."[2]

Absent some written indemnification agreement on the subject, Defendants are not responsible for the Liquidation Expenses. Under Mexican law, AI and its legal representative are liable for the Liquidation Expenses, not Defendants or any other third party. (*Id.* at ¶¶ 15-16.) Plaintiffs readily concede Defendants are only liable to reimburse Plaintiffs for the Liquidation Expenses if there is a separate agreement establishing Plaintiffs' right to reimbursement or indemnification. (*Id.* at ¶ 17.)

### The Disputed Photocopies

Plaintiffs claim there are separate indemnification agreements that exist. Specifically, Plaintiffs claim Defendants entered into three separate agreements with them regarding the Liquidation Expenses. (*Id.* at ¶¶ 8-9.) One of the alleged indemnification agreements is contained in the two identical Spanish language

---

[2] Under Mexican law, terminated employees are entitled to payments in the nature of severance pay. In addition, various Mexican agencies are entitled to payments with respect to the terminated employees. These expenses are often referred to as liquidation expenses.

5

agreements attached as exhibits 17 and 18 respectively to Clarence Carroll's deposition (the "Spanish Maquila Contracts"). The other alleged indemnification agreement is contained in an English language agreement attached as exhibit 16 to Clarence Carroll's deposition (the "English Maquila Contract"). (*Id.*) The Spanish Maquila Contracts and the English Maquila Contract are collectively referred to as the "Disputed Photocopies" in this Memorandum.

To say the least, the Disputed Photocopies are of suspect validity. Originals of the Disputed Photocopies cannot be located. (*Id.* at ¶ 21.) Although Plaintiffs claim William Protz, Jr. ("Protz") signed the Disputed Photocopies on behalf of Defendants, (*Id.* at ¶ 22), Protz denies signing them. (*Id.* at ¶ 23).

Moreover, Protz's alleged signatures on the Disputed Photocopies are clearly transfers from other documents Protz actually did sign. Protz's alleged signature on the Maquila Contract attached as Exhibit 16 to Clarence Carroll's deposition is a perfect overlay of, and was transferred from, his actual signature on the original or a photocopy of exhibit 15 to Clarence Carroll's deposition. (*Id.* at ¶ 26.) Protz's alleged signature on the Maquila Contract attached as exhibit 17 to Clarence Carroll's deposition is a perfect overlay of, and was transferred from, his actual signature on the original or a photocopy of exhibit 10 to Clarence Carroll's deposition. (SUF at ¶ 27.) Protz's alleged signature on the Maquila Contract attached as Exhibit 18 to Clarence Carroll's deposition is a perfect overlay of, and was transferred from, exhibit 14 to Clarence Carroll's deposition. (*Id.* at ¶ 28.)

The Disputed Photocopies also contain other irregularities that demonstrate their unreliability. Besides Protz's alleged signatures, many of the other signatures on the

Disputed Photocopies are overlays of, and were transferred from, other documents. (*Id.* at ¶ 29.) In addition, the Maquila Contract attached as exhibit 18 to Clarence Carroll's deposition also contains a purported filing seal from the Economy Ministry of Mexico ("SECOFI") that is a phony. (*Id.* ¶ 30.) Finally, the Maquila Contract attached as exhibit 18 to Clarence Carroll's deposition also purports to be notarized by a Mexican attorney and notary public named Abelardo Guerra Farias, but Attorney Farias has testified someone photocopied his seal and signature and superimposed them on Clarence Carroll's exhibit 18 without his permission. (*Id.* at ¶ 31.)

In any event, none of the Disputed Photocopies were in effect when AI shut down its Mexican Facilities in 2002 anyway. The Spanish Maquilla Contracts, which were both supposedly effective in February of 1995, both provide that they would only remain effective for 24 months. Specifically, they both state:

> This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months.

(*Id.* at ¶¶ 32-33.)

Similarly, the English Maquila Contract was terminated before AI shut down its Mexican facilities. On its face, the English Maquila Contract provides:

> A one year notice is required for termination of this agreement by either party.

(*Id.* at ¶ 34.) As noted above, Plaintiffs admit they received one year's advance notice. (*Id.* at ¶ 35.)

7

### Speculative Nature of Shutdown Expenses

Perhaps most importantly, Plaintiffs have no idea how much, if any, of the shutdown expenses they will ever be compelled to pay. Plaintiffs admit they have not been compelled to pay any part of the shutdown expenses to anyone. (*Id.* at ¶ 36.) No judgment has been entered against Plaintiffs with respect to any of the shutdown expenses. (*Id.* at ¶ 37.) Plaintiffs have not entered into any settlement agreements with anyone to pay any part of the shutdown expenses. (*Id.* at ¶ 38.) Plaintiffs simply do not know how much, if any, they will ever actually need to pay with regard to the shutdown expenses. (*Id.* at ¶ 39.)

### **ARGUMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment anytime the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the party moving for summary judgment identifies portions of the court record demonstrating the absence of a genuine issue of material fact, the opposing party can only escape summary judgment by establishing a genuine issue of material fact by reference to other portions of the court record. *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. V. CAN Ins. Companies,* 28 F.3d 29 (5th Cir. 1994). The opposing party cannot escape summary judgment by relying on mere allegations in the pleadings or inadmissible evidence. *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986) (pleading allegations and denials disregarded); *Geiserman v. McDonald,* 893 F.2d 787, 792-93 (5th Cir. 1990) (inadmissible evidence disregarded). In

this case, Defendants are entitled to judgment as a matter of law because, as demonstrated below, Plaintiffs cannot set forth specific facts (without referring to inadmissible evidence) demonstrating the existence of a genuine issue of material fact justifying the denial of Defendants' motion.

I. **DEFENDANTS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFFS' CLAIMS FOR THE LIQUIDATION EXPENSES BECAUSE THOSE CLAIMS ARE BASED EXCLUSIVELY ON THE DISPUTED PHOTOCOPIES, WHICH WILL NOT BE ADMISSIBLE AT TRIAL.**

Defendants are entitled to partial summary judgment against Plaintiffs with regard to Plaintiffs' claims concerning the Liquidation Expenses because those claims are based exclusively on three unreliable photocopies that will not be admissible at trial; namely, the Disputed Photocopies. As noted above, a party cannot escape summary judgment by relying on documents that will not be "admissible at trial." *Geiserman v. McDonald*, 893 F.2d 787, 792-93 (5th Cir. 1990).

In discovery, Plaintiffs have readily admitted that their claims concerning the Liquidation Expenses are based entirely on the Disputed Photocopies. (SUF at ¶¶ 18-20.) According to Plaintiffs' own damages expert, Defendants are simply not responsible for paying AI's Liquidation Expenses under Mexican law unless there is a separate indemnification agreement between AI and Defendants. Specifically, Plaintiffs' damages expert testified as follows regarding the Liquidation Expenses:

> Q:    . . . Under Mexican law, Accesorios Ilimitados and the legal representative are liable, correct?
> A.    Yes.
> Q.    There has to be a separate agreement to establish that somebody was supposed to reimburse Accesorios Ilimitados, correct?
> A.    Yes.

(*Id.* at ex. D M. Motta Dep., at 67-68.) Yet, Plaintiffs have only identified three

9

agreements regarding the Liquidation Expenses in this case; the Disputed Photocopies. (*Id.* at ex. B, C. Carroll Dep., at 330 & exs. 16-18.)

Of course, to say the very least, there are serious questions regarding the authenticity of the Disputed Photocopies. The Disputed Photocopies are all photocopies, and none of the originals can be found. (*Id.* at ¶ 21.) All of Defendants' alleged signatures on the Disputed Photocopies have been lifted from other documents actually signed by Defendants. (*Id.* at ¶¶ 23-28.) Some of the other signatures on the Disputed Photocopies have also been lifted from separate documents. (SUF at ¶ 29.) One of the Disputed Photocopies even bears a fraudulent SECOFI marking and an alleged notarization by Attorney Farias, which Attorney Farias swears is fraudulent. (*Id.* at ¶¶ 30-31.)

Under the circumstances, the Disputed Photocopies, which are duplicates rather than originals, will not be admissible at trial because there is, at a minimum, a genuine question as to whether they are authentic or fraudulent. According to Rule 1003 of the Federal Rules of Evidence, a duplicate is not admissible where "(1) a <u>genuine question</u> is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003 (emphasis added). Therefore, if there is a "genuine question" regarding the authenticity of a duplicate, the judicial system will disregard the duplicate and demand the production of the original. *See id.; accord Osherow v. Porras,* 224 B.R. 367, 371 (Bankr. W.D. Tex. 1998) (holding the trial judge must determine "whether the opposing party has actually raised a <u>legitimate issue</u> regarding the accuracy of a duplicate") (emphasis added). According to the court in *Osherow,* anytime there is "a possibility of fraud in the

10

circumstances surrounding the execution of a writing, the reliability of the duplicate is impaired and the court may insist on the original if the opponent demands it." *Id.* (emphasis added) (citing 6 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* δ 1003.03). Therefore, because under the circumstances of this case, there is, to say the very least, a legitimate issue regarding the authenticity of the Disputed Photocopies, Plaintiffs will not be able to gain the admission of those documents at trial under Rule 1003.

More importantly, because the Disputed Photocopies will not be admissible at trial under Rule 1003, Plaintiffs cannot rely on them now to escape summary judgment. In *Osherow*, the court expressly held a duplicate, which would not be admissible at trial under Rule 1003 due to genuine questions regarding its authenticity, could not be used by the defendant to escape summary judgment. *See id.* Similarly, in *Geiserman v. McDonald*, the Fifth Circuit held a plaintiff could not escape summary judgment by relying on evidence that would not be "admissible at trial." 893 F.2d 787, 792-93 (5th Cir. 1990). As the court explained in *Geiserman*, a party cannot avoid summary judgment based on inadmissible evidence because "'Rule 56(e) requires the adversary [to a summary judgment motion] to set forth facts that would be admissible in evidence at trial." *Id.* Otherwise, a party could needlessly prolong the litigation of a claim that is destined to fail at trial anyway. *Id.* (holding that "continuing the action would be useless" where a party must rely on inadmissible evidence at the summary judgment stage).

<u>Defendants need not prove there is no genuine issue of material fact regarding the authenticity of the Disputed Photocopies to have them barred as evidence in these summary judgment proceedings.</u> Whether the Disputed Photocopies are admissible is a threshold evidentiary issue for the Court to decide, not a substantive summary judgment issue. *See, e.g., Osherow*, 224 B.R. at 371. In fact, as noted above, if there is a genuine issue regarding the authenticity of the Disputed Photocopies, they are inadmissible under Rule 1003 and must be disregarded. *See, e.g.,* Fed. R. Civ. P. 1003 (duplicate inadmissible where there is a "genuine question").

Thus, Defendants are entitled to partial summary judgment against Plaintiffs with regard to Plaintiffs' claims concerning the Liquidation Expenses. The Disputed Photocopies are inadmissible, and Plaintiffs cannot point to any other factual basis for their claims that Defendants should indemnify them for the Liquidation Expenses.

II.  **DEFENDANTS ARE ALSO ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO AI'S CLAIMS FOR THE LIQUIDATION EXPENSES BECAUSE THE SPANISH MAQUILA CONTRACTS BETWEEN AI AND DEFENDANTS EXPRESSLY STATE THAT THEY EXPIRED LONG BEFORE AI CLOSED ITS PLANT.**

Even if the Disputed Photocopies are admitted, they do not, as a matter of law, obligate Defendants to indemnify AI for the Liquidation Expenses. Of the Disputed Photocopies, only the Spanish Maquila Contracts purport to be between AI and any of Defendants. (SUF at ex. B, C. Carroll Dep., at exs. 16-18.) Yet, the Spanish Maquila Contracts expired long before AI closed its manufacturing facilities and became liable for the Liquidation Expenses.

The Spanish Maquila Contracts expired in February of 1997. Those contracts state on their face that they became effective in February of 1995. (SUF at exs. H & I at 1.) They also state on their face that they were only effective for an initial term of 12 months and one renewal term of 12 months, *i.e.* a total of 24 months. (*Id.* at ¶ 7.) Specifically, in paragraph 7, the Spanish Maquila Contracts provide:

> This agreement will be in effect for a period of (12) twelve months and will be automatically renewed at the due date for another (12) twelve months.

(*Id.*)   As a result, the Spanish Maquila Contracts expired sometime in February 1997, several years before AI closed its manufacturing facilities.

Thus, Defendants are entitled to partial summary judgment against AI with respect to AI's claims concerning the Liquidation Expenses, even if the Court admits the Disputed Photocopies.

## III. DEFENDANTS ARE ALSO ENTITLED TO PARTIAL SUMMARY JUDGMENT AS TO BA'S CLAIMS FOR THE LIQUIDATION EXPENSES BECAUSE THE ENGLISH MAQUILA CONTRACT BETWEEN BA AND DEFENDANTS WAS TERMINATED LONG BEFORE AI CLOSED ITS PLANT.

Similarly, even if the Disputed Photocopies are admitted, Defendants are still entitled to partial summary judgment against BA with respect to the Liquidation Expenses. Of the Disputed Photocopies, only the English Maquila Contract purports to be between BA and any of Defendants. (SUF at ex. B, C. Carroll Dep., at exs. 16-18.) Yet, there is no dispute concerning the fact that the English Maquila Contract was terminated long before AI closed its manufacturing facilities.

The English Maquila Contract clearly states on its face that it could be terminated upon one year's advance notice. (*Id.* at ex. 16.) Specifically, the English Maquila

13

Contract states "[a] one year notice is required for termination of this agreement by either party." (*Id.*)

In addition, there is no dispute concerning the fact that BA received one year's advance notice. At his deposition, Clarence Carroll readily conceded this point by testifying as follows:

> Q. Do you dispute that you–is there any dispute whether you received one year's notice?
> A. No, I got a year's notice.

(*Id.* at ex. B, C. Carroll Dep., at 359-60.)

Thus, Defendants are entitled to partial summary judgment against BA with respect to BA's claims concerning the Liquidation Expenses, even if this Court admits the Disputed Photocopies.

### IV. EVEN IF THE DISPUTED PHOTOCOPIES ARE ADMITTED, DEFENDANTS ARE ENTITLED TO TOTAL SUMMARY BECAUSE PLAINTIFFS' CLAIMS ARE ALL FOR INDEMNIFICATION AS TO UNCERTAIN, UNFIXED LIABILITIES THAT PLAINTIFFS HAVE NOT BEEN COMPELLED TO PAY.

Even if the Disputed Photocopies are admitted, Defendants are also entitled to total summary judgment because Plaintiffs readily admit all of their claims are for indemnification against potential liabilities that Plaintiffs have not actually been compelled to pay, and that have not become fixed and certain through the rendition of a judgment. Under Texas law, a plaintiff cannot sue for indemnification against a liability that the plaintiff has not actually been "compelled to pay" and that is not "fixed and certain, as by rendition of a judgment." *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App. 1993). Otherwise, a plaintiff might be able to recover an unfair windfall award for an amount the plaintiff is never actually called upon to pay.

In Texas, a plaintiff can only obtain indemnification under two types of agreements: (1) an agreement to indemnify against liability, or (2) an agreement to indemnify against damages. *See id.* (holding "an indemnification agreement can be one either to indemnify against liability or to indemnify against damages"). Thus, where a plaintiff claims another party is responsible for the plaintiff's expenses under the terms of an agreement, the plaintiff must establish the agreement is either an agreement to indemnify against liability or an agreement to indemnify against damages.

Either way, a plaintiff cannot recover indemnification for a liability that it has not been compelled to pay, and that has not become fixed and certain through the rendition of a judgment or its equivalent. In the case of an agreement to indemnify against liability, a plaintiff cannot sue until "the liability is fixed and certain, as by rendition of a judgment." *Id.* (citations omitted). A liability will not be considered fixed and certain absent the "rendition of a judgment or its equivalent." *Holland v. Fidelity & Deposit Co. of Maryland,* 623 S.W.2d 469, 470 (Tex. App. 1981). In the case of an agreement to indemnify against damages, a plaintiff cannot sue until even later; namely, when the plaintiff has "suffered damage or injury by being compelled to pay the judgment or debt." *Tubb,* 862 S.W.2d at 750 (citations omitted).

These rules protect defendants from premature or unnecessary indemnification lawsuits, and prevent plaintiffs from receiving windfall recoveries. Until a plaintiff has actually been compelled to pay a liability, or until the liability has at least been reduced to a judgment, there is a significant chance the plaintiff may never be called upon to pay. As a result, Texas courts have repeatedly rejected premature indemnification lawsuits by plaintiffs. *See, e.g., Turboff v. Gertner, Aron & Ledet Investments,* 840

15

S.W.2d 603, 612 (Tex. App. 1992) (holding "it would be unfair to award" a plaintiff indemnification for a liability "it may not be called upon to pay").

In this case, if the indemnification provisions Plaintiffs cite are construed as an agreement to indemnify against damages, Plaintiffs clearly cannot recover because Plaintiffs have not been compelled to pay a judgment or debt to anyone.  When asked, Plaintiffs readily acknowledge they have not been compelled to pay anything to anyone with respect to any of the alleged shutdown liabilities at issue in this case.  (SUF at ¶¶ 36-39.)  For example, Clarence Carroll testified as follows during his deposition:

> Q.   As a result of the shutdown of the plant, your accountant outlined a bunch of expenses in the expert report, are you familiar with that report?
> A.   Yes.
> Q.   But it's your testimony that Accesorios Ilimitados has not had to pay any of those expenses to anyone?
> A.   Have not had to?
> Q.   Yeah.
> A.   We haven't had the money to pay them.
> Q.   Have not paid any?
> A.   We haven't paid any of them.  That's the problem.
> Q    And no one has initiated any legal proceedings against Accesorios Ilimitados asking it to pay?
> A.   At this point.
> Q.   At this point?
> A.   Right.
> Q.   And it's a dead company now?
> A.   It's a dead company.
> Q.   Has anyone come to Border Alliance to pay any of those things?
> A.   Cortez has come.  They have been to Emily and told Emily that if they didn't get satisfaction, that they were going to take action against me.
> Q.   Have they taken any action against you?
> A.   Not at this point.
>                              \*\*\*\*
> Q.   Okay.  And Border Alliance has not paid anything to Hacienda?
> A.   Not at this point.
> Q.   Or any one else --
> A.   Or anyone else.

16

> Q. -- associated with the shutdown of the plant?
> A. That's right.
> Q. Nor have you personally paid anything to anyone as a result of the shutdown of the plant?
> A. No.
> Q. Nor has Elaine?
> A. No.
>
> ****
>
> Q. Nor has Emily Hernandez?
> A. No.
> Q. No one has?
> A. No one.

(*Id.* at ex. B, C. Carroll Dep., at 366-67.)

Furthermore, if the indemnification provisions Plaintiffs cite are construed as an agreement to indemnify against liability, Plaintiffs cannot recover because the potential liabilities at issue in this case have not become fixed and certain through the rendition of a judgment or comparable event. Plaintiffs do not claim that judgments have been rendered against them with respect to any of the alleged shutdown expenses. (*Id.* at ¶¶ 36-39.) Plaintiffs do not claim they have entered into any settlement agreements with anyone with respect to any of the alleged shutdown expenses. (*Id.*) Therefore, no one knows how much, if any, Plaintiffs will ever actually have to pay with respect to any of the alleged shutdown liabilities.

In fact, Plaintiffs have not even bothered to ask the appropriate Mexican agencies how much, if any, Plaintiffs will be required to pay. At her deposition, Plaintiffs' own damages expert agreed that the "amount due will not be known until the moment of payment because different criteria [are] used by government agencies." (*Id.* at ex. D, M. Motta Dep., at 54-55.) Moreover, she also admitted she is unaware of any attempts by anyone to ascertain whether AI will actually be called upon to pay anything.

Specifically, she testified as follows:

> Q. So we really won't know how much Accesorios Ilimitados will pay until they actually pay?
> A. That is correct.
> Q. If you wanted to pay right now, what method could you use to come up with that figure or who would you go to to get that figure?
> A. It would have to -- I would have to check it with the different agencies.
> Q. But at the end of the day, that would be the amount that would really be owed?
> A. Yes.
> Q. Has there been any agency that you checked with to verify actual amounts owed?
> A. Personally, no, but the agencies can give information to determine the amounts to be paid.
> Q. But you haven't done that?
> A. No.
> Q. No one has asked you to do that?
> A. No.
> Q. And you don't know if anyone else has done that?
> A. No.

(*Id.* at 55-56.)

Under the circumstances, if Plaintiffs prevail in this lawsuit, there is a substantial likelihood they will garner an unfair windfall payment for hypothetical liabilities they will never be called upon to pay. In this regard, Plaintiffs' claims in this case are clearly analogous to the premature indemnification claims rejected by the Texas Court of Appeals in *Turboff*. In that case, the plaintiff tried to maintain a lawsuit for indemnification of expenses he had not been compelled to pay and that had not been reduced to a judgment. 840 S.W.2d at 612. After noting the plaintiff's future liabilities were "speculative," the court held that "it would be unfair to award [the plaintiff indemnification] when it may not be called upon to pay [the liabilities]." *Id.*; *accord Texas Auto Services, Inc. v. Kemp*, 478 S.W.2d 646, 648 (Tex. App. 1972) (refusing to

grant indemnification to a plaintiff where he had made no payment and no judgment had been entered against him).

Thus, even if the Disputed Photocopies are admitted, Defendants are still entitled to complete summary judgment because the undisputed facts of this case establish that Plaintiffs are not entitled to indemnification as a matter of law.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that this Court will enter summary judgment in favor of Defendants as to all of Plaintiffs' claims in this case.

Date: June 5, 2003

**LEVENFELD PEARLSTEIN**

By: _____
       Beau T. Greiman

Beau T. Greiman
Illinois Bar No. 6225076
Levenfeld Pearlstein
2 North LaSalle St., Suite 1300
Chicago, IL  60602
Telephone:  312-346-8380
Fax:        312-346-8434

Attorney in Charge
Joseph A. (Tony) Rodriguez
State Bar No. 17146600
Southern District of Texas Bar No. 10107
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren, P.O. Box 2155
Brownsville, TX 78420
Telephone:  956-542-7441
Fax:        956-541-2170
**ATTORNEYS FOR DEFENDANTS,
SANTA'S BEST and WILLIAM PROTZ, JR.**